CASE NO. 26-1015

# United States Court of Appeals

*for the*

# Seventh Circuit

———————————

SKYWAVE NETWORKS, LLC,

*Plaintiff-Appellant,*

– v. –

WILLIAM J. DISOMMA, *et al.,*

*Defendants-Appellees.*

——————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION,
HON. GEORGIA N. ALEXAKIS, DISTRICT COURT JUDGE,
IN CASE NO. 1:24-CV-09650

## BRIEF AND REQUIRED SHORT APPENDIX OF PLAINTIFF-APPELLANT SKYWAVE NETWORKS, LLC

DESMARAIS LLP
JUSTIN P.D. WILCOX
ADAM STEINMETZ
JAMIE DOHOPOLSKI
RIX RYSKAMP
1899 Pennsylvania Avenue, NW,
    Suite 400
Washington, DC 20006
(202) 451-4900
jwilcox@desmaraisllp.com
asteinmetz@desmaraisllp.com
jdohopolski@desmaraisllp.com
rryskamp@desmaraisllp.com

DESMARAIS LLP
STEVEN M. BALCOF
PETER KOTECKI
230 PARK AVENUE
New York, New York 10169
(212) 351-3400
sbalcof@desmaraisllp.com
pkotecki@desmaraisllp.com

*Attorneys for Plaintiff-Appellant Skywave Networks, LLC*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>26-1015</u>

Short Caption: <u>Skywave Networks, LLC v. William J. DiSomma, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Skywave Networks, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Desmarais LLP; Nelson Mullins Riley & Scarborough LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Argentum, LLC

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A.

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A.

Attorney's Signature: <u>/s/  Justin Wilcox</u>    Date: <u>03/03/2026</u>

Attorney's Printed Name: <u>Justin Wilcox</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☑  **No** ☐

Address: <u>1899 Pennsylvania Avenue, NW, Suite 400, Washington, D.C., 20006</u>

Phone Number: <u>(202) 451-4905</u>    Fax Number: <u>(202) 451-4901</u>

E-Mail Address: <u>JWilcox@desmaraisllp.com; ecfalerts@desmaraisllp.com</u>

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1015

Short Caption: Skywave Networks, LLC v. William J. DiSomma, et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Skywave Networks, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Desmarais LLP; Nelson Mullins Riley & Scarborough LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

Argentum, LLC

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A.

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A.

Attorney's Signature: /s/ Adam Steinmetz      Date: 03/03/2026

Attorney's Printed Name: Adam Steinmetz

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐  **No** ☑

Address: 1899 Pennsylvania Avenue, NW, Suite 400, Washington, D.C., 20006

Phone Number: (202) 451-4936      Fax Number: (202) 451-4901

E-Mail Address: ASteinmetz@desmaraisllp.com; ecfalerts@desmaraisllp.com

rev. 12/19 AK

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1015

Short Caption: Skywave Networks, LLC v. William J. DiSomma, et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ✓    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Skywave Networks, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Desmarais LLP; Nelson Mullins Riley & Scarborough LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Argentum, LLC

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A.

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A.

Attorney's Signature: /s/  Steven M. Balcof    Date: 03/03/2026

Attorney's Printed Name:  Steven M. Balcof

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes**    **No** ✓

Address:  230 Park Avenue, 26th Floor, New York, NY  10169

Phone Number: (212) 808-2944    Fax Number: (212) 351-3400

E-Mail Address: SBalcof@desmaraisllp.com; ecfalerts@desmaraisllp.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1015

Short Caption: Skywave Networks, LLC v. William J. DiSomma, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Skywave Networks, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Desmarais LLP; Nelson Mullins Riley & Scarborough LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Argentum, LLC

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A.

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A.

Attorney's Signature: /s/ Jamie Dohopolski    Date: 03/03/2026

Attorney's Printed Name: Jamie Dohopolski

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐  No ☑

Address: 1899 Pennsylvania Avenue, NW, Suite 400, Washington, D.C., 20006

Phone Number: (202) 451-4935    Fax Number: (202) 451-4901

E-Mail Address: JDohopolski@desmarailsllp.com; ecfalerts@desmaraisllp.com

rev. 12/19 AK

iv

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>26-1015</u>

Short Caption: <u>Skywave Networks, LLC v. William J. DiSomma, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> ☑     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Skywave Networks, LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Desmarais LLP; Nelson Mullins Riley & Scarborough LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        Argentum, LLC

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A.

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A.

Attorney's Signature: <u>/s/ Peter Kotecki</u>    Date: <u>03/03/2026</u>

Attorney's Printed Name: <u>Peter Kotecki</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐  **No** ☑

Address: <u>230 Park Avenue, 26th Floor, New York, NY 10169</u>

Phone Number: <u>(212) 808-1067</u>    Fax Number: <u>(212) 351-3401</u>

E-Mail Address: <u>PKotecki@desmaraisllp.com; ecfalerts@desmaraisllp.com</u>

rev. 12/19 AK

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1015

Short Caption: Skywave Networks, LLC v. William J. DiSomma, et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Skywave Networks, LLC

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Desmarais LLP; Nelson Mullins Riley & Scarborough LLP

(3)     If the party, amicus or intervenor is a corporation:

   i)     Identify all its parent corporations, if any; and

        Argentum, LLC

   ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A.

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A.

Attorney's Signature: /s/  Rix A. Ryskamp     Date: 03/03/2026

Attorney's Printed Name:  Rix A. Ryskamp

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** ☐     **No** ☑

Address:  1899 Pennsylvania Avenue, NW, Suite 400, Washington, D.C., 20006

Phone Number:  (202) 916-8073     Fax Number:  (202) 451-4901

E-Mail Address:  RRyskamp@desmaraisllp.com; ecfalerts@desmaraisllp.com

rev. 12/19 AK

## TABLE OF CONTENTS

**Pages**

DISCLOSURE STATEMENTS.................................................................. i

TABLE OF CONTENTS ..................................................................... vii

TABLE OF AUTHORITIES................................................................. x

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF THE ISSUE .............................................................2

STATEMENT OF THE CASE ..............................................................3

    A.    Skywave Planned To Build A Commercial Trading Network Using Shortwave Communications. .....................................................3

    B.    The Appellees Obtained Access To Experimental Licenses And Used Those Licenses To Build And Operate An Unauthorized Commercial Trading Network. .....................................................4

        1.    The Appellees Inserted Themselves In The Experimental License Applications That Non-Party 10Band Filed At The FCC..............................................................6

        2.    The Appellees Have Used 10Band's Experimental Licenses For Commercial Trading.........................................9

    C.    In September 2023, Skywave Filed A Petition At The FCC That Narrowly Challenged One Renewal Application. .......................12

    D.    Skywave's RICO Complaint In The District Court Broadly Challenges The Appellees' Unlawful Conduct. .......................14

    E.    The District Court Dismissed Skywave's First Amended Complaint For Lack of Subject Matter Jurisdiction. .......................16

SUMMARY OF THE ARGUMENT..........................................................18

ARGUMENT.................................................................................22

I.    STANDARD OF REVIEW ..............................................................23

Pages

II.     SKYWAVE CORRECTLY FILED ITS RICO CLAIMS IN FEDERAL
        DISTRICT COURT, THE ONLY FORUM THAT HAS SUBJECT MATTER
        JURISDICTION. ...................................................................................24

        A.     The RICO Statute Establishes The District Court As The Forum With
               Subject Matter Jurisdiction Over Skywave's RICO Claims. .........................24

        B.     The FCC Does Not Have Jurisdiction To Adjudicate The Full Scope
               Of Skywave's RICO Claims Or To Grant Skywave's Requested
               Relief. ..................................................................................................27

III.    THE DISTRICT COURT ERRED IN FINDING THAT SKYWAVE'S RICO
        CLAIMS WERE INEXTRICABLY INTERTWINED WITH FCC
        DECISIONS...........................................................................................31

        A.     Skywave Could Not And Should Not Have Sought Its Claimed
               Relief In The FCC. ..............................................................................32

        B.     Skywave Is Not Collaterally Attacking An FCC Order In An End
               Run Around Jurisdictional Limitations. ..............................................37

        C.     Skywave Does Not Claim It Was Injured By The FCC. ................................40

IV.     THE DISTRICT COURT COMMITTED ERRORS IN DECIDING THE
        APPELLEES' MOTION TO DISMISS. ..................................................42

        A.     The District Court Contravened The Motion To Dismiss Standard By
               Making Inferences Against Skywave About The Allegations And
               Relief Sought In The First Amended Complaint.......................................42

        B.     The District Court Incorrectly Criticized Skywave For "Dress[ing]
               Up" Its Challenges To FCC Decisions As A RICO Claim. ...........................46

        C.     Appellees' Misuse Of 10Band's Experimental Licenses Is Not An
               "Outcome" Of Any FCC Decision. ........................................................48

V.      THE DISTRICT COURT SHOULD HAVE ISSUED A NARROWER
        RULING TO ADDRESS ITS CONCERNS.................................................52

CONCLUSION ...................................................................................................54

CERTIFICATE OF COMPLIANCE .........................................................................55

**TABLE OF CONTENTS (cont'd)**

**Pages**

CERTIFICATE OF SERVICE ...........................................................................56

CIRCUIT RULE 30(D) STATEMENT .......................................................57

REQUIRED SHORT APPENDIX ..............................................................58

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Bird Conservancy v. FCC,*
  545 F.3d 1190 (9th Cir. 2008) ................................................................32, 33, 46

*Americopters, LLC v. FAA,*
  441 F.3d 726 (9th Cir. 2006) ............................................................32, 37, 38, 39

*Arvin Indus., Inc. v. Maremont Corp.,*
  1973 WL 784 (S.D. Ind. Mar. 9, 1973) ..............................................34, 37, 52

*Beins v. United States,*
  695 F.2d 591 (D.C. Cir. 1982) ....................................................................34, 35

*Breen v. Peters,*
  474 F. Supp. 2d 1 (D.D.C. 2007) ........................................................................34

*Bridge v. Phoenix Bond & Indemn. Co.,*
  553 U.S. 639 (2008) ............................................................................................53

*Bulzan v. Atl. Richfield Co.,*
  620 F.2d 278 (Temp. Emer. Ct. App. 1980) ......................................................30

*CE Design Ltd. v. Prism Bus. Media, Inc.,*
  2009 WL 2496568 (N.D. Ill. Aug. 12, 2009), *aff'd*, 606 F.3d 443 (7th Cir.
  2010) ....................................................................................................................33

*City of Rochester v. Bond,*
  603 F.2d 927 (D.C. Cir. 1979) ............................................................................33

*Durso v. Napolitano,*
  795 F. Supp. 2d 63 (D.D.C. 2011) ............................................................32, 33, 36

*FCC v. ITT World Commc'ns, Inc.,*
  466 U.S. 463 (1984) ............................................................................................33

*Folden v. United States,*
  379 F.3d 1344 (Fed. Cir. 2004) ..........................................................................45

**TABLE OF AUTHORITIES (cont'd)**

**Pages**

*Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewage Dist.*,
  382 F.3d 743 (7th Cir. 2004) ......................................................................43, 47

*Jones v. Havens*,
  2012 WL 2325876 (N.D. Cal. June 19, 2012) ...............................................36

*Long v. Shorebank Dev. Corp.*,
  182 F.3d 548 (7th Cir. 1999) ......................................................................23, 26

*Mace v. Skinner*,
  34 F.3d 854 (9th Cir. 1994) ........................................................................34, 35

*McCarthy v. Madigan*,
  503 U.S. 140 (1992)......................................................................................29, 30

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
  708 F.2d 1081 (7th Cir. 1983) ...........................................................................48

*Merritt v. Shuttle, Inc.*,
  245 F.3d 182 (2d Cir. 2001) ................................................................. *passim*

*Mokdad v. Lynch*,
  804 F.3d 807 (6th Cir. 2015) ..............................................................................37

*Muzikowski v. Paramount Pictures Corp.*,
  322 F.3d 918 (7th Cir. 2003) ...............................................................................1

*Nat'l Broad. Co. v. United States*,
  319 U.S. 190 (1943)...............................................................................................27

*Oling v. Air Line Pilots Ass'n*,
  346 F.2d 270 (7th Cir. 1965) ..............................................................................33

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978)...............................................................................................29

*Ordower v. Office of Thrift Supervision*,
  999 F.2d 1183 (7th Cir. 1993) ..............................................................50, 51, 53

*Otwell v. Ala. Power Co.*,
  747 F.3d 1275 (11th Cir. 2014) ........................................................................33

**TABLE OF AUTHORITIES (cont'd)**

**Pages**

*Regents Univ. Sys. of Georgia v. Carroll,*
  338 U.S. 586 (1950) .................................................................................29, 35

*Reschini v. First Fed. Sav. & Loan Ass'n of Ind.,*
  46 F.3d 246 (3d Cir. 1995) ........................................................... *passim*

*Roberts v. Napolitano,*
  798 F. Supp. 2d 7 (D.D.C. 2011) ................................................19, 33, 37

*S. Aus. Coal. Cmty. Council v. SBC Commc'ns Inc.,*
  191 F.3d 842 (7th Cir. 1999) .................................................................1

*Sandwich Isles Commc'ns, Inc. v. Nat'l Exch. Carrier Ass'n,*
  799 F. Supp. 2d 44 (D.D.C. 2011) ........................................................33

*Sedima v. Imrex Co.,*
  473 U.S. 479 (1985) .............................................................25, 26, 27

*Silverman v. Commodity Futures Trading Comm'n,*
  549 F.2d 28 (7th Cir. 1977) ..................................................................29

*St. John's United Church of Christ v. City of Chi.,*
  401 F. Supp. 2d 887 (N.D. Ill. 2005) ................................................32, 40

*St. John's United Church of Christ v. City of Chi.,*
  502 F.3d 616 (7th Cir. 2007) ...............................................23, 33, 41, 46

*United States v. Radio Corp. of Am.,*
  358 U.S. 334 (1959) .............................................................................27

*Williams v. Brown,*
  398 F. Supp. 155 (N.D. Ill. 1975) ........................................................28

**Statutes**

18 U.S.C. § 1001 ........................................................................................8

18 U.S.C. § 1343 ......................................................................................26

18 U.S.C. § 1962 ........................................................................................1

18 U.S.C. § 1964 ............................................................................18, 24, 28

**TABLE OF AUTHORITIES (cont'd)**

18 U.S.C. § 1964(a) ..................................................................................1, 18, 24, 53

18 U.S.C. § 1964(c) ............................................................................................ *passim*

28 U.S.C. § 1291 ........................................................................................................1

28 U.S.C. § 1331 ........................................................................................................1

47 U.S.C. § 151 ........................................................................................................27

47 U.S.C. § 312(b) ....................................................................................................34

47 U.S.C. § 401(b) ....................................................................................................35

47 U.S.C. § 402(b) ....................................................................................................39

49 U.S.C. § 46110 ...............................................................................................46, 47

Fed. R. App. P. 32(a)(5) ............................................................................................55

Fed. R. App. P. 32(a)(6) ............................................................................................55

Fed. R. App. P. 32(a)(7)(B) .......................................................................................55

Fed. R. App. P. 32(f) .................................................................................................55

Fed. R. Civ. P. 12(b)(1) .............................................................................................23

Fed. R. Civ. P. 12(b)(6) .............................................................................................16

Fed. R. Civ. P. 26(b) .................................................................................................29

Fed. R. Civ. P. 26(b)(1) .......................................................................................16, 28

Fed. R. Civ. P. 30(a) and (b) .....................................................................................57

Fed. R. Civ. P. 30(d) .................................................................................................57

Fed. R. Civ. P. 32(b) .................................................................................................55

Fed. R. Civ. P. 32(c) .................................................................................................55

## JURISDICTIONAL STATEMENT

The United States District Court for the Northern District of Illinois ("District Court") has federal question subject matter jurisdiction over Skywave Networks, LLC's ("Skywave's") claims against Defendant-Appellees William J. DiSomma, Paul A. Gurinas, Matthew Hinerfeld, John Madigan, Jump Trading, LLC, and Virtu Financial, Inc. (collectively, "Appellees") for violations of 18 U.S.C. § 1962, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a).  *See* 18 U.S.C. § 1964(a) ("The district courts of the United States **shall** have jurisdiction to prevent and restrain violations of section 1962 of this chapter . . . .").

This Court has jurisdiction under 28 U.S.C. § 1291 to consider Skywave's appeal of the District Court's judgment dismissing Skywave's RICO claims without prejudice for lack of subject matter jurisdiction.  *S. Aus. Coal. Cmty. Council v. SBC Commc'ns Inc.*, 191 F.3d 842, 844 (7th Cir. 1999) (explaining that "an absolute dismissal," such as for want of subject matter jurisdiction, even if without prejudice "is a final," appealable decision); *see also Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 923 (7th Cir. 2003); Appx0012–13.  The District Court entered its judgment dismissing Skywave's RICO claims against Appellees on December 2, 2025, Appx0001, and Skywave timely filed its notice of appeal of that judgment on December 31, 2025, D.I. 123.[1]

---

[1] All "D.I." citations refer to the District Court docket identifiers in Case No. 1:24-cv-09650 (N.D. Ill.).

## STATEMENT OF THE ISSUE

Whether the District Court erred in dismissing Skywave's RICO claims for lack of subject matter jurisdiction when Skywave brought its claims in the only forum—a federal district court—that has jurisdiction to adjudicate Skywave's RICO claims against the private actor Appellees and to award the relief Skywave requests.

## STATEMENT OF THE CASE

Skywave filed suit in the District Court against the Appellees for RICO violations. As alleged in Skywave's complaint, the Appellees have exploited licenses that the FCC granted to non-party 10Band for *only* research purposes ("Experimental Licenses"), using them for the trading of financial instruments ("Commercial Trading" or "Commercial Trades"). Skywave seeks money damages to remedy the financial harm that it has suffered and an injunction against the Appellees to prevent any future harm. The Court incorrectly dismissed Skywave's RICO claims for lack of subject matter jurisdiction, erroneously concluding that Skywave's RICO claims were inextricably intertwined with the Federal Communications Commission's ("FCC") decisions regarding 10Band's Experimental Licenses.

### A.   Skywave Planned To Build A Commercial Trading Network Using Shortwave Communications.

Skywave sought to build the first trading network using shortwave communications for trading financial instruments. It "developed trading network technology that provides traders with a quantum leap in communications speed, particularly for transoceanic communications." D.I. 90 ¶ 32. Skywave's technology uses shortwave radio, which is commonly associated with older technologies like AM radio. *Id*. ¶ 33. Skywave's technology allows trades to "traverse the Atlantic Ocean faster than [they] could over traditional networks that used a combination of transoceanic optical fiber and microwave, previously the fastest communication method." *Id.* ¶ 32.

3

Skywave planned to implement its "shortwave trading network technology through a transcontinental network between the United States and Europe." *Id.* ¶ 36. In late 2015 and early 2016, Skywave met with FCC officials to present its plans for a Part 73—*i.e.*, commercial—shortwave license, and those officials declared their support. *Id.* ¶¶ 38, 45. By early 2016, Skywave began to commercialize its innovative shortwave trading network technology ("Skywave Network"), executing agreements to fund the network and begin commercial trading on it. *Id.* ¶¶ 39–42.

The Appellees' unlawful conduct, however, prevented Skywave from completing and using the Skywave Network. Specifically, Skywave alleges in its First Amended Complaint that the Appellees hampered Skywave's ability to: secure business partners; build the Skywave Network; operate the Skywave Network; and access trading markets and profit from trading via the Skywave Network. *Id.* ¶ 152.

**B.** **The Appellees Obtained Access To Experimental Licenses And Used Those Licenses To Build And Operate An Unauthorized Commercial Trading Network.**

The Appellees are individuals and companies who worked together to build and operate a high-frequency trading ("HFT") network that includes shortwave radio infrastructure. *Id.* ¶ 1. The Appellees "have constructed a worldwide network of optical fiber, microwave transmitters, and shortwave connections between trading exchanges to leverage the speed of shortwave connections and profit from Commercial Trading." *Id.* ¶ 52. The FCC may issue commercial shortwave licenses to facilitate such networks,

which law-abiding companies utilize. *Id.* ¶ 43–46. But, rather than obtaining FCC commercial shortwave licenses for their shortwave connections, Appellees sought to gain an illegal HFT market advantage by using FCC experimental shortwave licenses instead. *Id.* ¶ 47–48. FCC experimental shortwave licenses are not bound by the limitations associated with FCC commercial shortwave licenses, including limitations on frequencies, emissions, and power. *Id.* ¶¶ 43–48. Without those limitations, firms conducting HFT activities on FCC experimental shortwave licenses have a significant speed advantage over firms using FCC commercial licenses. *Id.* This speed advantage effectively eliminates competitors because in HFT "the fastest network wins the trade and reaps the economic benefits, and every millisecond counts." *Id.* ¶¶ 25–30. However, FCC experimental shortwave licenses are ***not authorized*** for commercial purposes—such as the Appellees' Commercial Trading. *Id.* ¶¶ 46–48.

The Appellees gained access to at least five FCC Experimental Licenses owned by non-party 10Band. *Id.* ¶¶ 64–85, 119–120. First, the Appellees inserted themselves—either by directing 10Band or by purporting to act on 10Band's behalf—in FCC applications for issuance, modification, and renewal of 10Band's Experimental Licenses. *Id.* ¶¶ 2, 65–85. Then, once those applications were granted, the Appellees used—and continue to use—10Band's Experimental Licenses for Commercial Trading. *Id.* ¶¶ 89, 93, 119–120.

1.     **The Appellees Inserted Themselves In The Experimental License Applications That Non-Party 10Band Filed At The FCC.**

The individuals who purported to represent 10Band in FCC license applications included Appellees Hinerfeld and Madigan.  Appellee Hinerfeld is general counsel of Appellee Jump Trading and also a board member of 10Band's parent company.  *See id.* ¶ 91.  And Appellee Madigan "supervised and participated in the preparation, submission, and prosecution of [10Band's] FCC filings for Experimental Licenses, and he supervised the development of the technology for [10Band's] transmission systems, all while holding a position as [Appellee] Jump Trading's Technologist and Manager of Telecom Infrastructure."  *Id.* ¶ 102.

On September 21, 2016, 10Band applied for its first Experimental License, seeking a 60-month term at a station in Elburn, Illinois ("Elburn I Experimental License").  *Id.* ¶ 64.  The FCC granted the Elburn I Experimental License with an effective date of November 10, 2016 and an expiration date of November 1, 2021.  *Id.* ¶ 66.  10Band later submitted two renewal applications and three modification applications for the Elburn I Experimental License.  *Id.* ¶¶ 67–69.  Appellee Hinerfeld signed both renewal applications as an "[a]uthorized [r]epresentative" of 10Band.  *Id.*  Appellee Hinerfeld also signed all three modification applications as either an "[i]ndividual [a]pplicant" or "[a]uthorized employee" of 10Band.  *Id.*  The FCC granted each of those applications.  *Id.*

On January 22, 2020, 10Band applied for three additional Experimental Licenses: (i) a license for a 60-month term at a station location in Elburn, Illinois ("Elburn II

Experimental License Application"), *id.* ¶ 70; (ii) a license for a 60-month term at a station location in Wayne, New Jersey ("Wayne Experimental License Application"), *id.* ¶ 74; and (iii) a license for a 60-month term at a station location in Everett, Washington ("Everett Experimental License Application").  *Id.* ¶ 78.  Appellee Hinerfeld signed all three of those applications as an "[a]uthorized employee" of 10Band.  *Id.* ¶¶ 71, 75, 79. The FCC granted the Elburn II, Wayne, and Everett Experimental Licenses with effective dates of February 2020 and expiration dates of February 2022.  *Id.* ¶¶ 72, 76, 80.  10Band subsequently submitted modification applications for all three licenses, *id.* ¶¶ 73, 77, 81, which Hinerfeld signed as an "[i]ndividual [a]pplicant" of 10Band.  *Id.* ¶¶ 73, 77, 81.  The FCC granted each of the modification applications.

Around March 2020, 10Band's parent company, New Line Networks, LLC ("NLN") "acquired substantially all of Western Maritime Broadcast LLC ('Western Maritime'), including Western Maritime's Experimental License . . . for a 24-month term at a station location in Lynnwood, Washington with an effective date of February 8, 2019, and an expiration date of February 1, 2021 ('Lynnwood Experimental License')."  *Id.* ¶ 82. NLN assigned its rights to the Lynnwood Experimental License to 10Band, and on March 6, 2020, 10Band filed an application for consent of assignment of the license.  *Id.* ¶¶ 82–83.  Appellee Hinerfeld signed that application as an "[o]fficer" of 10Band, and the FCC granted the assignment effective April 3, 2020.  *Id.* ¶¶ 83–84.  Thereafter, 10Band submitted three modification applications for the Lynnwood Experimental License.  *Id.*

¶ 85.  Appellee Hinerfeld signed each of those applications as either an "[o]fficer" or "[a]uthorized employee" of 10Band.  *Id.*  The applications were "granted with the special conditions that the operation was 'for experimental purposes only,' that 'provision of services [was] not permitted,' and that no 'market trial or stock trading' was permitted." *Id.*

The applications described above—signed by Appellee Hinerfeld on behalf of 10Band—each contained a certification that "all statements in the application were true, complete, and correct to the best of 10Band or Hinerfeld's knowledge."  *Id.* ¶ 108.[2]  Yet, the applications also consistently stated that 10Band's activities under the Experimental Licenses would be "experimental" in nature, *id.* ¶ 109; *see also id.* ¶¶ 113–14, even though the Appellees were using them for Commercial Trading.   In at least one of those applications, Appellee Madigan "certified that 10Band had conducted its operations over the preceding six years 'pursuant to experimental authority.'"  *Id.* ¶ 111.  The applications also falsely stated "that the modem equipment used under each of [10Band's] Experimental Licenses—TrellisWare TW-621—would not be capable of broadcasting station identification," even though TrellisWare TW-621 is an advanced and modern

---

[2] "The FCC forbids '[w]illful false statements made' in FCC license '[a]pplications, amendments, and related statements of fact.'"  D.I. 90 ¶ 44.  Such willful false statements are "punishable by fine and imprisonment" pursuant to 18 U.S.C. § 1001.  *Id.*

modem that is capable of broadcasting station identification (functionality that has been possible since the advent of radio broadcasting). *Id.* ¶ 110.[3]

### 2. The Appellees Have Used 10Band's Experimental Licenses For Commercial Trading.

Once 10Band's Experimental Licenses were granted (and renewed and modified), the Appellees began to use those Experimental Licenses for Commercial Trading. As a result of the Appellees' conduct, Skywave's business faltered. *Id.* ¶¶ 152–56. Skywave's partnerships fell apart, and its partially-built network sat as a sunk cost. *Id.*

Skywave attempted to investigate the source of the problem and learned that 10Band's Experimental Licenses were being improperly used for Commercial Trading. *Id.* ¶ 149. However, Skywave had no way to identify the Appellees as the culprits because each of 10Band's Experimental License applications had requested confidentiality based on representations that information in the applications contained "'[c]onfidential [i]nformation' was not 'available to the public and . . . [was] not generally available from any other source.'" *Id.* 90 ¶ 150; *see also id.* ¶¶ 7, 65, 68, 71, 75, 79, 136, 143–44. The FCC granted those confidentiality requests, *see id.* ¶¶ 65, 67, 71, 75, 79, which allowed the applications to withhold from public inspection the narrative descriptions of the purported experimental work. *Id.* ¶ 150. In addition, the Appellees were not broadcasting a station identifier, impeding Skywave's investigation of the Appellees'

---

[3] Transmitting without a station identifier would make it difficult to detect when and where the Appellees were actually transmitting. D.I. 90 ¶¶ 110, 151.

connections to the Commercial Trading using the Experimental Licenses.  D.I. 90 ¶¶ 110, 151.

In 2022, a new analytics tool called A7 came online; it recorded Commercial Trading activity and enabled Skywave to see that HFT trading was being conducted through shortwave transmissions.  *Id.* ¶¶ 143–151.  Skywave subsequently investigated the source of these trades and identified the Appellees as the ones using 10Band's Experimental Licenses.  *Id.*  Skywave was able to map a global Commercial Trading network, which revealed connections in the United States that were operating under 10Band's Experimental Licenses:



**Figure 1: Overview of Defendants' Commercial Trading Network**

*Id.* ¶ 52 & Fig. 1; ¶¶ 143–151. Skywave mapped the Appellees' worldwide network of shell companies and communications infrastructure—including data centers in Illinois, New Jersey, Washington, Brazil, United Kingdom, Germany, and Japan, as well as a shortwave transmission station in Canada. *Id.* ¶¶ 53–63. Skywave's investigation was so thorough, it even discovered a hidden optical fiber cable that travels under a driveway on a farm in Dunbridge, Ohio and then connects to the Appellees' network:



**Figure 2: Hidden Connection Between Defendants' U.S. and Canadian Networks**

*Id.* ¶¶ 61–63 & Fig. 2.

Skywave also uncovered a web of shell companies connecting the various entities with licenses covering the different parts of the network, all of which led back to the Appellees.



**Figure 3: Overview of Defendants' HFT Enterprise**

*Id.* ¶¶ 86–93 & Fig. 3.

**C.      In September 2023, Skywave Filed A Petition At The FCC That Narrowly Challenged One Renewal Application.**

Between October 2021 and August 2023, 10Band submitted a series of modification applications to the FCC.   *See* D.I. 102-1 at 2–3.   Importantly, 10Band's October 2021 modification application was the ***first*** application 10Band filed that included a narrative statement that was not protected by a confidentiality request.  D.I. 90 ¶ 142; *see also* D.I.

90-87; D.I. 90-89.  That narrative statement indicated—for the first time publicly—that 10Band intended to use an Experimental License to conduct limited-scope **market trials** of high-frequency technology.  D.I. 90 ¶ 142; D.I. 90-89; *see also* D.I. 102-1 at 3 ("On October 19, 2021, 10Band applied to modify its conventional experimental license into a 'market trial' license . . . .").  The FCC granted that application on January 18, 2022.  D.I. 102-1 at 3.

On November 25, 2022, 10Band filed an application to reorganize four of its Experimental Licenses (Elburn I, Elburn II, Everett, and Wayne) all under the same call sign for a **market trial**, which the FCC granted on December 23, 2022.  *Id.*  And on August 8, 2023, 10Band filed an application for "renewal of its market trial experimental license," which the FCC granted on August 17, 2023.  *Id.*

At that point in August 2023, although Skywave had not yet completed its investigation into the Appellee's conduct, Skywave did have limited information from the modification and renewal applications about 10Band's intent to use its Experimental Licenses to conduct market trials.  *Id.*; D.I. 90 ¶ 142.  Accordingly, on September 18, 2023—just one month after the FCC granted 10Band's latest renewal application— Skywave filed a Petition for Reconsideration at the FCC ("2023 Petition"), asking the FCC to reconsider and deny only 10Band's latest renewal application.  D.I. 102-1.

Skywave made three arguments in the 2023 Petition.  First, Skywave argued that the challenged renewal "exceeded the bounds of" an FCC rule that allowed only one

renewal term.  *Id.* at 3.  Second, Skywave argued that the renewal was unwarranted because 10Band's supposed experiment, as permitted under the Experimental License, "[was] over" and 10Band was now "transmitting financial information to gain an edge in the financial markets."  *Id.* at 4–5.  And third, Skywave argued that 10Band had allowed "NLN Holdings and its subsidiary Newline Networks" (NLN) to use 10Band's "experimental facilities" to "provid[e] services to . . . Jump Trading and Virtu Financial" in violation of an FCC rule requiring users of experimental facilities to have their own experimental license.  *Id.* at 6.

The only remedy Skywave sought in the 2023 Petition was reconsideration and denial of one of 10Band's renewal applications.  *Id.* at 7.  The 2023 Petition did not seek any relief against the Appellees.  The FCC has not yet issued a ruling on Skywave's 2023 Petition.  Appx0006.

### D.     Skywave's RICO Complaint In The District Court Broadly Challenges The Appellees' Unlawful Conduct.

Skywave continued its investigation into the Appellees and their role in obtaining and using 10Band's Experimental Licenses.  On October 7, 2024, Skywave filed suit in the District Court, alleging RICO violations directly against the Appellees (and others).  D.I. 1.  After the Appellees moved to dismiss, Skywave filed the First Amended Complaint on February 13, 2025.  D.I. 90.  In that First Amended Complaint, Skywave, among other things, narrowed the named defendants, including removing 10Band, but maintained its

RICO claims, pleading that the Appellees engaged in a racketeering scheme to illicitly gain and profit from an advantage in Commercial Trading.  *Compare* D.I. 90, *with* D.I. 1.

Skywave's First Amended Complaint alleges multiple categories of unlawful predicate activity.  One category, for example, includes allegations that the Appellees directed 10Band to make misrepresentations to the FCC in applications to grant, modify, and renew Experimental Licenses.   For example, Skywave alleges that Appellees DiSomma, Gurinas, Jump Trading, and Virtu directed non-party 10Band (and individuals purporting to represent 10Band in FCC license applications, including Appellees Hinerfeld and Madigan) "to make false statements, false promises, or material misrepresentations . . . in FCC license applications." D.I. 90 ¶ 107.  Skywave thus alleges that the Appellees' predicate acts of racketeering include:

> [T]he submission of each license application, modification application, renewal application, consent of assignment application, and confidentiality request for the . . . Experimental Licenses—each of which constitutes the use of wire for the purpose of executing [Appellees'] racketeering scheme and is an act of wire fraud in violation of 18 U.S.C. § 1343.

*Id.* ¶ 106.

As another category of unlawful predicate activity underlying the racketeering scheme, Skywave alleges that after 10Band's Experimental Licenses were granted (and modified and renewed), the Appellees unlawfully conducted Commercial Trading using the Experimental Licenses.   Specifically, Skywave alleges that the Appellees have

conducted Commercial Trading using the Elburn I, Elburn II, Wayne, Everett, and Lynnwood Experimental Licenses for Commercial Trading.  *See, e.g.*, *id.* ¶ 119.  The Appellees "leverage[d] the speed advantage of shortwave communications operated under [those] Experimental Licenses to gain a dominant advantage over market participants, including latency arbitrage, to win [commercial] trades and reap the resulting financial benefits of those trades."  *Id.* ¶ 104.

Skywave seeks relief directly against the Appellees[4] to remedy those RICO violations.  For example, Skywave seeks an injunction "restraining each [of the Appellees] . . . from any further direct or indirect misuse, including for Commercial Trading, of Experimental Licenses."  *Id.* at 59 (Prayer For Relief).  Skywave also seeks an award of damages "for the economic harm suffered by Skywave—including without limitation its lost profits and amounts by which [the Appellees] have been unjustly enriched—due to [the Appellees'] racketeering."  *Id.* at 60.

### E.     The District Court Dismissed Skywave's First Amended Complaint For Lack of Subject Matter Jurisdiction.

The Appellees moved to dismiss the First Amended Complaint under Rules 12(b)(1) and 12(b)(6).  D.I. 102.  The Appellees argued that the District Court lacked jurisdiction over Skywave's RICO claims, that Skywave failed to adequately plead

---

[4] 10Band—the licensee for the Experimental Licenses—is not a Defendant in Skywave's action in the District Court nor an Appellee in this appeal, and Skywave seeks no relief from 10Band.  *See* D.I. 90.

causation and predicate acts of wire fraud, and that Skywave's claims were time-barred. *See id.* Skywave opposed the motion, D.I. 108, and the Appellees filed a reply brief, D.I. 115.[5]

On December 2, 2025, the District Court granted the Appellees' motion to dismiss on *only* jurisdictional grounds. *See* Appx0001–14. The District Court found that Skywave's RICO claims were "inextricably intertwined" with the FCC's decisions to grant, modify, and renew 10Band's Experimental Licenses. Appx0006–09. Specifically, the District Court construed Skywave's RICO claims as asking the District Court to "determine whether 10Band's licenses are for permissible experimental purposes and whether they were used within that scope" and determined that the FCC had already "answered" those questions when it "granted, modified, and renewed" 10Bands licenses. Appx0007. The District Court found that any misuse by the Appellees of those licenses was an "outcome" of those FCC decisions. Appx0009. Because such FCC decisions are subject to a special review statute that designates their review to proceed directly to the D.C. Circuit, Appx0003–04 (citing 47 U.S.C. § 402(b)), the District Court concluded it could not hear Skywave's RICO claims.

Additionally, the District Court found that Skywave's 2023 Petition was "[s]ignificant[]" because it "placed the core issue in [Skywave's RICO] complaint—

---

[5] The Appellees' reply brief, as initially filed, was corrected to properly identify that 10Band is not a defendant in this action. *See* D.I. 110 at 1.

[D]efendants' purported deceit—before the FCC." Appx0011. Even though the 2023 Petition asked the FCC to reconsider its decision to grant one renewal application filed by non-party 10Band, the District Court viewed Skywave's RICO claims against the Appellees as a "[r]epackaging" of that 2023 Petition. Appx0011–12. The District Court concluded that because Skywave's claims are within the "wheelhouse" of the FCC, it lacked subject matter jurisdiction over those claims. Appx0011–13. Skywave timely appealed. D.I. 123.

## SUMMARY OF THE ARGUMENT

I.      This Court reviews de novo the District Court's grant of a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1).

II.     Skywave filed its RICO claims in a federal district court, which is the correct forum under the RICO statute. 18 U.S.C. § 1964. The District Court erred by dismissing those claims for lack of subject matter jurisdiction.

IIA.    By statute, a United States district court is the only forum with subject matter jurisdiction to adjudicate claims brought under the RICO statute. 18 U.S.C. § 1964(a). Skywave alleges that it has been harmed by the Appellees' unlawful racketeering activity. Skywave exercised its statutory right under § 1964(c), to bring a private cause of action against the Appellees for alleged RICO violations. In its First Amended Complaint, Skywave asserts causes of action over which *only* a federal district

18

court has jurisdiction, against private parties over which *only* a federal district court can assert jurisdiction, seeking remedies that *only* a federal district court can grant. Accordingly, the District Court erred when it dismissed Skywave's RICO claims for lack of subject matter jurisdiction.

        **IIB**. In dismissing Skywave's attempt to seek relief in a federal district court to remedy the harm that the Appellees have caused, the District Court concluded that Skywave can seek relief only from the FCC directly. But the FCC does not have jurisdiction or authority to (i) adjudicate Skywave's causes of action under the RICO statute; (ii) adjudicate claims against the Appellees who are not themselves FCC licensees; or (iii) award the relief Skywave requests, including an injunction and damages.

        **III**. In dismissing for lack of subject matter jurisdiction, the District Court concluded that Skywave's RICO claims are "inextricably intertwined" with FCC decisions. That conclusion was erroneous.

        The "inextricable intertwinement" doctrine[6] is a narrow one that has been applied in limited circumstances. A mere overlap in the facts underlying two proceedings is not sufficient to meet the threshold. Courts have articulated the test for applying the doctrine differently—some focus on whether the claims "could or should have" been brought in the agency, others focus on whether a plaintiff is collaterally attacking an agency order,

---

[6] This doctrine is, alternatively, referred to as the inescapable intertwinement doctrine. *See, e.g.*, *Roberts v. Napolitano*, 798 F. Supp. 2d 7, 11–12 (D.D.C. 2011).

and others focus on whether a plaintiff is claiming to be injured "by" the agency. But all articulations involve comparing a plaintiff's asserted claims and requested relief in the district court to the claims and relief that could be or have been sought in the agency.

Here, under any articulation of the test for inextricable intertwinement, Skywave's RICO claims are not barred. Because the FCC is not authorized to adjudicate RICO claims or award Skywave's requested economic damages or injunctive relief, Skywave could not have brought its claims in the FCC. Additionally, Skywave is not attacking any FCC order; indeed, Skywave concedes that its requested relief does not require any change to the FCC's decisions to grant 10Band's Experimental Licenses. And Skywave also does not claim to have been injured *by* the FCC; on the contrary, it is the Appellees who have caused grave harm to Skywave through their fraudulent conduct and unlawful use of FCC licenses.

**IV.**    In addition to its erroneous conclusion that Skywave's RICO claims are inextricably intertwined with FCC decisions, the District Court made at least three underlying errors in its analysis of the Appellees' motion to dismiss. *First*, the District Court contravened the motion to dismiss standard by making inferences against Skywave regarding the allegations and relief sought in the First Amended Complaint. *Second*, the District Court incorrectly criticized Skywave for supposedly dressing up challenges to FCC orders as a RICO claim, even though Skywave's allegations are directed at wrongful conduct that falls outside the FCC's purview. And *third*, the District

Court erred in finding that the Appellees' misuse of 10Band's Experimental Licenses was an "outcome" of the FCC's decisions to grant 10Band's Experimental Licenses; on the contrary, the Appellees' later misuse of those Experimental Licenses was not authorized by the FCC and is therefore ***not*** an outcome of the licensing decisions.

  **V.**  Wholesale dismissal of Skywave's RICO claims is not warranted.  To the extent the District Court has concerns about collateral attacks on FCC decisions, those concerns can and should be addressed without dismissal of the entire case.  The District Court should have issued a narrower ruling to address its concern regarding any "potential conflict" between Skywave's claims and the FCC's licensing decisions while still maintaining Skywave's RICO action.  Thus, Skywave should be allowed to proceed with its RICO claims, over which the District Court has federal question jurisdiction.

## ARGUMENT

While Skywave was working for years to build the first-ever trading network using shortwave communications for Commercial Trading that would also be compliant with FCC regulations, the Appellees chose a different approach. As alleged by Skywave in its First Amended Complaint, the Appellees, through a racketeering enterprise shielded by a web of shell companies, sought to gain an unfair advantage over competitors like Skywave. To that end, the Appellees fraudulently obtained access to Experimental Licenses held by non-party 10Band and then used those Experimental Licenses to illicitly operate a global Commercial Trading network. D.I. 90 ¶¶ 64–85, 116–125. In so doing, the Appellees caused—and continue to cause—harm to Skywave.

To be clear, at this point, Skywave's allegations are just that: allegations. Skywave will bear the burden of proving the merits of its RICO allegations. Undoubtedly, the Appellees will dispute the merits of Skywave's allegations and present the factfinder with their own version of events. That dispute on the merits should be allowed to develop through the litigation process in the District Court. But the District Court foreclosed the dispute by dismissing for lack of subject matter jurisdiction, depriving Skywave of any opportunity to seek redress for the harm that the Appellees have caused.

The District Court's dismissal should be reversed for several reasons. **_First_**, as explained in Section II, Skywave filed suit under the RICO statute in the **_only_** forum that has statutory subject matter jurisdiction to adjudicate those claims, namely, a federal

district court.  The District Court found, however, that Skywave is limited to seeking relief directly in the FCC.  But the FCC does not have jurisdiction to adjudicate Skywave's claims or award Skywave's requested relief, including economic damages.  *Second*, as explained in Section III, the District Court's conclusion that Skywave's RICO claims are "inextricably intertwined" with FCC decisions is legally and factually unsupported.  *Third*, as explained in Section IV, the District Court committed errors in considering the Appellees' motion to dismiss.  And *fourth*, as explained in Section V, even to the extent the District Court had concerns about intertwinement with FCC decisions, those concerns are addressable through less drastic means than wholesale dismissal.  Therefore, this Court should reverse the erroneous ruling of the District Court and remand this case for further proceedings.

## I.    STANDARD OF REVIEW

This Court "review[s] *de novo* the [D]istrict [C]ourt's grant of a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."  *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007).  When considering a motion to dismiss for lack of subject matter jurisdiction, "a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff."  *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999) (internal citation omitted).

## II.     SKYWAVE CORRECTLY FILED ITS RICO CLAIMS IN FEDERAL DISTRICT COURT, THE ONLY FORUM THAT HAS SUBJECT MATTER JURISDICTION.

Skywave filed its RICO claims against the Appellees in the District Court.  The District Court dismissed for lack of subject matter jurisdiction, finding that Skywave must seek relief directly from the FCC.  That was wrong for two reasons: (A) the RICO statute establishes federal district court as the correct forum for a private party (like Skywave) to assert RICO claims, 18 U.S.C. § 1964; and (B) the FCC does not have the authority to adjudicate the full scope of Skywave's claims against the Appellees.

### A.     The RICO Statute Establishes The District Court As The Forum With Subject Matter Jurisdiction Over Skywave's RICO Claims.

In 18 U.S.C. § 1964, Congress unambiguously established that federal district court is the adjudicatory forum that has jurisdiction over federal RICO claims.  18 U.S.C. § 1964(a) ("***The district courts of the United States shall have jurisdiction*** to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders . . . .").  The statute expressly provides for a private right of action to be brought by a plaintiff for damages against a defendant in federal district court:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter ***may sue therefor in any appropriate United States district court*** and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .

18 U.S.C. § 1964(c).  The Supreme Court has explained that Congress created such a private right of action so that RICO enforcement would not be limited to "injunctive

actions by the United States." *Sedima v. Imrex Co.*, 473 U.S. 479, 486–87 (1985). Thus, § 1964(c) is a "private attorney general provision" designed as an incentive to "fill prosecutorial gaps." *Id.* at 493.

Here, Skywave acted as the quintessential incentivized "private attorney general," thoroughly investigating the Appellees' conduct. *See id.* For example, Skywave tracked—to the best of its ability—the numerous applications filed on behalf of 10Band at the FCC for issuance, modification, and renewal of its Experimental Licenses. *See, e.g.,* D.I. 90 ¶¶ 64–85, 104–15. Skywave also painstakingly mapped the Appellees' worldwide network of shell companies and communications infrastructure—from data centers in major cities across the world to a hidden optical fiber cable under a driveway on a farm in Ohio. *Id.* ¶¶ 53–63.

As a result of its detailed investigation, Skywave was able to identify the Appellees as the perpetrators of the unlawful activity emanating from stations operated under 10Band's Experimental Licenses. *See, e.g., id.* ¶¶ 52 & Fig. 1, 61 & Fig. 2, 86 & Fig. 3. Skywave determined that the Appellees had violated the RICO statutes based on underlying predicate acts that include varied acts of wire fraud. *Id.* ¶¶ 106, 119. For example, the Appellees' enterprise made "false statements, false promises, or material misrepresentations" in communications with the FCC, and thus "the submission of each license application, modification application, renewal application, consent of assignment application, and confidentiality request" that contained such a misrepresentation was "an

25

act of wire fraud in violation of 18 U.S.C. § 1343."[7]  *Id.*  ¶ 106–108.  As another example, Appellees' enterprise used the licenses, after obtaining access to them, to conduct Commercial Trading in violation of the restrictions on 10Band's Experimental Licenses. D.I. 90 ¶¶ 116–125.  "[E]ach commercial trade made by Defendants using shortwave networks granted to 10Band" under the Experimental Licenses "constitutes the use of wire for the purpose of executing [the Appellees'] racketeering scheme and is an act of wire fraud in violation of 18 U.S.C. § 1343."  *Id.*  ¶ 119.

Having concluded its investigation, Skywave exercised its statutory right to assert a private cause of action under the RICO statute.  *See* 18 U.S.C. § 1964(c).  And Skywave did so in the forum that Congress expressly authorized to adjudicate such claims, namely, a federal district court.   In view of the factual allegations supporting Skywave's complaint—which the District Court was required to accept as true, *Long*, 182 F.3d at 554—Skywave "should at least be given access to [the] legal remedy" of damages provided by § 1964(c).  *Sedima*, 473 U.S. at 487.  Dismissal for lack of jurisdiction was thus improper.

---

[7] Although the FCC may bring an enforcement action against 10Band for its dissemblance, the FCC's authority would not obviate the character of the lies as predicates for Skywave's RICO claims. Further, any enforcement action by the FCC would not ameliorate Skywave's significant harm caused by Defendants' activity because the FCC has no authority to award damages to a RICO plaintiff.

**B.    The FCC Does Not Have Jurisdiction To Adjudicate The Full Scope Of Skywave's RICO Claims Or To Grant Skywave's Requested Relief.**

In dismissing for lack of subject matter jurisdiction, the District Court found that Skywave is limited to seeking relief in the FCC.  Indeed, the District Court stated that Skywave's RICO claims are in the FCC's "wheelhouse."  Appx0011–12.  That was error.

The FCC is an administrative agency with a statutory purpose of "regulating interstate and foreign commerce in communication by wire and radio."  47 U.S.C. § 151.  The FCC has no authority to enforce the RICO statute because, while the FCC may "regulat[e] interstate . . . commerce" via its licensing decisions, *see id.* §§ 151, 312, "it is *not* [the FCC's] function to apply" federal laws related to interstate commerce.  *See, e.g., Nat'l Broad. Co. v. United States*, 319 U.S. 190, 223–24 (1943) ("*NBC*"); *United States v. Radio Corp. of Am.*, 358 U.S. 334, 335–44 (1959) (determining that an antitrust suit against an FCC licensee challenging an "exchange . . . approved by the [FCC]" was not a "direct review" of that exchange because "the FCC was not intended to have any authority to pass on antitrust violations"); *see also Sedima*, 473 U.S. at 485–89 (explaining that RICO was "model[ed]" after the Clayton Act, "under which private and governmental actions are entirely distinct").

To be clear, Skywave does not dispute that questions about 10Band's Experimental Licenses themselves—including whether to grant, modify, or renew those licenses— would be within the purview of the FCC.  In fact, Skywave filed the 2023 Petition in the FCC, requesting reconsideration and denial of one such renewal application.  D.I. 102-1.

27

But Skywave's First Amended Complaint is directed towards different actors and seeks different relief under different authority. Skywave sued the Appellees—who are not themselves FCC licensees—for RICO violations based on their fraudulent and unlawful activity. Those claims are properly asserted in the District Court, *not* the FCC.

That the FCC's authority does not extend to adjudicating disputes between private litigants is unsurprising because the Constitution charges the federal district courts with that task. *See Williams v. Brown*, 398 F. Supp. 155, 157 (N.D. Ill. 1975) ("[W]here legal rights have been invaded, and a federal statute provides a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946))). For plaintiffs like Skywave, removing adjudication of RICO disputes from district courts to the FCC would not only directly contradict Congress's RICO statutory scheme in 18 U.S.C. § 1964 (as discussed above), it would frustrate Skywave's ability to prove its claims and obtain compensatory relief.

As a threshold issue, *none* of the Appellees against whom Skywave has asserted RICO claims are, themselves, FCC licensees under the Experimental Licenses at issue. Thus, it remains unclear—and the District Court's opinion does not address—how Skywave even could seek relief against the Appellees through any action in the FCC.

As another example, Skywave's claims in the District Court are governed by the Rules, which allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed.

28

R. Civ. P. 26(b)(1); *see also, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevance for the purposes of discovery "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947))). By contrast, the Seventh Circuit has firmly established that "[t]here is no basic constitutional right to pretrial discovery in administrative proceedings." *Silverman v. Commodity Futures Trading Comm'n*, 549 F.2d 28, 33 (7th Cir. 1977) (citing *Starr v. Comm'r of Internal Revenue*, 226 F.2d 721, 722 (7th Cir. 1955)). Skywave's claims require the untangling of a web of shell companies, many confidential FCC filings, and a global network of communications infrastructure. *See generally* D.I. 90. Skywave will undoubtedly need—and is entitled—to take discovery to untangle that web to support its claims. *See* Fed. R. Civ. P. 26(b).

Additionally, under the RICO statute, a private actor "***shall*** recover threefold the damages he sustains and the cost of the suit." 18 U.S.C. § 1964(c). The FCC has no authority to award that remedy. *See Regents Univ. Sys. of Georgia v. Carroll*, 338 U.S. 586, 601–02 (1950) (noting that the FCC's powers are limited to "criminal penalties and license refusal and revocation").

Under well-established law, a plaintiff is not relegated to seeking relief through an administrative agency (*i.e.*, exhaust administrative remedies) in situations when "an administrative remedy may be inadequate 'because of some doubt as to whether the agency was empowered to grant effective relief.'" *McCarthy v. Madigan*, 503 U.S. 140,

147–48 (1992) (recognizing circumstances when "an administrative remedy may be inadequate 'because of some doubt as to whether the agency was empowered to grant effective relief'" (quoting *Gibson v. Berryhill*, 411 U.S. 564, 575 n.14 (1973))).  For example, when an agency "lack[s] authority to grant the type of relief requested," the law does not require a plaintiff to seek relief through the agency anyway.  *See id.* (citing *McNeese v. Bd. of Ed. For Cmty. Unit Sch. Dist. 187*, 373 U.S. 668, 675 (1963) and *Montana Nat'l Bank of Billings v. Yellowstone Cnty.*, 276 U.S. 499, 505 (1928)).  Here, by dismissing Skywave's RICO claims in favor of adjudication by an agency—the FCC—that has no power to grant Skywave's requested RICO relief, the District Court abdicated its congressional mandate, leaving Skywave no option but to accept "plainly inadequate" relief to vindicate its injuries.  *Bulzan v. Atl. Richfield Co.*, 620 F.2d 278, 280–81 (Temp. Emer. Ct. App. 1980).

*          *          *

Skywave correctly asserted its RICO claims against the Appellees in the District Court, which has subject matter jurisdiction over those claims.  The FCC, by contrast, does not have jurisdiction over Skywave's RICO claims.  As a result, the District Court's dismissal has created a catch-22, leaving Skywave with **nowhere** to seek relief for the grave harms that it has suffered from the Appellees' RICO violations.  Accordingly, this Court should reverse the District Court's erroneous dismissal for lack of jurisdiction.

### III.   THE DISTRICT COURT ERRED IN FINDING THAT SKYWAVE'S RICO CLAIMS WERE INEXTRICABLY INTERTWINED WITH FCC DECISIONS.

The District Court determined that Skywave's RICO claims against the Appellees were "inextricably intertwined" with FCC decisions.  As explained further below, that conclusion was incorrect, and it should be reversed.

Skywave acknowledges that *some* overlap exists between the facts underlying its RICO claims and the FCC's grants, modifications, and renewals of 10Band's Experimental Licenses, which are the FCC decisions on which the District Court based its inextricable intertwinement analysis.  *See* Appx0009–10.  Skywave further acknowledges that *some* overlap exists between the facts underlying its RICO claims and its 2023 Petition narrowly seeking reconsideration of a single renewal application.[8]  But, critically and dispositively, the inextricable intertwinement doctrine requires ***significantly more than "mere overlap" in the facts*** underlying two proceedings.  *See, e.g., Merritt v. Shuttle, Inc.*, 245 F.3d 182, 188–89 (2d Cir. 2001) ("[T]he mere overlap of evidence and testimony adduced in the two proceedings, or the mere overlap of findings made by an ALJ and by a district court judge are insufficient to preclude the district court from hearing a given claim.").

Courts have been inconsistent in their articulations of tests for the inextricable intertwinement doctrine.  Many courts have directed their inquiry to whether the plaintiff

---

[8] As explained further below, that still-pending petition is irrelevant to the inextricable intertwinement analysis.  *Infra* at Section III.B.

"could and should have" sought its claimed district court relief before the pertinent agency or its designated court of review.  *See, e.g.*, *Merritt*, 245 F.3d at 187–88, 192; *see also Am. Bird Conservancy v. FCC*, 545 F.3d 1190, 1192–95 (9th Cir. 2008); *Durso v. Napolitano*, 795 F. Supp. 2d 63, 69–72 (D.D.C. 2011).  Other courts have focused on whether a plaintiff is attempting to collaterally attack a specific agency order in an "end-run" around a special review statute.  *See Americopters, LLC v. FAA*, 441 F.3d 726, 736 (9th Cir. 2006).  And at least one district court in this Circuit focused its analysis on whether the plaintiff's district court suit claims injury "by" the agency.  *See St. John's United Church of Christ v. City of Chi.*, 401 F. Supp. 2d 887, 902 (N.D. Ill. 2005).  Here, regardless of the articulation, Skywave's RICO claims do not meet the standard for inextricable intertwinement.

### A.     Skywave Could Not And Should Not Have Sought Its Claimed Relief In The FCC.

The predominant framing of the inextricable intertwinement analysis asks whether a plaintiff's district court claims "***could and should have been***" brought to the agency or on appeal from an agency decision in the first instance.  *See Merritt*, 245 F.3d at 187–88, 192 (quoting *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 339 (1958)).  If the relief sought at the district court could have been sought at the agency or its designated reviewing appellate court, then the inextricable intertwinement doctrine can prevent the

district court from retaining jurisdiction. *See, e.g., Am. Bird*, 545 F.3d at 1192–95; *Durso*, 795 F. Supp. 2d at 69–72.[9]

For example, in *American Bird*, the plaintiff was an environmental protection group that initially filed a petition with the FCC, contending that the FCC "failed to comply" with its obligations under the Endangered Species Act before granting licenses for certain communications towers.  545 F.3d at 1192.  While the FCC was investigating those allegations, the plaintiff filed suit in the district court **against the FCC** alleging the **same** violations and seeking the **same** relief.  *Id.*  The Ninth Circuit affirmed the district court's dismissal for lack of jurisdiction because the pending FCC proceedings **sought the exact same relief** the plaintiff was seeking in the district court.  *Id.* at 1193–94; *see also Durso*, 795 F. Supp. 2d at 63–66 (reasoning that the plaintiffs could make the same constitutional arguments at the designated reviewing court of appeals, which could "provide **approximately the remedy** that plaintiffs request[ed]" at the district court).

On the other hand, if the relief sought at the district court could not have been sought at the agency or its designated appellate court, then the inextricable intertwinement doctrine does **not** prevent the district court from retaining jurisdiction.

---

[9] *See also FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 (1984); *St. John's*, 502 F.3d at 628–30; *Oling v. Air Line Pilots Ass'n*, 346 F.2d 270, 277–78 (7th Cir. 1965); *Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1281–83 (11th Cir. 2014); *City of Rochester v. Bond*, 603 F.2d 927, 936–39 (D.C. Cir. 1979); *CE Design Ltd. v. Prism Bus. Media, Inc.*, 2009 WL 2496568, at *12 (N.D. Ill. Aug. 12, 2009), *aff'd*, 606 F.3d 443 (7th Cir. 2010); *Sandwich Isles Commc'ns, Inc. v. Nat'l Exch. Carrier Ass'n*, 799 F. Supp. 2d 44, 51–53 (D.D.C. 2011); *Roberts*, 798 F. Supp. 2d at 11–12.

*E.g.*, *Merritt*, 245 F.3d at 189–91; *Arvin Indus., Inc. v. Maremont Corp.*, 1973 WL 784, at *3 (S.D. Ind. Mar. 9, 1973).[10]   For example, *Merritt* involved a pilot who initially administratively appealed his FAA suspension, but then abandoned that appeal and instead filed a negligence claim against the United States under the Federal Tort Claims Act ("FTCA").   245 F.3d at 185.   The district court dismissed the negligence claim for inextricable intertwinement, but the Second Circuit reversed, holding that even though both proceedings involved the same facts, the plaintiff could not have brought his damages claim in the administrative proceeding.   *Id.* at 190, 192.

Here, like the plaintiff in *Merritt*, Skywave seeks relief in the District Court that it cannot seek at an agency or its designated court of review.   Specifically, Skywave requests "[a]n injunction" restraining each ***Appellee*** "from any further direct or indirect misuse . . . of Experimental Licenses."   D.I. 90 at 59 (Prayer For Relief ¶ B).   Skywave also seeks economic damages from the Appellees.   *Id.* at 60 (Prayer For Relief ¶¶ C–D).   But neither the FCC nor the D.C. Circuit—the designated court of review for FCC licensing decisions—has the authority to award either of those forms of relief.

The FCC cannot provide injunctive relief against the Appellees because the Appellees are not the holders of the FCC Experimental Licenses that they are using.   *See* 47 U.S.C. § 312(b).   Indeed, even if the FCC wanted to seek injunctive relief against the

---

[10] *See also Mace v. Skinner*, 34 F.3d 854, 858–60 (9th Cir. 1994); *Beins v. United States*, 695 F.2d 591, 597–99 (D.C. Cir. 1982); *Breen v. Peters*, 474 F. Supp. 2d 1, 4–6 (D.D.C. 2007).

Appellees on its own behalf to halt their misconduct, the FCC would itself have to seek that relief by filing suit against the Appellees in "the appropriate *district court*."  *See* 47 U.S.C. § 401(b).  And to the extent the FCC's remedial powers (*e.g.*, license refusal and revocation) are considered injunctive relief at all, it is not the type of injunctive relief that Skywave seeks—namely, "[a]n injunction restraining each [Appellee] . . . from any further direct or indirect misuse, including for Commercial Trading, of Experimental Licenses (1) held by 10Band, or (2) held by another entity under the direction or control of or acting in concert with [Appellees], or (3) in the possession of any [Appellee]."  D.I. 90 at 59 (Prayer For Relief ¶ B).

Nor is the FCC authorized to award damages.  *See Regents of Univ. Sys. of Ga. v. Carroll*, 338 U.S. 586, 601–02 (1950) (stating that the FCC's remedial powers are limited to "license refusal and revocation" and "criminal penalties").  The same is true of the D.C. Circuit because "damages" are indisputably "a remedy *not* found among the possibilities of" the appellate court's power—affirming, modifying, or setting aside the order complained of.  *Mace*, 34 F.3d at 858; *Beins*, 695 F.2d at 598 (finding a FTCA claim was not inextricably intertwined with an FAA order underlying that claim because "an appeal [of the order] under the APA will not provide any remedy in damages").

Those limits on the FCC's ability to award relief demonstrate why Skywave's pending 2023 Petition is irrelevant to the inextricable intertwinement analysis and why the District Court erred by placing undue emphasis on it.  That 2023 Petition posed a

narrow challenge, seeking reconsideration and denial of *one* particular renewal application that *10Band* filed.  D.I. 102-1 at 1, 7 (asking the FCC to "deny 10Band's renewal application"); D.I. 102-3 at 4 (same).  Importantly, the 2023 Petition did *not* request that the FCC take any action against the Appellees.  By sharp contrast, Skywave's RICO suit seeks relief *only* against the Appellees, and does not seek any relief—injunctive or otherwise—against *10Band*.  Skywave has not requested that the District Court revoke 10Band's licenses, enjoin its use of those licenses, otherwise prevent 10Band from using the Experimental Licenses, or take any action whatsoever that directly affects 10Band.  Indeed, Skywave has not even requested that the District Court enjoin the Appellees from engaging with 10Band or participating in authorized experimental uses of 10Band's Experimental Licenses.

Ultimately, the scope of Skywave's challenge and the relief it seeks in the District Court are drastically different from the scope of and relief sought in the 2023 Petition.  Accordingly, Skywave's RICO claims cannot be inextricably intertwined with Skywave's 2023 Petition.  *See, e.g.*, *Jones v. Havens*, 2012 WL 2325876, at *9 (N.D. Cal. June 19, 2012) (distinguishing cases that applied the inextricable intertwinement doctrine on the basis that the scope and relief sought were different in the two proceedings); *see also Durso*, 795 F. Supp. 2d at 70 n.5, 71 (noting that no inextricable intertwinement exists when a plaintiff seeks damages at a district court that it never sought at the agency).

For the foregoing reasons, Skywave's RICO claims are not claims that it "could have" or "should have" brought in the FCC or the D.C. Circuit in the first instance.  *See Merritt*, 245 F.3d at 188–89; *see also Arvin*, 1973 WL 784, at *1–3 (holding that a private antitrust suit against a private defendant was *not* barred by a Federal Trade Commission order against that *same* defendant for that *same* anticompetitive behavior because the Clayton Act provided the plaintiff with remedies—including treble damages and injunctive relief—that the FTC could not provide).  For that reason, the inextricable intertwinement doctrine does not apply in this case.

### B.    Skywave Is Not Collaterally Attacking An FCC Order In An End Run Around Jurisdictional Limitations.

The inextricable intertwinement doctrine is not applied in the abstract; rather, it focuses on the specific claims asserted in a district court and compares them to relief that could be sought in an agency.  Accordingly, certain courts have limited application of the doctrine to only circumstances involving a specific agency order that is subject to a "special review statute" against which a plaintiff's claims can be measured.  *See Mokdad v. Lynch*, 804 F.3d 807, 810 (6th Cir. 2015); *see also Roberts*, 798 F. Supp. 2d at 11–12 (holding that, in such limited circumstances, other Article III courts lack subject matter jurisdiction over the plaintiff's claims).  For example, in *Americopters*, the Ninth Circuit made clear:

> Denying jurisdiction because a federal court claim is "inescapably intertwined" with an administrative proceeding or order . . . *presumes the existence of something with which that claim could be intertwined*.

441 F.3d at 738.

*Americopters* illustrates why the doctrine should not apply to Skywave's RICO claims. There, officials at the FAA issued orders that grounded planes and helicopters used by the plaintiffs for business purposes. *Id.* at 728–30, 734–35. After the plaintiffs attempted to challenge those orders at the FAA itself to no avail, *id.* at 730–31, they filed two categories of district court claims: (1) direct challenges seeking recission of the FAA orders; and (2) constitutional torts claims alleging that "the FAA had violated its own regulations" when it issued its orders. *See id.* at 728–30, 734–35. The Ninth Circuit agreed with the district court that the first category of claims (seeking rescission of FAA orders) was inextricably intertwined with the agency proceedings. *Id.* at 735–38. However, the Ninth Circuit recognized that the second category of claims (seeking damages) was different. *Id.* at 735–38; *see also id.* at 736 (holding that the special review statute "does not bar all manner of review of FAA orders by the district court"). Although the special review statute barred "thinly disguised attempts at an end-run around the jurisdictional limitation," the Ninth Circuit determined that "denying district court jurisdiction over" the damages claims would not advance any of "the rationales for the collateral attack doctrine." *Id.* at 736–38. Even though administrative proceedings had already occurred regarding the facts underlying the damages claims, the court held that "there were ***no previous agency determinations on the merits***" of those claims. *Id.* Thus, there was nothing "with which [those damages claims] could be intertwined." *Id.*

Here, like in *Americopters*, no previous agency order exists that addresses the merits of Skywave's RICO claims against the Appellees. It is certainly true that the FCC made decisions to grant, modify, and renew 10Band's Experimental Licenses and that review of those decisions is designated to the D.C. Circuit under special review statute 47 U.S.C. § 402(b). But, in making those decisions, the FCC considered only whether non-party 10Band met the criteria for Experimental License grants, modifications, and renewals. D.I. 90 ¶¶ 65–85. The FCC has ***never*** examined or issued any order deciding whether the Appellees directed fraudulent misrepresentations in FCC applications, whether the Appellees used Experimental Licenses for Commercial Trading, or whether the Appellees' conduct harmed Skywave.[11]

Nor could the FCC have issued any such order because Skywave's RICO claims raise factual issues that were not before the FCC when it considered 10Band's modification and renewal applications. For example, the FCC did not evaluate the veracity of the representations made by 10Band and Appellee Hinerfeld in the various applications; indeed, the FCC presumably took 10Band and Appellee Hinerfeld at their

---

[11] That will remain true even if the FCC considers 10Band's use of its Experimental Licenses when it decides Skywave's 2023 Petition. At most, the misuse that the FCC considers in that context relates to misconduct by non-parties 10Band, NLN Holdings, and NLN, for allowing Appellees Jump Trading, LLC and Virtu Financial, Inc. to perform Commercial Trading using one Experimental License. *See* D.I. 102-1 at 2–6. But Skywave's claims in the District Court seek relief for the ***Appellees'*** misuse of ***all*** 10Band's FCC experimental licenses as part of their ***racketeering scheme***. *See, e.g.*, D.I. 90 ¶¶ 64–85, 181. That is an entirely different issue, with a different scope, and involving different entities than the 2023 Petition.

word based on the repeated certifications under penalty of fines and/or imprisonment that "[a]ll the statements in the application and attached exhibits are true, complete and correct to the best of the applicant's knowledge." *See, e.g.*, D.I. 90-86, D.I. 90-87, D.I. 90-88; *see also* D.I. 90-79, D.I. 90-84. Skywave's RICO claims, by contrast, are directed squarely at the falsity of those representations, and the factfinder in the District Court proceedings will be in a position to resolve that issue.

As another example, Skywave alleges that the Appellees—who are not FCC licensees themselves—are engaged in a scheme to profit through the use of Experimental Licenses for Commercial Trading purposes. But the FCC is not in a position to adjudicate misuse of 10Band's licenses **by the Appellees**. Although the FCC is the agency that made decisions to grant, modify, and renew 10Band's Experimental Licenses, those license decisions did not address the merits of Skywave's RICO claims. The merits of those RICO claims must be resolved through litigation in the District Court.

Because Skywave's RICO claims are not attacking—and are not intertwined with—any FCC order, the inextricable intertwinement doctrine cannot bar the District Court's subject matter jurisdiction.

### C.     Skywave Does Not Claim It Was Injured By The FCC.

As an alternative to the above frameworks, courts have also assessed inextricable intertwinement by asking whether a plaintiff's district court claims "allege[] . . . injur[y] **by**" an agency. *St. John's*, 401 F. Supp. 2d at 902 (quoting *Merritt*, 245 F.3d at 187), *aff'd,*

502 F.3d 616 (7th Cir. 2007). That injury-by-the-agency framing leads to the same conclusion in this case: no inextricable intertwinement.

Skywave does not claim it was injured by the FCC or any FCC order. Said differently, Skywave concedes that the FCC's decision to grant, modify, or renew any licenses to 10Band was *not* the cause of any injury to Skywave. Indeed, if 10Band had used its Experimental Licenses only for their stated research purposes, Skywave would not have been injured at all. And Skywave makes no claim against 10Band's future use of those Experimental Licenses for their intended purposes. Accordingly, Skywave's RICO claims are categorically *not* directed to any question about the validity of the FCC's decisions to grant or renew 10Band's Experimental Licenses.

By contrast, Skywave was—and continues to be—injured by the Appellees' unlawful conduct, specifically by the Appellees' use of Experimental Licenses to build and operate a HFT network that includes shortwave radio infrastructure. D.I. 90 ¶¶ 1–2, 52–63. Through that wrongful conduct, the Appellees—*not* the FCC—have caused harm to Skywave, including the destruction of Skywave's ability to benefit from the network that it began to build. *Id.* ¶¶ 4, 152–56.

In short, Skywave's well-pled allegations are *not* dependent on any reversal or change to the FCC's licensing decisions regarding 10Band's Experimental Licenses. Although the FCC's licensing decisions have overlapping facts with Skywave's RICO claims, they are not inextricably intertwined.

\*          \*          \*

While courts have varied in their articulation of the test for inextricable intertwinement, Skywave's RICO claims do not satisfy the test under *any* articulation. The District Court erred in concluding otherwise, and this Court should reverse.

## IV.   THE DISTRICT COURT COMMITTED ERRORS IN DECIDING THE APPELLEES' MOTION TO DISMISS.

In addition to its erroneous overall conclusion on inextricable intertwinement, the District Court also committed at least three demonstrable underlying errors in deciding the Appellees' motion to dismiss.   *First*, the District Court made inferences against Skywave regarding the allegations and relief sought in the First Amended Complaint, in contravention of the standard at the motion to dismiss stage.   *Second*, even though Skywave's RICO claims are directed at wrongful conduct that the FCC cannot remedy, the District Court incorrectly criticized Skywave for artfully pleading and "dress[ing] up" its challenges to FCC decisions as a RICO claim.  Appx0008–09.  *Third*, the District Court improperly classified Skywave's RICO claims as challenges to the "outcome" of an FCC order.  Appx0009.  This Court should correct those errors.

### A.   The District Court Contravened The Motion To Dismiss Standard By Making Inferences Against Skywave About The Allegations And Relief Sought In The First Amended Complaint.

Under well-settled law, a court considering a motion to dismiss for lack of subject matter jurisdiction "must accept the complaint's well-pleaded factual allegations as true and must draw all reasonable inferences from those allegations in plaintiffs' favor as the

non-moving party." *Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewage Dist.*, 382 F.3d 743, 751 (7th Cir. 2004). Here, the District Court did exactly the opposite by acknowledging Skywave's allegations but improperly drawing inferences against them.

To illustrate, the District Court began its analysis by summarizing Skywave's claims. Appx0007. For example, the District Court first stated what it viewed as the "premise" of Skywave's First Amended Complaint, including that Appellees "misused [10Band's Experimental Licenses] beyond their permissible, experimental purposes." *Id*. The District Court then identified "Skywave's view" of the harm it has suffered—*i.e.*, that "were it not for [the Appellees'] fraud and misuse [of 10Band's Experimental Licenses], Skywave's partners and investor never would have withdrawn their support, and Skywave's trading network would have gone forward." *Id.* And the District Court even went so far as to describe certain of Skywave's requested relief, namely, asking "the Court to enjoin [the Appellees] from any further 'misuse' of the licenses, allowing that any judicial order would permit 10Band to continue to use its [E]xperimental [L]icenses for 'actual experimental purposes.'" *Id.*

Whether Skywave can prove those allegations—*i.e.*, premise, causation, harm, and entitlement to requested relief—are questions to be resolved on the merits later in the litigation. But, at the motion to dismiss stage, the law requires the District Court to accept them as true and draw reasonable inferences from them in Skywave's favor as the plaintiff. *See Friends of Milwaukee's Rivers*, 382 F.3d at 751. Viewed from that perspective,

43

Skywave has alleged a RICO violation over which the District Court has federal question jurisdiction.

But the District Court did not view it that way. Instead, the District Court began its very next paragraph with the word "but" and proceeded to reject Skywave's factual allegations as untrue and draw inferences against Skywave in favor of the Appellees who moved to dismiss. Appx0007. For example, the District Court inferred that "at bottom" the complaint actually asks the District Court to answer "the same questions that the FCC answered when it granted, modified, and renewed 10Band's licenses under its statutory authority." *Id.* That inference is inconsistent with Skywave's allegation that the District Court can enjoin the Appellees' use of the Experimental Licenses for Commercial Trading while still allowing 10Band to continue to use them for "actual experimental purposes." D.I. 108 at 8–10.

As another example, the District Court inferred that it would be "impossible for the [District] Court to find merit in Skywave's allegations . . . without disturbing FCC determinations—be they implicit or explicit." Appx0008. But comparing Skywave's requested relief to "implicit" FCC determinations was not the District Court's job at this stage. Here, it is sufficient that Skywave alleges wrongful acts by the Appellees that can be remedied under the RICO statute independently of the FCC's licensing decisions regarding non-party 10Band.

To be sure, the District Court correctly noted that it is not bound by Skywave's characterization of its own claims.  Appx0009 (citing *Folden v. United States*, 379 F.3d 1344, 1359 n.13 (Fed. Cir. 2004)).  But in *Folden*, the plaintiffs had sued the FCC directly in the Court of Federal Claims ("Claims Court") after they were not awarded certain telecommunications licenses that were allocated by a lottery system.  379 F.3d at 1352–53.  The plaintiffs framed their cause of action as a "breach of implied-in-fact contracts by the [FCC]," *id.* at 1352, but the Claims Court noted that they had done so in an "attempt to circumvent established agency and federal court procedures" and that they had "no precedent to support their theory of an implied-in-fact contract."  *Id.* at 1354.  Under those circumstances—in which the Claims Court and the Federal Circuit had no ***reasonable*** inference to draw in favor of the plaintiffs regarding their alleged implied-in-fact contract—the Federal Circuit was not bound by the plaintiffs' own unreasonable characterization of its claims as sounding in breach of contract.  *Id.* at 1359 n.13.

This case is different.  Here, Skywave's suit does not seek any relief from the FCC itself, nor does Skywave ask the District Court to uproot FCC decisions under the guise of a different cause of action.  Rather, Skywave explicitly alleges that its requested relief need not disturb any FCC decision regarding 10Band's Experimental Licenses.  Appx0009 (citing D.I. 108 at 8); *see also* D.I. 90 at 59–60 (Prayer For Relief).  Whether that proves true—*i.e.*, whether Skywave can demonstrate that it is entitled to the injunction and

damages it seeks against the Appellees—is a merits question to be resolved at trial, not a jurisdictional one to be resolved on a motion to dismiss.

> **B.    The District Court Incorrectly Criticized Skywave For "Dress[ing] Up" Its Challenges To FCC Decisions As A RICO Claim.**

Relatedly, the District Court criticized Skywave for attempting to "dress up" its challenges as RICO claims to avoid the inextricable intertwinement doctrine. Appx0009 (citing *Am. Bird*, 545 F.3d at 1194; *St. John's*, 401 F. Supp. 2d at 902). But Skywave's challenges are nothing like the "artful pleading" cases cited by the District Court.

For example, as discussed above, in *American Bird* the Ninth Circuit determined that the plaintiff's district court claims directly against the FCC rose and fell on "the FCC's obligation to consult with the Secretary [of the Interior]" before deciding whether to grant licenses. 545 F.3d at 1192–93, 1195. Thus, although the plaintiff insisted its claims challenged the FCC's "failure to act" before granting licenses rather than the FCC's decision to grant the licenses themselves, the Ninth Circuit recognized that the plaintiff was asking the exact same question and seeking the exact same relief in both fora. *Id.*

Similarly, in *St. John's*—which the District Court also cites to support its "careful pleading" finding, *see* Appx0009–10—the plaintiffs filed suit in the district court against the FAA directly, alleging that an FAA order violated various statutes and regulations because it failed to address a funding issue. 401 F. Supp. 2d at 903–04. The plaintiffs were simultaneously challenging that same FAA order in the D.C. Circuit, pursuant to special review statute 49 U.S.C. § 46110, alleging that it violated the plaintiffs'

constitutional rights and various statutes because the order failed to address that same funding issue. *Id.* at 893. The district court, in that context, stated "it has become clear . . . that [the p]laintiffs intend to concurrently litigate the issue of agency funding in both [the district court] and the D.C. Circuit." *Id.* at 904. Thus, the district court dismissed for lack of jurisdiction because the "challenge of agency procedures and reasoning—a challenge raised in this court—[wa]s 'inescapably intertwined with a review of the procedures and merits surrounding the FAA's order.'" *Id.* (quoting *Merritt*, 187 F.3d at 271).

Again, this case is entirely different. Skywave is not suing the FCC directly, nor is Skywave alleging that its requested relief against the Appellees requires any determination about the propriety of any FCC licensing procedure or decision. The District Court's suggestion that Skywave's RICO claims are merely "dress[ed] up" FCC challenges was yet another inference that the District Court drew in favor of the Appellees. *See Friends of Milwaukee's Rivers*, 382 F.3d at 751 (requiring that reasonable inferences be drawn in favor of the plaintiff at the motion to dismiss stage). And contrary to that improper inference, Skywave accepts that the FCC may very well have properly granted Experimental Licenses **to 10Band**, and its allegations are thus directed at the wrongful actions that **the Appellees** took to exploit those Experimental Licenses.

That the FCC, D.C. Circuit, and the District Court retain different authority over different questions and can provide different relief is not the result of any careful pleading by Skywave. Those differences are by statutory design, and they dictate that in

47

this case, Skywave's RICO claims are not "inextricably intertwined" with any FCC decision. *See supra* Section III.

**C. Appellees' Misuse Of 10Band's Experimental Licenses Is Not An "Outcome" Of Any FCC Decision.**

The District Court also erred by finding the Appellees' misuse of 10Band's Experimental Licenses as an "outcome" of the FCC's decision to grant those licenses in the first place. The FCC has, for obvious reasons, never issued any order that blesses or condones the Appellees' use of the Experimental Licenses. Nor can such orders be implied—there is no indication that the FCC has "supervised" the Appellees' actions regarding 10Band's licenses at all, and certainly not "so closely that the FCC's approval could be inferred." *See MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1102–05 (7th Cir. 1983) (rejecting a licensee's "assertion of implied immunity" from antitrust claims brought by a competitor, where the licensee argued the FCC had "approved" of its misconduct by virtue of an FCC decision).

Furthermore, finding the Appellees' misuse as an "outcome" of the FCC's licensing decisions creates two disconnects: one impractical, the other illogical. First, from a practical standpoint, the FCC could not possibly evaluate all possible subsequent uses of every license it grants. The FCC has no way to foresee how its licensees—and, importantly in this case, third parties—will make use of licenses the FCC grants. Here, the FCC granted the Experimental Licenses at issue to 10Band based on the information available to the FCC at the time, and those license grants created specific outcomes for

10Band, namely, authorization to use them for their intended experimental purposes. The Appellees in this case are **not** themselves the FCC licensees, and any licensing decision by the FCC cannot reasonably be perceived as creating "outcomes" for them.

Second, for the District Court to view the Appellees' misuse as an "outcome" is to view the FCC's grant of 10Band's Experimental Licenses as affirmatively **authorizing** the misuse. Not so. Nothing in the pleadings or record below supports that the FCC somehow authorized the Appellees' misuse of 10Band's licenses. In fact, the FCC explicitly prohibited "stock trading" in connection with multiple modifications and renewals of 10Band's Experimental Licenses. D.I. 90 ¶¶ 67, 85. Moreover, the District Court's "outcome" rationale makes no sense. By way of analogy, consider a driver who obtains a car registration and driver's license from the Department of Motor Vehicles ("DMV") and then proceeds to recklessly drive the car and cause injury to a pedestrian. Unquestionably, the DMV granted the license that authorized the driver to drive the car. But, when the pedestrian sues the driver for damages, the pedestrian's injury cannot reasonably be viewed as an outcome of the DMV's licensing decisions.

The logical disconnect becomes even more glaring when the driver analogy is adjusted closer to the facts of this case, where the entities that Skywave charges with misconduct are not themselves the licensees. This case is more akin to a driver who lends his car to a friend who does not have a driver's license, only for that friend to drive recklessly and injure the pedestrian. Extending the causal chain that way illustrates the

lack of control that an agency has over downstream misuses of licenses that it grants. Treating such misuses as "outcomes" of licensing decisions would "yield . . . unreasonable consequences," which courts avoid "[w]henever possible." *Merritt*, 245 F.3d at 191.

The Seventh Circuit recognized that reality in *Ordower v. Office of Thrift Supervision*, 999 F.2d 1183 (7th Cir. 1993). There, a federal savings and loan association sought a mutual-to-stock conversion, which first required application to and approval by the Office of Thrift Supervision ("OTS") and then required approval by the association's depositor-owners. *Id.* at 1184. As part of the OTS approval process, the association submitted to OTS the "corporate proxy materials" it would provide to depositors when seeking approval of the conversion. *See id.* at 1188. OTS approved the conversion based on the information that was submitted. *Id.* After the association sent out its "corporate proxy materials" to its depositor-owners, the majority voted in favor of the conversion. *Id.* Two depositors who voted against the conversion sued OTS and the association, "ask[ing] the district court to enjoin the conversion and award damages." *Id.* at 1184, 1188. The district court dismissed the entire case for lack of subject matter jurisdiction, "observing that the court of appeals has exclusive jurisdiction to review the OTS decision." *Id.* at 1184, 1188.

The Seventh Circuit partially disagreed. To the extent the plaintiffs challenged OTS's approval of the conversion itself, the Seventh Circuit agreed that the district court

lacked jurisdiction because "district judges may not enjoin or penalize action that [an] agency has approved or that is the natural outcome of [an] agency's decision" subject to a special review statute. *Id.* However, the Seventh Circuit recognized that the plaintiffs were also challenging the actions that the association took after OTS approved the conversion, specifically, that the association failed to provide "complete and accurate" proxy materials. *Id.* at 1188. The Seventh Circuit held that "OTS's approval" of the proxy materials "d[id] not relieve the [association]'s managers of the duty to tell the truth when asking the depositors to approve" the conversion. *Id.* Thus, the court allowed the plaintiffs' suit to proceed alongside the "assum[ption] that the conversion complies with all substantive requirements of federal law"—"which is all the OTS's approval establishes." *Id.; see also Reschini v. First Fed. Sav. & Loan Ass'n of Ind.*, 46 F.3d 246, 253 (3d Cir. 1995) (explaining that the special review statute governing OTS conversion decisions "does not, of its own force, bar district court jurisdiction over allegations of materially false or misleading proxy materials").

Similar to the claims over which the district court retained jurisdiction in *Ordower*, the Appellees' misuse of Experimental Licenses is not an "outcome" of the FCC's grant of those licenses to 10Band. Contrary to the District Court's characterization, Skywave is not seeking to "enjoin or penalize" the Appellees for an action the FCC has "approved or that is the natural outcome" of the FCC's grant of 10Band's licenses. *See* Appx0004 (quoting *Ordower*, 999 F.2d at 1188). Rather, Skywave is asking the District Court to

examine the Appellees' independent racketeering misconduct while assuming that the FCC complied with all substantive requirements of federal law when it approved 10Band's Experimental Licenses.  Taking Skywave's allegations as true, the Appellees lied to the FCC when 10Band applied for the Experimental Licenses.  But that reality does not render the Appellees' misuse of the Experimental Licenses an "outcome" of the FCC's licensing decisions.

*          *          *

In view of the District Court's analytical errors in evaluating the Appellees' motion to dismiss, this Court should reverse and remand.

## V.     THE DISTRICT COURT SHOULD HAVE ISSUED A NARROWER RULING TO ADDRESS ITS CONCERNS.

Skywave maintains that there is not even a "potential conflict" between its RICO claims against the Appellees and the FCC's licensing decisions for 10Band.  *See Arvin*, 1973 WL 784, at *1, *3 (denying a defendant's motion to dismiss because the defendant's collateral-attack argument "that [the] plaintiff's cause of action [was] foreclosed because of the ***potential conflict*** between the broader relief sought by the plaintiff and that being administered by" an agency was "unsupported by decisional authority").  However, even assuming there is, the District Court nevertheless erred by dismissing the entire action for lack of subject matter jurisdiction.

The District Court should have issued a narrower ruling to address its concern regarding any potential conflict while still maintaining Skywave's "private [RICO]

action" as expressly "provided" by Congress.  *Bridge v. Phoenix Bond & Indemn. Co.*, 553 U.S. 639, 660 (2008) (quoting *Sedima*, 473 U.S. at 499–500).  For example, the District Court should have instructed that, while it retains subject matter jurisdiction over Skywave's RICO claims under 18 U.S.C. § 1964(a), Skywave will not be permitted to argue that the FCC failed to abide by federal law when it granted 10Band's Experimental Licenses or that 10Band directly misuses its Experimental Licenses.  *See Ordower*, 999 F.2d at 1188–89 ("The district court must remove from the case the kinds of arguments we have covered in Part I. . . . [But] the depositors are entitled to a decision on their challenge to the accuracy of the proxy materials.").  Such a ruling would have eliminated any potential risk of wading into the FCC's expertise as to whether 10Band itself is qualified to retain those licenses, while also allowing the District Court to examine the merits of Skywave's RICO claims against the Appellees.

Accordingly, even if this Court concludes that the District Court's legal analysis was not erroneous, the Court should nevertheless remand for the District Court to consider whether a remedy short of wholesale dismissal exists.

## <u>CONCLUSION</u>

For the foregoing reasons, Skywave respectfully asks this Court to reverse the District Court's dismissal of Skywave's RICO claims against the Appellees and remand for further proceedings.

Date:  March 3, 2026

DESMARAIS LLP

<u>/s/ Justin P.D. Wilcox</u>
Justin P.D. Wilcox
Adam Steinmetz
Jamie Dohopolski
Rix Ryskamp
1899 Pennsylvania Avenue, NW
Suite 400
Washington, DC 20006
Telephone:  (202) 451-4900
Email:  jwilcox@desmaraisllp.com
         asteinmetz@desmaraisllp.com
         jdohopolski@desmaraisllp.com
         rryskamp@desmaraisllp.com

Steven M. Balcof
Peter Kotecki
230 Park Avenue
New York, NY 10169
Telephone:  (212) 351-3400
Email: sbalcof@desmaraisllp.com
         pkotecki@desmaraisllp.com

*Attorneys for the Plaintiff-Appellant,
Skywave Networks, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c), because this brief contains 12,551 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32(b), and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word in 12-point Palatino Linotype font, with footnotes in 12-point Palatino Linotype font.

Dated:  March 3, 2026

DESMARAIS LLP

*/s/ Justin P.D. Wilcox*
Justin P.D. Wilcox
1899 Pennsylvania Avenue, NW
Suite 400
Washington, DC 20006
(202) 451-4900
Email:  jwilcox@desmaraisllp.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 3, 2026, I electronically filed the foregoing Appellant's Brief with the Clerk of the United States Court of Appeals for the Seventh Circuit and was served upon the Appellees who received a notice of filing via the Court's electronic filing system.

Dated: March 3, 2026

DESMARAIS LLP

*/s/ Justin P.D. Wilcox*
Justin P.D. Wilcox
1899 Pennsylvania Avenue, NW
Suite 400
Washington, DC 20006
(202) 451-4900
Email: jwilcox@desmaraisllp.com

## <u>CIRCUIT RULE 30(D) STATEMENT</u>

Pursuant to Circuit Rule 30(d), counsel for the Appellant certifies that all material

required by Circuit Rule 30(a) and (b) are included in the appendix.

Dated: March 3, 2026                          **DESMARAIS LLP**

<u>/s/ *Justin P.D. Wilcox*          </u>
Justin P.D. Wilcox
1899 Pennsylvania Avenue, NW
Suite 400
Washington, DC 20006
(202) 451-4900
Email:  jwilcox@desmaraisllp.com

APPENDIX

TABLE OF CONTENTS TO APPELLANT'S APPENDIX MATERIALS

| District Court ECF Nos. | Description of Documents | Appendix Page Nos. |
|---|---|---|
| 120 | Judgment in a Civil Case (12/12/2025) | Appx0001 - Appx0001 |
| 119 | Memorandum Opinion and Order (12/12/2025) | Appx0002 - Appx0013 |
| 118 | Notification of Docket Entry (12/12/2025) | Appx0014 - Appx0014 |

ILND 450 (Rev. 04/29/2016) Judgment in a Civil Action

Case: 1:24-cv-09650 Document #: 120 Filed: 12/02/25 Page 1 of 1 PageID #:3557
Case: 26-1015      Document: 12      Filed: 03/03/2026      Pages: 87

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Skywave Networks, LLC,

Plaintiff(s),

v.

William J. Disomma, Paul A. Gurinas, Matthew
Hinerfeld, Jump Trading, LLC, Virtu Financial,
Inc., and John Madigan,

Defendant(s).

Case No. 24-cv-9650
Judge Georgia N. Alexakis

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐      in favor of plaintiff(s)
and against defendant(s)
in the amount of $    ,

     which ☐ includes      pre–judgment interest.
              ☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.
Plaintiff(s) shall recover costs from defendant(s).

☐      in favor of defendant(s)
and against plaintiff(s)

.

Defendant(s) shall recover costs from plaintiff(s).

☒      other: Judgment is entered in favor of defendants William J. Disomma, Paul A. Gurinas,
Matthew Hinerfeld, Jump Trading, LLC, Virtu Financial, Inc., and John Madigan and against plaintiff Skywave
Networks, LLC, because the Court lacks subject matter jurisdiction. The dismissal is without prejudice.

This action was *(check one)*:

☐ tried by a jury with Judge      presiding, and the jury has rendered a verdict.
☐ tried by Judge      without a jury and the above decision was reached.
☒ decided by Judge Georgia N. Alexakis on a motion to dismiss decided 12/2/25.

Date:   12/2/2025            Thomas G. Bruton, Clerk of Court

                                   Carmen Acevedo, Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SKYWAVE NETWORKS, LLC, | |
| Plaintiff, | |
| v. | No. 24 CV 9650 |
| WILLIAM DISOMMA, et al., | Judge Georgia N. Alexakis |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

Plaintiff Skywave Networks, LLC alleges that defendants William DiSomma, Paul Gurinas, Matthew Hinerfeld, John Madigan, Jump Trading, LLC, and Virtu Financial, Inc. injured it through a years-long racketeering scheme that involved defrauding the Federal Communications Commission ("FCC") and misusing FCC licenses, all to gain an edge in their high-frequency trading network. [90]. Defendants have moved to dismiss Skywave's amended complaint. [101]. For the reasons set forth below, the Court grants their motion because it does not have subject matter jurisdiction over Skywave's claims.

## I.     Legal Principles

In resolving a motion to dismiss brought under Rule 12(b)(1), Skywave bears the burden of proving that jurisdiction is proper and must allege facts sufficient to plausibly suggest that subject matter jurisdiction exists. *Silha v. ACT, Inc.,* 807 F.3d 169, 173–74 (7th Cir. 2015). In the context of a facial challenge to subject matter jurisdiction, the Court construes all factual allegations as true and draws all

reasonable inferences in Skywave's favor, but it need not accept legal conclusions or conclusory allegations. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680–82 (2009)); *Silha*, 807 F.3d at 173–74. In the context of a factual attack on subject matter jurisdiction, the Court may consider and weigh evidence outside of the pleadings to determine whether it has the power to adjudicate this action. *Bazile v. Fin. Sys. of Green Bay, Inc.,* 983 F.3d 274, 279 (7th Cir. 2020).

The FCC has exclusive jurisdiction to grant, condition, and suspend broadcast licenses—including experimental licenses. 47 U.S.C. §§ 303(a), 303(g), 303(l), 303(m)(1)(A); 15 C.F.R. § 5.111(a); *see also In re NextWave Personal Commc'ns, Inc.,* 200 F.3d 43, 54 (2d Cir. 1999) ("The FCC's exclusive jurisdiction extends not only to the granting of licenses, but to the conditions that may be placed on their use."). Experimental licenses "allow[] greater flexibility for parties … to develop new technologies and services while protecting incumbent services against harmful interference." Press Release, FCC, Office of Engineering and Technology Announces Acceptance Of Applications for Program Experimental Licenses (Apr. 14, 2017), https://docs.fcc.gov/public/attachments/DA-17-362A1.pdf. The FCC limits their use to "experimentation," "product development," and "market trials," "with a view to the development of science or technique." 47 C.F.R. §§ 5.1(b), 5.5.

The United States Court of Appeals for the District of Columbia Circuit reviews appeals of the FCC's final licensing decisions. 47 U.S.C. §§ 402(b)(1)–(6) ("Appeals may be taken from decisions and orders of the Commission to the United

2

**Appx0003**

States Court of Appeals for the District of Columbia … [b]y any other person who is aggrieved or whose interests are adversely affected by any order of the [FCC] granting or denying any [licensing] application described in … this subsection."); *Maier v. FCC,* 735 F.2d 220, 224 (7th Cir. 1984); *see also Folden v. United States,* 379 F.3d 1344, 1346, 1359 (Fed. Cir. 2004); *N. Am. Cath. Edu. Programing Found., Inc. v. FCC,* 437 F.3d 1206, 1209 (D.C. Cir. 2006). Significantly, § 402(b)(6) allows a licensee's competitors to challenge the FCC's decision to grant the license, as competitors generally qualify as an "aggrieved" party with standing under the statute. *See FCC v. Sanders Bros. Radio Station,* 309 U.S. 470, 477 (1940); *Spectrum Five LLC v. FCC,* 758 F.3d 254, 259 n.7 (D.C. Cir. 2014).

"When Congress places review of an administrative decision in the court of appeals, district judges may not enjoin or penalize action that the agency has approved or that is the natural outcome of the agency's decision." *Ordower v. Off. of Thrift Supervision*, 999 F.2d 1183, 1188 (7th Cir. 1993).

## II.    Factual Background

The facts that follow come from Skywave's operative complaint.

In high-frequency trading, "where financial instruments, like stocks and futures, are traded at high frequency to take advantage of small but frequent changes in financial markets," every millisecond matters. [90] ¶ 28. High-frequency traders with the fastest networks dominate the best trades. *Id.* ¶ 27. Skywave sought to provide high-frequency traders with the fastest possible trades by building a network of shortwave radios that could execute trades across oceans. *Id.* ¶¶ 27, 31–35.

**Appx0004**

Skywave secured partners and an investor and developed plans to achieve the necessary commercial trading licenses from the FCC. *Id.* ¶¶ 38, 40–42.

But Skywave's hopes of building this innovative shortwave trading network were derailed when its investor learned that, in 2016, an entity known as 10Band had filed applications with the FCC for an experimental license to operate shortwave transmitters. *Id.* ¶¶ 136–39; *see also id.* ¶ 66 (FCC granted 10Band an experimental license that same year). 10Band is a subsidiary of New Line Networks LLC, and New Line Networks LLC is a joint venture between defendants Virtu and Jump Trading. *Id.* ¶ 86. Skywave's investor feared that 10Band's experimental license, though ostensibly not intended for commercial trading, would be misused for that purpose, thus giving a potential competitor to Skywave's network an unfairly acquired speed advantage. *Id.* ¶ 137. "Spooked" by this possibility, Skywave's investor—and later its partners, too—bowed out. *Id.* ¶¶ 137, 139; [108] at 4. Though Skywave persisted, its failure to bring aboard new partners eventually brought its business plans to a halt. [88] ¶ 140; [108] at 4.

The FCC has granted, modified, and extended 10Band's experimental licenses several times since 2016. [90] ¶¶ 64, 66–85. But according to Skywave, those licenses were all fraudulently obtained. More specifically, Skywave alleges that defendants lied to the FCC to obtain and maintain 10Band's experimental licenses; misused the experimental licenses for commercial trading, which then afforded defendants an unfairly acquired speed advantage when operating their high-frequency trading network; as a result, "spooked" Skywave's actual and potential partners and investors

4

**Appx0005**

from supporting Skywave's efforts to operate its high-speed shortwave trading network; and thus forced Skywave to cede its plans for commercial success. *See generally* [90]. Skywave presents these allegations as a violation of the Racketeer Influenced Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq. Id.* ¶¶ 173–96.

This lawsuit is not the first time Skywave has raised concerns over 10Band's experimental licenses. In September 2023, more than a year before filing the instant lawsuit, Skywave petitioned the FCC to reconsider its August 2023 renewal of 10Band's experimental license. [102-1]; [102-3]. 10Band opposed the petition, arguing that its activity under the license is consistent with FCC rules. [102-2]. As the Court understands the current state of affairs, Skywave's petition before the FCC remains pending. [102] at 6.[1]

### III.    Analysis

To determine whether Skywave has challenged an FCC action improperly, and thus whether it can exercise subject matter jurisdiction over its complaint, the Court "must look to the true nature" of Skywave's claim—that is to say, its "root." *Folden*, 379 F.3d at 1359 n.13. Where a plaintiff "attempt[s] to obtain the same results and to place the same constraints on [the defendants] [that were] rejected by the agency in the exercise of its institutional expertise," and where the plaintiff's "claims are

---

[1] Skywave lodged its petition with the FCC's Office of Engineering Technology. [102-1] at 1. Any appeal of the Office of Engineering Technology's eventual order would go first to the full Commission, *see NTCH, Inc. v. FCC*, 877 F.3d 408, 412 (D.C. Cir. 2017) (requiring dismissal of petition as premature where the petition was filed after a decision by the FCC's Enforcement Bureau but before seeking review by the full Commission), and only afterwards through the judicial channels laid out in § 402, *see* 47 U.S.C. §§ 155(c)(4)–(7).

5

**Appx0006**

inescapably intertwined with a review of the [agency's] final decision," the plaintiff has improperly launched a collateral attack over which the district court lacks jurisdiction. *Otwell v. Ala. Power Co.,* 747 F.3d 1275, 1282 (11th Cir. 2014).

Skywave's amended complaint rests upon the premise that defendants lied to the FCC to obtain and renew 10Band's experimental licenses and that they then misused those licenses beyond their permissible, experimental purpose. *See, e.g.,* [90] ¶¶ 2, 51, 103, 116, 130, 133, 185. In Skywave's view, were it not for this fraud and misuse, Skywave's partners and investor never would have withdrawn their support, and Skywave's trading network would have gone forward. *Id.* ¶¶ 152–56. To remedy this injury, Skywave asks the Court to enjoin defendants from any further "misuse" of the licenses, allowing that any judicial order would permit 10Band to continue to use its experimental licenses for "actual experimental purposes." [108] at 8–10; *see also* [90] at 59.

But as defendants correctly contend, this proposed remedy constitutes an impermissible challenge to the FCC's licensing decisions. [102] at 8–9. At bottom, Skywave's amended complaint asks the Court to determine whether 10Band's licenses are for permissible experimental purposes and whether they were used within that scope. These are the same questions that the FCC answered when it granted, modified, and renewed 10Band's licenses under its statutory authority. *See* 47 U.S.C. § 303. The Court may not "call[] into question the validity of an FCC order." *Sandwich Isles Commc'ns, Inc. v. Nat'l Exch. Carrier Ass'n,* 799 F. Supp. 2d 44, 51 (D.D.C. 2011).

Sought-after remedy aside, Skywave's RICO case is predicated upon its claims that defendants repeatedly lied to the FCC (1) to obtain experimental licenses for which 10Band was never, in fact, qualified to obtain, and (2) by misusing 10Band's experimental licenses for commercial purposes. *See* [90] ¶¶ 179–85, 193–94. Even Skywave admits that it is asking the Court to "assess whether Defendants lied to the FCC." [108] at 8. But it is impossible for the Court to find merit in Skywave's allegations that defendants lied to the FCC to obtain 10Band's experimental licenses, and then used those licenses beyond their permissible scope, without disturbing FCC determinations—be they implicit or explicit—that neither premise is true.

Here's another way to consider the issue: If the allegations of fraud and misuse were to fall out of Skywave's amended complaint—*i.e.*, if the Court were to presume the granting, renewal, and use of the licenses lawful—then Skywave's complaint would only be that defendants properly held a business advantage over Skywave, and that Skywave found itself unable to compete on a level playing field. Without questioning the licenses' validity as a byproduct of fraud, and therefore challenging the FCC's actions, Skywave has no legal claim. Like the plaintiff in *Self v. Bellsouth Mobility*, 700 F.3d 453, 462 (11th Cir. 2012), Skywave has pled itself into a corner: If the FCC's decisions were correct, and if 10Band was properly awarded its experimental licenses (and had them renewed), then Skywave loses. But if the FCC's decisions were incorrect because 10Band lied or misused the licenses, then Skywave's claims "depend on [it] establishing that at least parts of the FCC's [orders] are wrong

Appx0008

as a matter of law or are otherwise invalid." *Id.* In other words, Skywave improperly seeks collateral review of the FCC's decisions in the district court.

Skywave pushes back against this characterization of its claims. It argues that the Court can resolve its RICO claims without acting contrary to any FCC decision and without considering "the propriety of any decision related to the Experimental Licenses." [108] at 8. It insists that resolution of its RICO claims "requires consideration of only Defendants' own misconduct." *Id.* The Court, however, is not bound by plaintiff's characterization of its own claims. *See Folden*, 379 F.3d at 1359 n.13. And a plaintiff may not evade jurisdictional requirements "by requesting the District Court to enjoin action that is the outcome of the [FCC's] order." *FCC v. ITT World Commc'ns,* 466 U.S. 463, 468 (1984). Instead, "the question to be determined in ruling on the motion to dismiss is whether this case raises the same issues that are pending before the FCC and whether it calls into question the validity of an FCC order." *Sandwich Isles Commc'ns,* 799 F. Supp. 2d at 51. For the reasons already set forth, this case does.

Nor does Skywave's attempt to "dress up [its] core challenge to a licensing decision" as a RICO claim help it "avoid the strict jurisdictional limits imposed by Congress." *Am. Bird Conservancy v. FCC*, 545 F.3d 1190, 1194 (9th Cir. 2008); *St. John's United Church of Christ v. City of Chicago,* 401 F. Supp. 2d 887, 902 (N.D. Ill. 2005), *aff'd,* 502 F.3d 616 (7th Cir. 2007). As *St. John's* explained, if a plaintiff's complaint in the district court alleges that it was injured by an agency order, and if an appellate court has exclusive authority to review that agency order, then the

**Appx0009**

plaintiff's complaint is "inescapably intertwined" with the appellate court's review. *Id.* It does not matter whether the claim was framed as a constitutional challenge or some other federal question: It must go to the appellate court. *Id.* Or as *St. John's* put it: litigants may not seek, "through careful pleading, to avoid the strict jurisdictional limits imposed by Congress." *Id.* Here, Skywave alleges that its business prospects were injured by the FCC's licensing decisions. It does not matter that Skywave has repackaged its claims in a RICO action: Its complaint is "inescapably intertwined" with its challenges to the FCC's licensing decisions, meaning the exclusive judicial forum for its grievance is the D.C. Circuit. 47 U.S.C. § 402(b).[2]

The Ninth Circuit's decision in *American Bird Conservancy* is similarly persuasive. 545 F.3d at 1190. There, the plaintiff ostensibly sued the FCC for violating the Endangered Species Act. *Id.* at 1191. But in its complaint, it objected to seven specific tower registrations. *Id.* at 1193. It criticized the FCC's decision to "continue to authorize operation of [the towers] in an unlawful manner." *Id.* The Ninth Circuit held that the plaintiff had merely "dress[ed] up [its] core challenge to a licensing decision" as a statutory claim. *Id.* at 1193–94. The two issues—the tower registrations and the FCC's compliance with federal environmental law—were so "inextricably intertwined" that the latter could not be decided without disturbing the former. *Id.* at 1193. Consistent with the Court's analysis above, the Ninth Circuit

---

[2] Skywave argues that, even if its amended complaint did challenge an FCC decision, the D.C. Circuit does not have exclusive jurisdiction over this case. *See* [108] at 12–13, 15–16. As defendants point out, this argument is premature, where Skywave does not claim to have exhausted its administrative remedies. [115] at 6.

**Appx0010**

held that under "Congress's carefully constructed system of review," the district court lacked subject matter jurisdiction over plaintiff's suit. *Id.* at 1193–95.

Significantly, Skywave already has placed the core issue in its complaint—defendants' purported deceit—before the FCC in its 2023 petition for reconsideration. [102-1]; [102-3]. There, Skywave challenged the FCC's renewal of 10Band's most recent experimental license and complained that the license renewal "should not have been granted" because 10Band "has completed its experiments and now uses the experimental authorization for regular day-to-day trading." [102-1] at 1.[3] Skywave now describes this petition as only "mention[ing] that 10Band seems to improperly use the license for 'day-to-day trading.'" [108] at 15. This is disingenuous. As the language of the petition repeatedly makes clear, *see* note 3, Skywave has asked the FCC to conclude that 10Band has intentionally misused the experimental licenses. It even provided an expert report substantiating this allegation. [102-3] at 9–14. By

---

[3] *See id.* at 3 ("[T]he application for renewal should not have been granted," as it "exceeded the bounds of the Commission's rule" on experimental radio licenses); *id.* (10Band claims that it seeks renewal of its experimental license "so that it may continue an almost seven-year experiment to further understand market potential and refine its customer facing data feed," but this explanation contrasts with its earlier assertions, which "contemplate[d] only private internal communications"—not a "customer" market); *id.* (10Band is not operating the facilities for their intended experimental purposes, but rather "as a regular full-time means of transmitting financial information to gain an edge in the financial markets"); *id.* at 6 (10Band operated a joint venture with defendants, where it "allowed [defendants'] unlicensed operations on the experimental licensed facilities," and therefore violated FCC rules, warranting denial of its experimental license renewal); *id.* ("For ten years, 10Band has used and continues to use the facilities day in and day out to conduct financial trades. After years of highly profitable production trading and market dominance … renewal of the experiment is not justified."); [102-3] at 2–3 (pointing to "24/7 duty cycles and regular transmissions" from 10Band's experimental site, indicating "that 10Band was not experimenting," but that it wrongfully "seeks to retain the experimental station to continue its daily practice of transmitting trade information"); *id.* at 4 ("10Band clings to its experimental authorization as a means to gain an edge in the financial markets in which it trades.").

putting defendants' alleged misconduct before the FCC, Skywave recognized that this issue is in the agency's wheelhouse. *See also* 47 U.S.C. § 303(m)(1)(A) (granting the FCC the "authority to suspend the license of any operator upon proof sufficient to satisfy the [FCC] that the licensee has violated … any regulation made by the [FCC]"). Repackaging its arguments to the FCC as RICO claims does not secure federal subject matter jurisdiction. *See St. John's United Church of Christ,* 401 F. Supp. 2d at 902.

Finally, the Court does not understand defendants to "argue that Skywave somehow should have brought its RICO claims to the FCC in the first instance." *Contra* [108] at 13. On this point, Skywave tries to find support in *National Broadcasting Company v. United States*, 319 U.S. 190, 222–23 (1943), but there, the Supreme Court held that the FCC could refuse to grant a license to an applicant suspected of violating antitrust laws. As defendants point out, *National Broadcasting Company* may support an argument (one not before the Court) that the FCC may consider claims of racketeering as part of its licensing decisions. *See* [115] at 5 n.1. It does not, however, support Skywave's position that this Court has jurisdiction to resolve its RICO claims because Skywave could not have brought its claims of racketeering to the FCC's attention.

## IV.    Conclusion

For the above reasons, defendants' motion to dismiss the amended complaint [101] is granted. The Court has considered granting leave to amend; however, no

**Appx0012**

amendment would cure the lack of subject matter jurisdiction. The dismissal is without prejudice. Fed. R. Civ. P. 41(b)). Civil case terminated.

_____
Georgia N. Alexakis
United States District Judge

Date: December 2, 2025

12

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF NextGen 1.8 (rev. 1.8.4)**
**Eastern Division**

Skywave Networks, LLC

Plaintiff,

v.                                              Case No.: 1:24−cv−09650
                                                Honorable Georgia N. Alexakis

William J. Disomma, et al.

Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, December 2, 2025:

      MINUTE entry before the Honorable Georgia N. Alexakis: For the reasons set forth in the accompanying memorandum opinion and order, the Court does not have subject matter jurisdiction over Skywave's amended complaint and therefore grants defendants' motion to dismiss [101]. The dismissal is without prejudice. Enter Memorandum Opinion and Order. Civil case terminated. (ca, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.