**No. 26-1015**

# In the United States Court of Appeals for the Seventh Circuit

---

SKYWAVE NETWORKS, LLC, PLAINTIFF-APPELLANT

*v.*

WILLIAM J. DISOMMA, ET AL., DEFENDANTS-APPELLEES

---

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS (CIV. NO. 24-9650)
(THE HONORABLE GEORGIA N. ALEXAKIS, J.)*

---

**BRIEF OF DEFENDANTS-APPELLEES**

---

ROBERT Y. SPERLING
ANDREW G. GORDON
JESSICA CAREY
KATHERINE B. FORREST
KRISTINA BUNTING
MICHAEL P. BELLIS
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *1285 Avenue of the Americas
  New York, NY 10019*

KANNON K. SHANMUGAM
MASHA G. HANSFORD
DAVIS POLK & WARDWELL LLP
  *1050 17th Street, N.W.
  Washington, DC 20036
  (202) 962-7000
  kshanmugam@davispolk.com*

NATHAN W. RAAB
KRISTA A. STAPLEFORD
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *2001 K Street, N.W.
  Washington, DC 20006*

*(additional counsel on inside cover)*

CHRIS C. GAIR
GAIR GALLO EBERHARD, LLP
  *One East Wacker Drive, Suite 2600*
  *Chicago, IL 60601*

NEEMA SAHNI
COVINGTON & BURLING LLP
  *1999 Avenue of the Stars, Suite 3500*
  *Los Angeles, CA 90067*

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1015

Short Caption: Skywave Networks, LLC v. William DiSomma, et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Virtu Financial, Inc. (Lead); William DiSomma (Notice); Paul A. Gurinas (Notice); Matthew Hinerfeld (Notice);

 John Madigan (Notice); Jump Trading, LLC (Notice) [Revised]

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Gair Gallo Eberhard LLP; Covington & Burling LLP; Paul, Weiss, Rifkind, Wharton & Garrison LLP;

 Davis Polk & Wardwell LLP [Revised]

(3)    If the party, amicus or intervenor is a corporation:

   i)        Identify all its parent corporations, if any; and

        N/A

   ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        BlackRock, Inc. for Virtu Financial, Inc.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: /s/ Kannon K. Shanmugam          Date: April 30, 2026

Attorney's Printed Name:  Kannon K. Shanmugam

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☑  **No** ☐

Address:  1050 17th Street N.W., Washington, DC 20036 [Revised]

Phone Number:  (202) 962-7010 [Revised]          Fax Number:  (202) 962-7111 [Revised]

E-Mail Address:  kshanmugam@davispolk.com [Revised]

rev. 12/19 AK

**Save As**     **Clear Form**

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1015

Short Caption: Skywave Networks, LLC v. William DiSomma, et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 William DiSomma; Paul A. Gurinas; Matthew Hinerfeld; John Madigan; Jump Trading, LLC; Virtu Financial, Inc.

 [New Information]

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

 Gair Gallo Eberhard LLP; Covington & Burling LLP; Paul, Weiss, Rifkind, Wharton & Garrison LLP;

 Davis Polk & Wardwell LLP [New Information]

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        BlackRock, Inc. for Virtu Financial, Inc.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: /s/ Masha G. Hansford     Date: April 30, 2026

Attorney's Printed Name: Masha G. Hansford [New Information]

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐   **No** ☑

Address: 1050 17th Street N.W., Washington, DC 20036 [New Information]

Phone Number: (202) 962-7067 [New Information]     Fax Number: (202) 962-7111 [New Information]

E-Mail Address: mhansford@davispolk.com [New Information]

rev. 12/19 AK

Save As      Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>26-1015</u>

Short Caption: <u>Skywave Networks, LLC v. William DiSomma, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Defendants William J. DiSomma, Paul A. Gurinas, Matthew Hinerfeld, John Madigan, Jump Trading, LLC,</u>

<u>Virtu Financial, Inc.</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Paul, Weiss, Rifkind, Wharton & Garrison LLP; Davis, Polk & Wardwell LLP; Covington & Burling LLP;</u>

<u>Gair Gallo Eberhard LLP</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>N/A</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>BlackRock, Inc. (party Virtu Financial, Inc.)</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    <u> </u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u> </u>

Attorney's Signature: <u>/s/ Robert Y. Sperling</u>      Date: <u>May 1, 2026</u>

Attorney's Printed Name: <u>Robert Y. Sperling</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐  **No** ☑

Address: <u>1285 6th Ave., New York, New York 10019</u>

<u> </u>

Phone Number: <u>(212) 373-3148</u>      Fax Number: <u>(212) 492-0148</u>

E-Mail Address: <u>rsperling@paulweiss.com</u>

rev. 12/19 AK

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: _26-1015_____

Short Caption: _Skywave Networks, LLC v. William DiSomma, et al._____

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
_Defendants William J. DiSomma, Paul A. Gurinas, Matthew Hinerfeld, John Madigan, Jump Trading, LLC,_____

_Virtu Financial, Inc._____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
_Paul, Weiss, Rifkind, Wharton & Garrison LLP; Davis, Polk & Wardwell LLP; Covington & Burling LLP;_____

_Gair Gallo Eberhard LLP_____

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        _N/A_____

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        _BlackRock, Inc. (party Virtu Financial, Inc.)_____

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

_____

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

_____

Attorney's Signature: _/s/ Andrew G. Gordon_____ Date: _May 1, 2026_____

Attorney's Printed Name: _Andrew G. Gordon_____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐  **No** ☑

Address: _1285 6th Ave., New York, New York 10019_____

_____

Phone Number: _(212) 373-3543_____ Fax Number: _(212) 757-3990_____

E-Mail Address: _agordon@paulweiss.com_____

rev. 12/19 AK

Save As        Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1015

Short Caption: Skywave Networks, LLC v. William DiSomma, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Defendants William J. DiSomma, Paul A. Gurinas, Matthew Hinerfeld, John Madigan, Jump Trading, LLC,

Virtu Financial, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Paul, Weiss, Rifkind, Wharton & Garrison LLP; Davis, Polk & Wardwell LLP; Covington & Burling LLP;

Gair Gallo Eberhard LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

BlackRock, Inc. (party Virtu Financial, Inc.)

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Jessica Carey    Date: May 1, 2026

Attorney's Printed Name:  Jessica Carey

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐    **No** ☑

Address:  1285 6th Ave., New York, New York 10019

Phone Number: (212) 373-3566    Fax Number:  (212) 492-0566

E-Mail Address: jcarey@paulweiss.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Save As          Clear Form

Appellate Court No: 26-1015

Short Caption: Skywave Networks, LLC v. William DiSomma, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Defendants William J. DiSomma, Paul A. Gurinas, Matthew Hinerfeld, John Madigan, Jump Trading, LLC,

Virtu Financial, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Paul, Weiss, Rifkind, Wharton & Garrison LLP; Davis, Polk & Wardwell LLP; Covington & Burling LLP;

Gair Gallo Eberhard LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        BlackRock, Inc. (party Virtu Financial, Inc.)

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Katherine B. Forrest          Date: May 1, 2026

Attorney's Printed Name:  Katherine B. Forrest

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** ☐     **No** ☑

Address:  1285 6th Ave., New York, New York 10019

Phone Number:  (212) 373-3195          Fax Number:  (212) 492-0195

E-Mail Address: kforrest@paulweiss.com

rev. 12/19 AK

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>26-1015</u>

Short Caption: <u>Skywave Networks, LLC v. William DiSomma, et al.</u>

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 <u>Defendants William J. DiSomma, Paul A. Gurinas, Matthew Hinerfeld, John Madigan, Jump Trading, LLC,</u>

 <u>Virtu Financial, Inc.</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 <u>Paul, Weiss, Rifkind, Wharton & Garrison LLP; Davis, Polk & Wardwell LLP; Covington & Burling LLP</u>

 <u>Gair Gallo Eberhard LLP</u>

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

 <u>N/A</u>

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

 <u>BlackRock, Inc. (party Virtu Financial, Inc.)</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

_____

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

_____

Attorney's Signature: <u>/s/ Kristina Bunting</u>    Date: <u>May 1, 2026</u>

Attorney's Printed Name:  <u>Kristina Bunting</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐   **No** ☑

Address:  <u>1285 6th Ave., New York, New York 10019</u>

_____

Phone Number: <u>(212) 373-3503</u>    Fax Number: _____

E-Mail Address: <u>kbunting@paulweiss.com</u>

rev. 12/19 AK

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1015

Short Caption: Skywave Networks, LLC v. William DiSomma, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Defendants William J. DiSomma, Paul A. Gurinas, Matthew Hinerfeld, John Madigan, Jump Trading, LLC,

 Virtu Financial, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Paul, Weiss, Rifkind, Wharton & Garrison LLP; Davis, Polk & Wardwell LLP; Covington & Burling LLP;

 Gair Gallo Eberhard LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

      N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      BlackRock, Inc. (party Virtu Financial, Inc.)

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Nathan W. Raab    Date: May 1, 2026

Attorney's Printed Name:  Nathan W. Raab

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐  **No** ☑

Address:  2001 K St. N.W., Washington, DC 20006

Phone Number: (202) 381-5244    Fax Number:  (202) 330-5166

E-Mail Address: nraab@paulweiss.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1015

Short Caption: Skywave Networks, LLC v. William DiSomma, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Defendants William J. DiSomma, Paul A. Gurinas, Matthew Hinerfeld, John Madigan, Jump Trading, LLC,

 Virtu Financial, Inc.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Paul, Weiss, Rifkind, Wharton & Garrison LLP; Davis, Polk & Wardwell LLP; Covington & Burling LLP

 Gair Gallo Eberhard LLP

(3)     If the party, amicus or intervenor is a corporation:

i)          Identify all its parent corporations, if any; and

     N/A

ii)         list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

     BlackRock, Inc. (party Virtu Financial, Inc.)

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:



(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:



Attorney's Signature: /s/ Michael P. Bellis                    Date: April 30, 2026

Attorney's Printed Name:  Michael P. Bellis

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** ☐   **No** ☑

Address:  1285 6th Ave., New York, New York 10019



Phone Number: (646) 478-1018                    Fax Number:  (347) 626-2650

E-Mail Address: mbellis@paulweiss.com

rev. 12/19 AK

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1015

Short Caption: Skywave Networks, LLC v. William DiSomma, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Defendants William J. DiSomma, Paul A. Gurinas, Matthew Hinerfeld, John Madigan, Jump Trading, LLC,

Virtu Financial, Inc.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Paul, Weiss, Rifkind, Wharton & Garrison LLP; Davis, Polk & Wardwell LLP; Covington & Burling LLP;

Gair Gallo Eberhard LLP

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

        N/A

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        BlackRock, Inc. (party Virtu Financial, Inc.)

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Krista A. Stapleford      Date: May 1, 2026

Attorney's Printed Name: Krista A. Stapleford

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).      **Yes** ☐      **No** ☑

Address: 2001 K St. N.W., Washington, DC 20006

Phone Number: (202) 381-5241      Fax Number: (202) 330-5767

E-Mail Address: kstapleford@paulweiss.com

rev. 12/19 AK

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1015

Short Caption: Skywave Networks, LLC v. William DiSomma, et al

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 William DiSomma; Paul A. Gurinas; Matthew Hinerfeld; John Madigan; Jump Trading, LLC; Virtu Financial, Inc.

_____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Gair Gallo Eberhard LLP, Covington & Burling LLP, Paul Weiss, Rifkind, Wharton & Garrison LLP,

 Davis Polk & Wardell LLP

(3)    If the party, amicus or intervenor is a corporation:

   i)        Identify all its parent corporations, if any; and

          N/A

   ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

          BlackRock, Inc. for Virtu Financial, Inc.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

       N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

       N/A

Attorney's Signature: /s/ Chris Gair          Date: 5/04/2026

Attorney's Printed Name:  Chris Gair

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☑ **No** ☐

Address:  1 E Wacker Dr. Suit 2600, Chicago, IL 60601

_____

Phone Number:  (312) 600-4900          Fax Number:

E-Mail Address: cgair@gairgallo.com

rev. 12/19 AK

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-1015

Short Caption: Skywave Networks, LLC v. William DiSomma, et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Defendants William J. DiSomma, Paul A. Gurinas, Matthew Hinerfeld, John Madigan, Jump Trading, LLC

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Covington & Burling LLP; Gair Gallo Eberhard LLP

(3)     If the party, amicus or intervenor is a corporation:

   i)       Identify all its parent corporations, if any; and

   ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Neema Sahni                    Date: January 26, 2026

Attorney's Printed Name:  Neema Sahni

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** ☑ **No** ☐

Address:  1999 Avenue of the Stars

 Los Angeles, CA 90067

Phone Number: (424) 332-4757                    Fax Number:  (202) 662-6291

E-Mail Address: nsahni@cov.com

rev. 12/19 AK

# TABLE OF CONTENTS

Page

Statement regarding oral argument ...................................................1

Statement of jurisdiction..................................................................2

Statement of the issues ...................................................................2

Statement of the case .....................................................................2

    A.    Statutory and regulatory background.............................................5

    B.    Factual background and proceedings below...................................7

Summary of argument ...................................................................11

Standard of review.........................................................................17

Argument.......................................................................................17

I.    The district court correctly determined that it lacked jurisdiction over Skywave's RICO action.........................................17

    A.    The district court properly concluded that Skywave's suit constitutes an impermissible collateral attack on 10Band's Part 5 licenses...................................................................17

    B.    Skywave's contrary arguments lack merit...................................33

II.    In the alternative, this Court should affirm because the RICO claims fail as a matter of law..................................46

    A.    Skywave's fraud-on-the-FCC theory fails to state a claim .......................................................................47

    B.    Skywave's fraud-on-the-commercial-trading-market theory fails to state a claim .........................................................50

Conclusion....................................................................................52

# TABLE OF AUTHORITIES

## CASES

*American Bird Conservancy* v. *FCC*, 545 F.3d 1190 (9th Cir. 2008) ........29, 40

*Americopters LLC* v. *FAA*, 441 F.3d 726 (9th Cir. 2006)..................................36

*Anza* v. *Ideal Steel Supply Corp.*, 547 U.S. 451 (2006).........................47, 48, 50

*Apex Digital, Inc.* v. *Sears, Roebuck & Co.*,
   572 F.3d 440 (7th Cir. 2009).....................................................................17

*Assure Competitive Transportation, Inc.* v. *United States*,
   629 F.2d 467 (7th Cir. 1980)......................................................................29

*Beach Forwarders, Inc.* v. *Services By Air, Inc.*,
   76 F.4th 610 (7th Cir. 2023) ......................................................................41

*Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*,
   403 U.S. 388 (1971) ...................................................................................32

*Boyd* v. *Illinois State Police*, 384 F.3d 888 (7th Cir. 2004)...............................41

*Bridge* v. *Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008) ......................49

*Ciminelli* v. *United States*, 598 U.S. 306 (2023)...............................................42

*Cleveland* v. *United States*, 531 U.S. 12 (2000) ........................................*passim*

*Cook, Inc.* v. *United States*, 394 F.2d 84 (7th Cir. 1968) ..................................19

*Denberg* v. *United States Railroad Retirement Board*,
   696 F.2d 1193 (7th Cir. 1983)....................................................................40

*FCC* v. *ITT World Communications, Inc.*, 466 U.S. 463 (1984) .............*passim*

*Folden* v. *United States*, 379 F.3d 1344 (Fed. Cir. 2004) ..........................39, 40

*Gaunce* v. *deVincentis*, 708 F.2d 1290 (7th Cir. 1983).....................17, 19, 33, 36

*Heiting* v. *United States*, 16 F.4th 242 (7th Cir. 2021)....................................41

Page

Continued—cases

*Hemi Group, LLC* v. *City of New York*,
559 U.S. 1 (2010) ............................................................*passim*

*Holmes v. Securities Investor Protection Corp.*,
503 U.S. 258 (1992) ...............................................................47

*Kelly* v. *United States*, 590 U.S. 391 (2020) ...............................42, 44

*Lachmund* v. *ADM Investor Services, Inc.*,
191 F.3d 777 (7th Cir. 1999)...................................................45

*McCarthy* v. *Madigan*, 503 U.S. 140 (1992)...............................32

*Merritt* v. *Shuttle, Inc.*, 187 F.3d 263 (2d Cir. 1999).........................35

*Merritt* v. *Shuttle, Inc.*, 245 F.3d 182 (2d Cir. 2001)...................33, 34

*Metro Broadcasting, Inc.* v. *FCC*, 497 U.S. 547 (1990) ...................43

*NextWave Personal Communications, Inc., In re*,
200 F.3d 43 (2d Cir. 1999).................................................6, 19

*Oling* v. *Air Line Pilots Association*, 346 F.2d 270 (7th Cir. 1965)........*passim*

*Ordower* v. *Office of Thrift Supervision*,
999 F.2d 1183 (7th Cir. 1993)..........................................*passim*

*Otwell* v. *Alabama Power Co.*, 747 F.3d 1275 (11th Cir. 2014).........................39

*Press Communications LLC* v. *FCC*,
875 F.3d 1117 (D.C. Cir. 2017) ...........................................18, 25, 26

*Ross* v. *Blake*, 578 U.S. 632 (2016) ...................................................32

*Rural Cellular Association* v. *FCC*,
588 F.3d 1095 (D.C. Cir. 2009) ...............................................25

*Sandwich Isles Communications, Inc.* v. *National
Exchange Carrier Association*, 799 F. Supp. 2d 44 (D.D.C. 2011) .............20

iii

Page

Continued—cases

*Savory* v. *Cannon*, 947 F.3d 409 (7th Cir. 2020) ................................................3

*Self* v. *Bellsouth Mobility, Inc.*, 700 F.3d 453 (11th Cir. 2012).............17, 18, 20

*Stoddard* v. *Chambers*, 43 U.S. 284 (1844)......................................................20

*Toulabi* v. *United States*, 875 F.2d 122 (7th Cir. 1989) ...................................43

*Tur* v. *FAA*, 104 F.3d 290 (9th Cir. 1997)........................................................35

*Turtle Island Restoration Network* v. *Department of Commerce*,
    438 F.3d 937 (9th Cir. 2006).....................................................18, 28, 31

*United States* v. *Griffin*, 76 F.4th 724 (7th Cir. 2023) ...............................43, 44

*United States* v. *Kato*, 878 F.2d 267 (9th Cir. 1989) .......................................43

*United States* v. *Schwartz*, 924 F.2d 410 (2d Cir. 1991) ..................................43

*Venner* v. *Michigan Central Railroad Co.*, 271 U.S. 127 (1926)....17, 19, 29, 31

*Whitney National Bank in Jefferson Parish* v. *Bank of
    New Orleans & Trust Co.*, 379 U.S. 411 (1965)...............................................17

*Woodrum* v. *Southern Railway Co.*, 750 F.2d 876 (11th Cir. 1985) ................37

## STATUTES, RULES, AND REGULATIONS

18 U.S.C. § 1964(c) ...................................................................................10, 47

28 U.S.C. § 1291 .................................................................................................2

28 U.S.C. § 1331 ...............................................................................................28

47 C.F.R. § 0.31(i) ..............................................................................................6

47 U.S.C. § 151 ................................................................................................43

47 U.S.C. § 155(c)(4) .................................................................................7, 9, 25

Page

Continued—statutes

47 U.S.C. § 155(c)(5) .............................................................9, 25

47 U.S.C. § 155(c)(6) .............................................................9, 25

47 U.S.C. § 155(c)(7) ......................................................7, 9, 25, 37

47 U.S.C. § 301 ...........................................................................5

47 U.S.C. § 303 .........................................................................19

47 U.S.C. § 303(l)(1) ....................................................................6

47 U.S.C. § 303(m)(1)(F) ...................................................6, 21, 24, 26

47 U.S.C. § 307 ...................................................................5, 19, 44

47 U.S.C. § 307(c) .......................................................................6

47 U.S.C. § 308 .........................................................................19

47 U.S.C. § 309 .........................................................................19

47 U.S.C. § 312 .........................................................................19

47 U.S.C. § 312(a) .......................................................................6

47 U.S.C. § 312(a)(1) ...........................................................21, 24, 26

47 U.S.C. § 312(a)(3) ...............................................................26, 38

47 U.S.C. § 312(b).................................................................6, 24, 26

47 U.S.C. § 402(b).................................................................19, 25

47 U.S.C. § 402(b)(1) ....................................................................7

47 U.S.C. § 402(b)(2) ....................................................................7

47 U.S.C. § 402(b)(3) ....................................................................7

Page

Continued—statutes, rules, and regulations

47 U.S.C. § 402(b)(4) ..............................................................................7

47 U.S.C. § 402(b)(5) ..............................................................................7

47 U.S.C. § 402(b)(6) ..............................................................................7

47 U.S.C. § 402(c) ...................................................................................7

47 U.S.C. § 402(g) ...................................................................................7

Communications Act of 1934, 47 U.S.C. § 151 et seq.................................25, 29

Racketeer Influenced and Corrupt Organizations Act,
    18 U.S.C. §§ 1961–1968 .................................................................*passim*

7th Cir. R. 28(a) ......................................................................................2

7th Cir. R. 28(b) ......................................................................................2

Fed. R. Civ. P.  9(b) ............................................................................16, 45

12 C.F.R. § 536b.5(g)(2) ........................................................................23

47 C.F.R. § 1.115(d) ................................................................................7

47 C.F.R. § 1.17(a) ................................................................................21

47 C.F.R. § 5.1(b) ...............................................................................5, 27

47 C.F.R. § 5.3(a) ...............................................................................5, 26

47 C.F.R. § 5.3(b) ...................................................................................5

47 C.F.R. § 5.3(e) ...................................................................................5

47 C.F.R. § 5.3(h) ...................................................................................5

47 C.F.R. § 5.3(k) ...............................................................................5, 26

47 C.F.R. § 5.5 ......................................................................................5

Page

Continued—regulations

47 C.F.R. § 5.602(a)......................................................................................6

47 C.F.R. § 5.602(f) ...............................................................................24, 38

## ADMINISTRATIVE DECISIONS

*Matter of Metro Two-way, LLC*, 33 F.C.C.R. 6278 (2018).........................20, 24

*Matter of Revocation of the License of Sea Island Broadcasting*,
   60 F.C.C. 2d 146 (1976) .........................................................................20, 24

## STATEMENT REGARDING ORAL ARGUMENT

Appellees respectfully submit that oral argument is unnecessary because this appeal involves the straightforward application of the collateral-attack doctrine to licensing decisions within the exclusive jurisdiction of the Federal Communications Commission (FCC).

## STATEMENT OF JURISDICTION

Appellant's statement of jurisdiction is neither complete nor correct. *See* 7th Cir. R. 28(a)-(b).  Although this Court has appellate jurisdiction under 28 U.S.C. § 1291, the district court lacked jurisdiction for the reasons given in this brief and the decision below.

The district court entered judgment dismissing appellant's claims for lack of subject-matter jurisdiction on December 2, 2025.  App. 1.  Appellant timely filed its notice of appeal on December 31, 2025.  Supp. App. 182.

## STATEMENT OF THE ISSUES

1.     Whether the district court lacked jurisdiction because this action is a collateral attack on licensing decisions by the FCC.

2.     Whether appellant fails to state a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO).

## STATEMENT OF THE CASE

When an interested party disagrees with an FCC licensing decision, it must seek review of that decision administratively and then, if still unsatisfied, file a petition for review in the D.C. Circuit.  Here, however, appellant Skywave Networks, LLC took a different approach:  it filed a district court lawsuit under the Racketeer Influenced and Corrupt Organizations Act (RICO) attacking the FCC's decisions to grant and renew certain spectrum licenses.

Recognizing that gambit for what it was—a collateral attack on the FCC's licensing decisions—the district court dismissed Skywave's suit for lack of subject-matter jurisdiction.  This Court should now affirm.

Appellees Jump Trading, LLC and Virtu Financial, Inc. are high-frequency trading firms.[1]  According to Skywave, they jointly control and operate a third entity—10Band LLC—which, since 2016, has held "Part 5" (or "experimental") spectrum licenses issued by the FCC.  10Band uses the licenses, which the FCC has repeatedly renewed, to transmit market data at high speeds by shortwave radio.

Skywave wishes to operate its own transmission network for market information, which it calls the "Skywave Network."  But the Skywave Network has never gotten off the ground—because, as Skywave sees things, Skywave's investors and business partners fear competition from 10Band.  So in 2023, Skywave petitioned the FCC to revoke one of 10Band's licenses.  And in 2024, with its petition still pending, Skywave filed this RICO lawsuit.  The suit alleges that 10Band obtained its Part 5 licenses by misrepresenting its intended use for them to the FCC and that 10Band's activities under its licenses go beyond those licenses' scope.

---

[1] Consistent with the applicable legal standard on appeal of an order granting a motion to dismiss, appellees' recitation of the facts assumes the truth of all material allegations in Skywave's operative complaint.  *See Savory* v. *Cannon*, 947 F.3d 409, 411-412 (7th Cir. 2020).  By doing so, appellees do not concede that any of those facts are true.

The district court dismissed Skywave's lawsuit for want of jurisdiction, reasoning that Skywave "improperly [sought] collateral review" of the FCC's licensing decisions. App. 9. That decision was correct and should be affirmed. As the district court explained, "[t]he FCC has exclusive jurisdiction to grant, condition, and suspend broadcast licenses." App. 3. And, as the district court proceeded to determine, Skywave's RICO claims are poorly disguised attacks on the FCC's choice to license 10Band: the whole point of Skywave's lawsuit is that 10Band is (allegedly) not entitled to its Part 5 licenses, and indeed obtained those licenses by fraudulently misrepresenting its eligibility for them. Thus, Skywave's action is a collateral attack on FCC licensing decisions. Under long-settled law, that attack cannot proceed in federal district court.

In the alternative, in the unlikely event that this Court finds that the district court had subject-matter jurisdiction, the Court should nevertheless affirm on the independent ground that Skywave has not stated a claim upon which relief can be granted. Skywave's RICO claims rest on two premises: that appellees defrauded the FCC by misrepresenting 10Band's intended use for its licenses and that appellees defrauded the "Commercial Trading market" by using 10Band's licenses to trade securities. Both premises, however, are inconsistent with established precedent. Skywave's complaint is thus substantively deficient as well as jurisdictionally barred.

For those reasons, the judgment of dismissal should be affirmed.

4

### A.     Statutory And Regulatory Background

Title III of the Federal Communications Act of 1934 creates a comprehensive regulatory scheme governing radio spectrum licenses.  As is relevant here, the Communications Act prohibits any person from "us[ing] or operat[ing] any apparatus for the transmission of energy or communications or signals by radio  .  .  .  except under and in accordance with" an FCC license.  47 U.S.C. § 301.  The FCC "shall" grant a license "if [the] public convenience, interest, or necessity will be served thereby."  47 U.S.C. § 307.

In exercising its powers under the Communications Act, the FCC has promulgated rules dealing with the issuance of licenses "for the purposes of experimentation, product development, and market trials."  47 C.F.R. § 5.1(b).  Under the licenses issued pursuant to those rules—called "Part 5" licenses—licensees may pursue, among other things, "[e]xperimentations in scientific or technical radio research," "[e]xperimentations in the broadcast services," "[t]echnical demonstrations of equipment and techniques," "[t]esting of equipment in connection with production or regulatory approval of such equipment," and "[p]roduct development and market trials."  47 C.F.R. §§ 5.3(a), 5.3(b), 5.3(e), 5.3(h), 5.3(k).  A "market trial" is "[a] program designed to evaluate product performance and customer acceptability prior to the production stage, and typically requires testing a specific product under expected use conditions to evaluate actual performance and effectiveness."  47 C.F.R. § 5.5.

5

When an entity uses its experimental license for market trials, it may engage in "marketing" and the "provision of services for hire." 47 C.F.R. § 5.602(a).

The Communications Act gives the FCC the exclusive power to grant and renew a license, including the Part 5 experimental license at issue in this case, 47 U.S.C. §§ 303(l)(1), 307(c), and to place "conditions" on the "use" of such a license, *see In re NextWave Personal Communications, Inc.*, 200 F.3d 43, 54 (2d Cir. 1999). It also gives the FCC the exclusive power to suspend or revoke a license, including "upon proof sufficient to satisfy the Commission that the licensee . . . has obtained or attempted to obtain" its license "by fraudulent means." 47 U.S.C. § 303(m)(1)(F); *see* 47 U.S.C. § 312(a). And "[w]here any person . . . has failed to operate substantially as set forth in [her] license . . . the [FCC] may order such person to cease and desist from such action" after giving notice and an opportunity to be heard before the agency. 47 U.S.C. § 312(b).

Finally, the Communications Act specifies how interested parties may challenge FCC licensing decisions. The FCC has delegated its authority over Part 5 experimental licenses to its Office of Engineering and Technology (OET). *See* 47 C.F.R. § 0.31(i). "Any person aggrieved" by a decision of the OET must start by exhausting their FCC administrative remedies, including by seeking review of the OET's decision before the full Commission within 30

6

days.  *See* 47 U.S.C. §§ 155(c)(4), 155(c)(7); 47 C.F.R. § 1.115(d).  If those efforts do not succeed, the applicant may seek judicial review in the D.C. Circuit by filing a petition for review within 30 days of "public notice of the decision or order complained of."  47 U.S.C. §§ 402(b)(1)-(6), 402(c).  Judicial review proceeds "upon the record before" the D.C. Circuit "in the manner prescribed by" the Administrative Procedure Act.  *See* 47 U.S.C. § 402(g).

### B.    Factual Background And Proceedings Below

1.    Appellees Jump and Virtu are high-frequency trading firms.  Supp. App. 86.  According to Skywave, they jointly operate and control 10Band, which develops shortwave technology capable of transmitting market data at high speeds.  Supp. App. 85-89.  Appellees William DiSomma and Paul Gurinas are Jump's founders; appellee Matthew Hinerfeld is Jump's general counsel; and appellee John Madigan is one of Jump's telecommunications infrastructure managers.  Supp. App. 86.

10Band holds several Part 5 licenses from the FCC.  It first applied for a license in 2016, when it sought to test the use of shortwave radio technology to transmit financial market data.  Supp. App. 79.  The FCC granted 10Band's application and issued it a five-year license, expiring in 2021.  *Id.*  The FCC has since granted 10Band at least four additional licenses and has modified or extended those licenses many times.  Supp. App. 79-84.  10Band also has one license renewal application pending before the FCC.  Supp. App. 130 n.4.

2.    Skywave hopes to own and operate its own transmission network for market information, which it calls the "Skywave Network." But by its own admission, that network does not yet exist. Supp. App. 107-108. For instance, Skywave has not applied for the "Part 73" "commercial" licenses it says it needs for its transmitting facilities, Supp. App. 69, and it admits that the FCC has never granted anyone a Part 73 license to transmit market information, Supp. App. 95-96. Nor has Skywave purchased necessary transmitters and antennas for the Skywave Network, or acquired the land on which those transmitters and antennas will be built. Supp. App. 107.

Despite those obstacles, Skywave blames 10Band, Jump, and Virtu for the Skywave Network's failure to launch. It says that, in 2017, a key Skywave Network investor "became concerned" that, "if a person or entity were to use 10Band's shortwave transmitter under an Experimental License for Commercial Trading, that person or entity would have a dominant latency (*i.e.*, speed) advantage . . . over the Skywave Network." Supp. App. 99. Skywave eventually allowed the investor to back out of its partnership with Skywave, slowing the Network's progress. Supp. App. 100.

For six years after Skywave's investor aired its concerns, Skywave did nothing to challenge 10Band's use of its Part 5 licenses. But in September 2023, Skywave filed a petition with the OET for it to reconsider the OET's

8

August 2023 grant of 10Band's renewal application.  Supp. App. 161.  The petition argued that 10Band used one of its Part 5 licenses for "regular day-to-day trading"; that such use was not authorized by those licenses; and that, as a result, the FCC should "reconsider its grant and deny 10Band's renewal application."  *Id.*  10Band responded that Skywave's allegations were "baseless" and that 10Band's program of experimentation was "similar to that approved by [the FCC] for other parties."  Supp. App. 176-177.

Thus far, the OET has not acted on Skywave's petition for reconsideration.  If the OET denies Skywave's petition, Skywave will be entitled to seek review by the full FCC, followed by the D.C. Circuit if necessary.  47 U.S.C. § 155(c)(4)-(c)(7).

3.     A year after filing its petition for reconsideration, Skywave filed this lawsuit against appellees in the United States District Court for the Northern District of Illinois.  In its operative complaint, Skywave alleges that Virtu, Jump, DiSomma, Gurinas, Hinerfeld, and Madigan violated the RICO statute by scheming to procure 10Band's Part 5 licenses by fraud and by using those licenses to defraud the "Commercial Trading market."  Supp. App. 113-114.

Skywave's underlying theory of wire fraud—the sole RICO predicate alleged in its complaint—rests entirely on 10Band's Part 5 licenses.  Skywave alleges that, when 10Band applied for its Part 5 licenses, 10Band and those

acting on its behalf represented to the FCC that 10Band's operations would be "experimental." Supp. App. 92-94.[2] But in fact, Skywave argues, 10Band's operations did not qualify for "experimental" treatment under the FCC's regulations. *Id.* According to Skywave, appellees thus committed wire fraud (1) each time they submitted applications for 10Band's Part 5 licenses and (2) by using 10Band's Part 5 licenses to facilitate transactions in financial instruments "at major worldwide market exchanges." Supp. App. 95-96; *see id.* at 90-96.

As relief, Skywave seeks an injunction restraining appellees, their "affiliates," and "all other persons acting in concert with" them—presumably including 10Band—from using 10Band's Part 5 licenses for commercial trading. Supp. App. 117-118. Skywave also seeks treble damages under 18 U.S.C. § 1964(c). *Id.*

4.    Appellees moved to dismiss Skywave's lawsuit on four different grounds: that the district court lacked subject-matter jurisdiction because Skywave's action was an impermissible collateral attack on 10Band's broadcast licenses; that Skywave failed to allege any injury "by reason of" violations of the federal RICO statute; that Skywave's theory of wire fraud failed as a matter of law; and that Skywave's suit was time-barred. Supp. App. 127-129.

---

[2] In passing, Skywave's complaint also alleges that 10Band falsely represented that 10Band's modem equipment would not be capable of broadcasting station identification. Supp. App. 92-93.

The district court granted appellees' motion, concluding it lacked jurisdiction over Skywave's claims. The court reasoned that Skywave "improperly [sought] collateral review of the FCC's decisions in the district court" because its "claims depend[ed] on it establishing that at least parts of the FCC's orders" granting 10Band's license applications were "wrong . . . [or] otherwise invalid." App. 8-9 (citation and alterations omitted). Skywave's complaint, it explained, rested on the premise "that defendants lied to the FCC to obtain and renew 10Band's experimental licenses." App. 7. In addition, Skywave had asked the Court "to enjoin defendants from any further 'misuse' of [10Band's] licenses." *Id.* And "[s]ignificantly," Skywave had "already . . . placed the core issue in its complaint—defendants' purported deceit—before the FCC in its 2023 petition for reconsideration." App. 11.

This appeal follows.

## SUMMARY OF ARGUMENT

As the district court recognized, Skywave's action is an impermissible collateral attack on 10Band's Part 5 licenses. And, independently, Skywave's theory of RICO liability is legally deficient. On either basis, the district court's judgment of dismissal should be affirmed.

I.     The district court correctly concluded that it lacked subject-matter jurisdiction over Skywave's suit because it is a collateral attack on FCC

11

orders that Congress has given the D.C. Circuit exclusive jurisdiction to review.

A.    When Congress creates a procedure for review of administrative orders in the courts of appeals, litigants cannot attack those orders except pursuant to the procedure Congress has created.  Thus, a district court cannot issue an order that necessarily conflicts with an administrative determination reviewable only in a court of appeals.  Nor may it enjoin or penalize action that is the natural outcome of such a determination.

Under that well-established doctrine, Skywave's RICO suit constitutes an improper collateral attack on FCC licensing decisions.  Skywave's complaint alleges that appellees obtained 10Band's Part 5 licenses by misrepresenting 10Band's eligibility for them, and it seeks damages and injunctive relief meant to combat the alleged misuse of those licenses.  But the allegations in Skywave's complaint necessarily conflict with the FCC's determination that 10Band was, in fact, eligible for licenses under Part 5.  And as a practical matter, awarding Skywave the relief it seeks would require a district court to enjoin and penalize action that is the natural outcome of the FCC's licensing decisions.  Those are the telltale signs of a collateral attack, meaning the district court correctly dismissed Skywave's action for lack of jurisdiction.

The Communications Act's limitations on judicial review further illustrate that Skywave's suit constitutes an impermissible attempt to circumvent

12

Congress's exclusive scheme for review of FCC decisions. To challenge an FCC spectrum license under the Communications Act—including on the basis that the license was fraudulently obtained or that the licensee has operated beyond the scope of its license—a plaintiff like Skywave must exhaust its administrative remedies, and may then seek review in the D.C. Circuit. In turn, the D.C. Circuit does not review FCC spectrum licensing decisions de novo; rather, it defers to the FCC's factual findings and policy judgments. Here, however, Skywave has yet to exhaust its administrative remedies before the FCC, and it seeks de novo judicial factfinding concerning questions that its own petition for reconsideration asked the FCC to decide. All this makes still clearer that Skywave's suit is a poorly disguised collateral attack on 10Band's FCC licenses—*i.e.*, an attempt to have the district court usurp the FCC's and D.C. Circuit's exclusive jurisdiction.

B.     Skywave's contrary arguments lack merit.

1.     Skywave starts by suggesting that the federal RICO statute gives the district court jurisdiction over its action. But whether Skywave's action is barred as a collateral attack does not turn on whether Skywave purports to plead RICO claims. What matters is the substance of Skywave's claims, not how Skywave has chosen to frame its complaint.

2.     Next, Skywave insists that its action is not a collateral attack because the FCC lacks authority to adjudicate Skywave's RICO claims or to

13

grant Skywave the particular relief it seeks.  But as this Court's cases make clear, whether a lawsuit collaterally attacks agency action does not depend on whether the suit raises claims that the agency could adjudicate or seeks relief that the agency could award.  Rather, the collateral-attack inquiry turns on whether the substance of a lawsuit assails the validity of an agency's decision—and Skywave's action does just that.

3.      In addition, Skywave asserts that its action is not a collateral attack because no FCC order has specifically rejected Skywave's claims that appellees obtained 10Band's licenses by fraud and have used those licenses for impermissible purposes.  But Skywave's action necessarily conflicts with the FCC's determination that 10Band was eligible for its licenses and would require a district court to enjoin and penalize action that is the natural outcome of those licenses.  Against that backdrop, it is irrelevant that the FCC has yet to specifically pass upon Skywave's latest fraud allegations.  Indeed, the FCC has yet to pass upon Skywave's fraud allegations because—despite the Communications Act's exhaustion requirements—Skywave filed this lawsuit before obtaining a final order from the FCC evaluating them.

In a similar vein, Skywave asserts that it is not alleging injury by the FCC or from an outcome of an FCC licensing decision.  That is wrong:  Skywave's suit arises from 10Band's radio transmissions, the intended outcome of

14

the FCC's decision to issue 10Band a radio spectrum license. Nor can Skywave fare better by framing its claims as challenges to the misuse of 10Band's licenses rather than their issuance. License-misuse determinations are themselves reserved exclusively for the FCC, subject to review by the D.C. Circuit. Moreover, in addition to alleging misuse, Skywave alleges that 10Band obtained its licenses by fraud—an assertion that necessarily calls the validity of 10Band's Part 5 licenses into question.

4.    Finally, Skywave contends that the district court erred by failing to draw reasonable inferences in its favor and by rejecting Skywave's characterization of its claims. At minimum, Skywave adds, the district court should not have dismissed its action entirely. But the district court was required to assure itself of its jurisdiction, and it did not need to accept Skywave's unsupported factual inferences or its self-serving characterization of its claims along the way. Nor was the district court obliged, or even allowed, to avoid dismissing a case over which it lacked jurisdiction.

II.    Alternatively, this Court should affirm because Skywave's theory of RICO liability is legally deficient.

A.    Skywave contends that appellees engaged in a scheme to defraud the FCC—and thus committed wire fraud, a RICO predicate offense—by making false statements to the FCC in order to obtain 10Band's spectrum licenses. But that theory of wire fraud is squarely foreclosed by *Cleveland* v.

15

*United States*, 531 U.S. 12, 24 (2000), which holds that schemes to acquire government licenses or permits by false pretenses fall outside the federal fraud statutes.

B.    Skywave's complaint also alleges that appellees engaged in a scheme to defraud the "Commercial Trading market" by using 10Band's licenses to trade financial instruments.  But its complaint does not explain when and how appellees (allegedly) defrauded their trading counterparties, meaning that Skywave's fraud claims are insufficiently pleaded under Rule 9(b) of the Federal Rules of Civil Procedure.  Indeed, Skywave's commercial trading theory does not appear to be an independent theory of fraud at all; rather, it is wholly derivative of Skywave's fraud-on-the-FCC theory.

Further, even if Skywave's commercial trading theory were not legally deficient from the outset, it would fail under principles of proximate causation.  To state a claim under RICO, a plaintiff must allege that a defendant's RICO predicate violations led directly to its injuries.  Skywave cannot meet that bar: although Skywave alleges a scheme to defraud commercial traders, it is at most the indirect victim of that alleged scheme.  Accordingly, Skywave's commercial trading theory fails to state a cognizable RICO claim regardless of whether Skywave has properly pleaded wire fraud.

The district court's judgment of dismissal should therefore be affirmed, either for want of jurisdiction or for failure to state a claim.

## STANDARD OF REVIEW

This Court reviews a district court's dismissal for lack of jurisdiction de novo. *See, e.g.*, *Apex Digital, Inc.* v. *Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).

## ARGUMENT

I. **THE DISTRICT COURT CORRECTLY DETERMINED THAT IT LACKED JURISDICTION OVER SKYWAVE'S RICO ACTION**

A. **The District Court Properly Concluded That Skywave's Suit Constitutes An Impermissible Collateral Attack On 10Band's Part 5 Licenses**

1. When Congress creates a procedure for review of administrative orders in the courts of appeals, litigants cannot attack or otherwise "assail the validity" of those orders except pursuant to the procedure Congress has created. *Venner* v. *Michigan Central Railroad Co.*, 271 U.S. 127, 130 (1926); *see Whitney National Bank in Jefferson Parish* v. *Bank of New Orleans & Trust Co.*, 379 U.S. 411, 420 (1965). Put differently, "collateral attacks upon administrative orders are not permissible." *Gaunce* v. *deVincentis*, 708 F.2d 1290, 1293 (7th Cir. 1983).

Whether a lawsuit is such an impermissible collateral attack turns on its "gravamen" or "substance." *FCC* v. *ITT World Communications, Inc.*, 466 U.S. 463, 468 & n.5 (1984). For example, a district court cannot issue an order that "necessarily conflict[s]" with an administrative determination reviewable only in a court of appeals. *Self* v. *Bellsouth Mobility, Inc.*, 700 F.3d 453, 462

17

(11th Cir. 2012). Nor can it "enjoin or penalize action that [an] agency has approved or that is the natural outcome of the agency's decision." *Ordower* v. *Office of Thrift Supervision*, 999 F.2d 1183, 1188 (7th Cir. 1993). At bottom, the collateral-attack inquiry is a practical one: a lawsuit is barred as a collateral attack when it raises "direct [or] disguised" objections to an agency's regulatory choices. *Id.*; *see also, e.g.*, *Turtle Island Restoration Network* v. *Department of Commerce*, 438 F.3d 937, 939 (9th Cir. 2006) (asking whether a lawsuit, "though framed" in different terms, was "in actuality" a challenge to agency action) (internal quotation marks omitted).

The rule against collateral attacks on agency decisions serves an important purpose: it limits litigants' efforts to circumvent statutory restrictions on judicial review of administrative action. Among other things, Congress often requires litigants to exhaust statutory and administrative remedies before seeking direct review in the courts of appeals, *see, e.g.*, *Oling* v. *Air Line Pilots Association*, 346 F.2d 270, 275-276 (7th Cir. 1965), and requires reviewing courts to give deference to the agency decisions subject to review, *see, e.g.*, *Press Communications LLC* v. *FCC*, 875 F.3d 1117, 1121 (D.C. Cir. 2017). Allowing litigants to collaterally attack agency decisions in district court, however, lets them bypass those procedural rules—an outcome this Court has recognized is improper. *See, e.g.*, *Oling*, 346 F.2d at 275.

18

2.     The district court correctly applied the collateral-attack doctrine in concluding that Skywave's lawsuit improperly seeks collateral review of 10Band's Part 5 licenses in federal district court.  Congress has vested the FCC with "exclusive jurisdiction" over federal radio spectrum licenses, *In re NextWave Personal Communications, Inc.*, 200 F.3d 43, 54 (2d Cir. 1999), subject to "exclusive" review by the D.C. Circuit.  *Cook, Inc.* v. *United States*, 394 F.2d 84, 86 (7th Cir. 1968); *see also* 47 U.S.C. §§ 303, 307-309, 312, 402(b).  As a result, the FCC's licensing determinations cannot be collaterally attacked in federal district court.  *Gaunce*, 708 F.2d at 1292-1293; *see also ITT World*, 466 U.S. at 468.  Yet Skywave's lawsuit is a collateral attack on 10Band's Part 5 licenses:  from start to finish, it raises "disguised substantive objections" to the FCC's licensing decisions.  *Ordower*, 999 F.2d at 1188.

a.     In "substance," Skywave's action "assail[s] the validity" of 10Band's licenses.  *ITT World*, 466 U.S. at 468; *Venner*, 271 U.S. at 130.  Skywave's position is that 10Band and appellees "fraudulently obtained" Part 5 licenses by misrepresenting 10Band's eligibility for those licenses to the FCC.  Supp. App. 89-92.  But a court could not endorse that position without "call[ing] into question the validity" of 10Band's licenses:  to say that appellees obtained 10Band's licenses by misrepresenting 10Band's eligibility for them is to say that those licenses should not have been granted and are invalid.  App. 7 (quot-

19

ing *Sandwich Isles Communications, Inc.* v. *National Exchange Carrier Association*, 799 F. Supp. 2d 44, 51 (D.D.C. 2011); *see, e.g.*, *Stoddard* v. *Chambers*, 43 U.S. 284, 318 (1844) ("[F]raud vitiates all transactions."); *Matter of Revocation of the License of Sea Island Broadcasting*, 60 F.C.C. 2d 146, 157 (1976) ("Once we find that we cannot rely on a licensee's representations to us, the only suitable penalty is revocation of the license."); *Matter of Metro Two-way, LLC*, 33 F.C.C.R. 6278, 6282-6284 (2018) (similar).  In other words, Skywave's claims "necessarily conflict with final orders of the FCC and thereby depend on the district court being able to collaterally review the correctness or validity of those orders."  *Self*, 700 F.3d at 462.

Skywave's own opening brief confirms that the "gravamen" of its suit is that the FCC erred by licensing 10Band.  *ITT World*, 466 U.S. at 468 n.5.  As Skywave sees things, to adjudicate this action, a "factfinder"—either the district court or a jury—must evaluate "the veracity of the representations made by 10Band and Appellee[s]" in their license applications.  Br. 39-40.  In particular, that factfinder must decide whether appellees lied to the FCC when they certified that 10Band's operations had been and would "be on an experimental basis in accordance with Part 5" of the FCC's regulations.  Supp. App. 91; *see* Br. 7-8.  But deciding whether 10Band operates "on an experimental basis in accordance with Part 5" falls squarely within the FCC's regulatory authority; in Skywave's own words, it is a question "within the purview of the FCC."  Br.

20

27. Understandably, then, Congress has left the question of whether appellees "obtained" 10Band's licenses through "fraudulent means" for the FCC to decide. 47 U.S.C. § 303(m)(1)(F); *see, e.g.*, 47 C.F.R. § 1.17(a) (barring FCC license applicants from making materially "incorrect or misleading" statements in licensing applications).

b.     Confirming that this action is a collateral attack on 10Band's licenses, Skywave also asks a district court to "enjoin [and] penalize action . . . that is the natural outcome" of the FCC's licensing decisions. *Ordower*, 999 F.2d at 1188. Skywave seeks both injunctive relief and treble damages for what it claims is 10Band's "misuse" of its Part 5 licenses for impermissible, non-experimental purposes. Supp. App. 117-118. Yet since 2016, the FCC has repeatedly approved 10Band's licensing applications under Part 5. Supp. App. 79-83. And it has declined to suspend or revoke 10Band's licenses as fraudulently obtained, despite its unquestioned statutory authority to do so, *see* 47 U.S.C. §§ 303(m)(1)(F), 312(a)(1), and despite Skywave's allegations in its 2023 FCC petition that 10Band has used its licenses for commercial trading, *see* Supp. App. 161. The "natural outcome" of those choices by the FCC is that 10Band continues to use its Part 5 licenses for radio transmissions. *Ordower*, 999 F.2d at 1188. Skywave cannot ask a district court to "enjoin" that activity or to "penalize" it by awarding treble damages against appellees—who all allegedly direct and control 10Band—under RICO. *Id.*

21

Skywave's efforts to distinguish *Ordower* do not work.  *See* Br. 50-52. In *Ordower*, the Office of Thrift Supervision ("OTS") approved a bank's conversion from "mutual" to "stock" form.  *See* 999 F.2d at 1184-1185.  Later, two depositors sued to enjoin the conversion and for damages, claiming that the bank's managers had engineered an unduly low valuation for the transaction. *See id.* at 1184-1185, 1189.  But this Court held that the district court lacked jurisdiction over that valuation dispute.  *See id.* at 1188.  Because OTS had approved the conversion, the district court could not enjoin or penalize it.  *See id.* at 1188.  Further, because OTS had necessarily approved management's valuation by approving the conversion transaction, the depositors could not "wage a collateral attack on the valuation approved by" the agency in district court.  *Id.*  However, the Court allowed one aspect of the case to move forward: a "proxy fraud" claim that the bank's managers had circulated misleading proxy materials urging depositors to approve the proposal to convert, which was then placed before the agency.  *See id.*  The Court distinguished the valuation claim from the proxy fraud claim on the ground that, while the valuation claim sought to attack "the substance of the transaction" the agency had approved, the agency had not (and could not have) "passed upon the merits" of the proxies when it approved the conversion.  *Id.*

Skywave contends that its suit is like the proxy fraud claim because it challenges appellees' use of the licenses, which the FCC (it says) did not approve. *See* Br. 51-52. But Skywave misunderstands *Ordower*'s proxy fraud holding, which cuts against Skywave rather than for it. *Ordower* concluded that the proxy fraud claim was not a collateral attack on agency action because OTS did not approve or even "review the accuracy of [proxy] materials" when deciding whether to approve the conversion. 999 F.2d at 1188. Instead, the proxy materials were prepared only for the *depositors* to review when determining whether to approve the proposed conversion. In the words of OTS's regulations, "[t]he fact that a proxy statement" had been filed with OTS could "not be deemed a finding by the Office that such material [was] accurate or complete or not false or misleading, or that the Office [had] passed upon the merits of or approved any proposal contained therein." *Ordower*, 999 F.2d at 1188 (quoting 12 C.F.R. § 536b.5(g)(2)).

Here, by contrast, the FCC necessarily "pass[ed] upon the merits" of 10Band's Part 5 license applications—including the applications' representations that 10Band would engage in permissible activities under Part 5—before approving them. *Ordower*, 999 F.2d at 1188. After all, the whole point of 10Band's license applications (unlike the proxy materials in *Ordower*) was to convince the FCC to approve 10Band's Part 5 licenses; if the FCC had thought that it could not rely on appellees' representations that 10Band was eligible

for its Part 5 licenses, it could not and would not have approved 10Band's license applications as meritorious. *E.g.*, *Sea Island*, 60 F.C.C. 2d at 157; *Metro Two-Way*, 33 F.C.C.R. at 6283-6284. And in a similar vein, if the FCC thinks *today* that those representations are false or fraudulent—or that 10Band has willfully and repeatedly failed "to operate substantially as set forth in [its] license[s]"—it has exclusive jurisdiction to suspend or revoke 10Band's licenses in accordance with that belief. 47 U.S.C. § 312(b); *see id.* §§ 303(m)(1)(F), 312(a)(1); *see also* 47 C.F.R. § 5.602(f) (providing that, if a market trial exceeds its permitted scope, "the trial shall be immediately terminated"). Unlike the proxy fraud claim in *Ordower*, then, Skywave's RICO claims do serve as "direct" or "disguised" "substantive objections" to the FCC's licensing decisions. 999 F.2d at 1188.

As Skywave acknowledges, "questions about 10Band's [Part 5] licenses" fall "within the purview of the FCC." Br. 27. And in every sense that matters, this case is "about" 10Band's licenses: Skywave says that 10Band and appellees obtained 10Band's licenses by fraud; it asks the district court to award treble damages against 10Band's owners and appellees for that alleged wrongdoing; and it seeks injunctive relief limiting how 10Band can use its licenses. As a result, Skywave's action is a collateral attack on 10Band's FCC licenses. It cannot be brought in federal district court.

24

3.    The Communications Act's limitations on judicial review further illustrate how Skywave's action is a collateral attack on the FCC's licensing decisions.  Allowing Skywave's action to proceed in district court would let Skywave bypass the Communications Act's exhaustion requirements and its deferential standard of review for FCC factfinding and policy judgments. "[N]o reason, much less excuse, is assigned" for Skywave's "failure" to respect those limitations.  *Oling*, 346 F.2d at 275.

Under the Communications Act, a person aggrieved by an FCC licensing decision may seek review of the decision in, and only in, the D.C. Circuit. 47 U.S.C. § 402(b).  But the Act's judicial-review provisions come with caveats. To obtain judicial review, a litigant must first exhaust his administrative remedies in accordance with the FCC's rules.  47 U.S.C. § 155(c)(4)-(7).  And the scope of review in the D.C. Circuit is "very deferential."  *Press Communications LLC*, 875 F.3d at 1121 (citation omitted).  The D.C. Circuit reviews the FCC's licensing decisions "on the basis of the record before the agency," giving due respect to the FCC's factfinding and policy judgments. *See, e.g.*, *Rural Cellular Association* v. *FCC*, 588 F.3d 1095, 1105-1107 (D.C. Cir. 2009); *Press Communications*, 875 F.3d at 1121.

Skywave's action is a transparent effort to circumvent those requirements.  To begin with, Skywave did not come close to exhausting its administrative remedies before filing suit.  For all but one of 10Band's Part 5 licenses,

25

Skywave has never asked the FCC to investigate its fraud or misuse allegations. *See* Supp. App. 132.  And for the one Part 5 license renewal that Skywave *did* challenge, the FCC's administrative proceedings remain ongoing. Skywave has thus deprived the FCC of its opportunity to investigate and opine on its allegations that 10Band fraudulently obtained or has systematically abused its licenses—determinations that, once again, the Communications Act places squarely within the FCC's regulatory authority.  *See, e.g.*, 47 U.S.C. §§ 303(m)(1)(F), 312(a)(1), 312(b).

Skywave's action is equally impossible to reconcile with the Communications Act's "very deferential" standard of review.  *Press Communications*, 875 F.3d at 1121 (citation omitted).  To repeat, the core of Skywave's case is that 10Band fraudulently represented to the FCC—in each of its requests for license grants and renewals—that its activity under its Part 5 licenses would constitute "[e]xperimentations in scientific or technical radio research" or "[p]roduct development and market trials," 47 C.F.R. § 5.3(a), 5.3(k), despite planning all along to use the licenses for a different, allegedly impermissible purpose:  commercial trading.  *See, e.g.*, Supp. App. 92.  But whether a licensee's current or future transmission activities comport with the FCC's own rules for Part 5 licenses is plainly a question reserved first and foremost for the FCC, as illustrated by the FCC's authority to police licensees who depart from the conditions of their licenses.  *See* 47 U.S.C. § 312(a)(3), (b).  Skywave

26

may want a federal district court, or a jury, to decide de novo that 10Band's activities under its licenses do not count as "experimentation." 47 C.F.R. § 5.1(b); *see* Br. 40 (asking an unspecified "factfinder" to do just that). But Congress has given decision-making authority over that question to the FCC, subject to deferential review by the D.C. Circuit.

There is no better evidence that Skywave's case belongs before the FCC than Skywave's own petition for reconsideration, which is currently pending before that very agency. *See* Supp. App. 161. That petition, like this case, challenges the FCC's decision to grant 10Band's request to renew its first experimental license. *Compare* Supp. App. 79-84 (discussing some of 10Band's license renewals and modifications), *with* Supp. App. 162-163 (same). And in both its petition and this case, Skywave presents "in essence" the "same" arguments, *Oling*, 346 F.2d at 277: namely, that, "[f]or years, 10Band has used" its Part 5 licenses for commercial trading that the FCC's rules do not allow, and, as a result, 10Band's Part 5 license renewal "should not have been granted," Supp. App. 161, 167. But instead of awaiting the FCC's decision on its petition and then, if necessary, seeking review in the D.C. Circuit—as the Communications Act requires—Skywave bucked that process and decided to try its hand in the district court. Congress did not authorize that shortcut.

*    *    *

27

Skywave's complaint alleges that 10Band, together with appellees, fraudulently obtained 10Band's Part 5 licenses to transmit information beyond the licenses' permitted scope. From start to finish, those allegations lodge "direct or disguised substantive objections" to the FCC's licensing decisions. *Ordower*, 999 F.2d at 1188. It follows that Skywave's action constitutes an impermissible collateral attack on those decisions.

## B.   Skywave's Contrary Arguments Lack Merit

Skywave throws up a host of arguments in an effort to avoid the obvious applicability of the collateral-attack doctrine. Although it offers many variations on the theme, Skywave's primary contention is that the district court had jurisdiction over its suit because it raised RICO claims cognizable in federal court. That contention falls short in every variation.

1.   Skywave asserts that its case belongs in federal court because Congress has authorized federal district courts to hear RICO cases. Br. 24. But while the RICO statute (together with 28 U.S.C. § 1331) gives federal district courts the power to hear RICO actions *in general*, that power is limited by the many jurisdictional doctrines that limit the authority of district courts in specific instances—including, as relevant here, the collateral-attack doctrine. Put differently, that Skywave has labeled its action as a RICO suit does not settle whether, "in actuality," it is waging a collateral attack on an agency decision. *Turtle Island*, 438 F.3d at 939 (internal quotation marks omitted).

28

Were things otherwise, enterprising litigants could *always* attack agency action collaterally "through artful pleading." *American Bird Conservancy* v. *FCC*, 545 F.3d 1190, 1194 (9th Cir. 2008). The relevant question is whether Skywave's lawsuit "rests on the premise" that 10Band's Part 5 licenses were improperly granted, *Oling*, 346 F.2d at 277-278—not whether Skywave "expressly" seeks review of those licenses, *see Venner*, 271 U.S. at 130.

Consistent with those principles, this Court has repeatedly classified lawsuits nominally pleaded as stand-alone actions under federal law as impermissible collateral attacks on agency action. *See, e.g.*, *Oling*, 346 F.2d at 277-278 (claim under the federal Railway Labor Act); *Ordower*, 999 F.2d at 1188 (claim under federal common law for breach of fiduciary duty). And it has explained that "a special statute vesting jurisdiction in a particular court" (such as the Communications Act) "cuts off the jurisdiction other courts might otherwise have under a more general statute" (such as RICO). *Assure Competitive Transportation, Inc.* v. *United States*, 629 F.2d 467, 471 (1980). In other words, whatever the contours of the federal RICO statute in general, Skywave cannot use a RICO claim to attack collaterally FCC orders reviewable exclusively in other courts. That includes the question—committed to the FCC—whether an FCC license is being used improperly.

Illustrating its refusal to acknowledge that the collateral-attack doctrine looks to substance rather than form, Skywave complains that "the District

29

Court stated that Skywave's RICO claims are in the FCC's 'wheelhouse.'" Br. 27 (quoting App. 11-12). But what the district court *actually* said was that Skywave had already placed the "issue" in this case—appellees' "alleged misconduct" in obtaining 10Band's licenses—before the FCC. App. 12. In that way, Skywave *itself* "recognized that this issue [was] in the agency's wheelhouse." App. 12. Quite right. Whether the issues in this case fall within the FCC's wheelhouse does not depend on whether Skywave has dressed them up in RICO garb.

2.     In a similar vein, Skywave insists that it cannot be attempting to circumvent the FCC's jurisdiction because the FCC "does not have jurisdiction to adjudicate the full scope of Skywave's RICO claims or to grant Skywave's requested relief." Br. 27 (capitalization altered). Skywave notes that the FCC lacks jurisdiction over RICO cases and cannot award damages. *See* Br. 27-37. Nor can the FCC hear claims against appellees, who do not themselves hold any Part 5 licenses and so fall outside the FCC's regulatory perimeter. *See id.* And in an FCC proceeding, Skywave would not have access to the broader civil discovery rules that govern RICO claims brought in federal district court. *Id.* at 28-29.

Again, this argument fundamentally misunderstands the collateral-attack doctrine. Whether a lawsuit is a collateral attack depends on whether, in "substance," it "assail[s] the validity" of an agency decision. *ITT World*, 466

30

U.S. at 468; *Venner*, 271 U.S. at 130. It does not turn on whether, as a formal matter, the lawsuit raises claims within the agency's jurisdiction, seeks relief that the agency could award, or names parties within the agency's regulatory authority.[3] Those "fram[ing]" choices do not alter whether a lawsuit is "in actuality" a challenge to agency action. *Turtle Island*, 438 F.3d at 939 (internal quotation marks omitted).

Indeed, in *Oling*, this Court rejected an argument identical to Skywave's. There, several flight engineers sued their union and employer for injunctive relief and damages. *See* 346 F.2d at 272. They alleged that both violated the federal Railway Labor Act by approving amendments to a collective bargaining agreement that discriminated against them. *See id.* at 272, 275, 277. And in response to the defendants' observation that the Civil Aeronautics Board (CAB) had already approved the collective bargaining agreement, the pilots argued that "[t]he CAB did not have jurisdiction" over their Railway Act

---

[3] Skywave repeatedly emphasizes that its operative complaint does not name 10Band as a defendant. But the complaint alleges that the RICO "enterprise" is 10Band. Supp. App. 61. And Skywave's central contention is that appellees—who allegedly all "control 10Band," Supp. App. 87—conspired to obtain 10Band's Part 5 licenses by fraud. *See* Supp. App. 88-91. Moreover, the operative complaint seeks injunctive relief against appellees and their "affiliates," Supp. App. 117-118, a category that assuredly is intended to include 10Band. Tellingly, Skywave's original complaint in this action named 10Band as a defendant; it only changed course after appellees moved to dismiss under the collateral-attack doctrine. *Compare* Supp. App. 1, *with* Supp. App. 59. In every way that matters, 10Band and its FCC licenses are Skywave's target.

claims, which were "broader and different" from any claim they could have presented to the agency. *Id.* at 277. Nor, they added, could the CAB have "provided the kind of relief" necessary to remedy those violations. *Id.*

In *Oling*, however, this Court saw things differently. At its "heart," the plaintiffs' complaint "rest[ed] on the premise" that the agreement approved by the CAB was invalid. 346 F.2d at 278. Thus, it was a collateral attack regardless of whether the CAB had jurisdiction to hear the claims as they were labeled or give the requested relief. *Id.* Just so here: although Skywave may insist otherwise, *Oling* dictates that it is immaterial that the FCC "does not have jurisdiction to adjudicate the full scope of Skywave's RICO claims or to grant Skywave's requested relief." Br. 27. *Oling* thus forecloses Skywave's claim.[4]

---

[4] Skywave cites *McCarthy* v. *Madigan*, 503 U.S. 140 (1992), for the proposition that "a plaintiff is not relegated to seeking relief through an administrative agency  .  .  .  in situations when 'an administrative remedy may be inadequate because of some doubt as to whether the agency was empowered to grant effective relief.'" Br. 29 (quoting *McCarthy*, 503 U.S. at 147-148). *McCarthy*, however, did not involve a collateral attack on an administrative agency's orders; it concerned whether prisoners must exhaust their administrative remedies before seeking money damages under *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *McCarthy*'s reasoning—which dealt with a constitutional implied right of action that was not subject to a statutory scheme requiring administrative exhaustion—does not apply where, as here, Congress has expressly required litigants to exhaust their administrative remedies before filing suit. *See Ross* v. *Blake*, 578 U.S. 632, 639 (2016).

This Court's decision in *Gaunce* is equally on point. There, a pilot sued several FAA employees for revoking her airman's certificate, alleging that the FAA's revocation procedures violated her Fifth Amendment Due Process rights. 708 F.2d at 1291. Her lawsuit sought money damages against FAA employees, which the FAA had no power to award, for constitutional claims, which the FAA could not hear. *See id.* at 1293. Even so, this Court held that her action qualified as a collateral attack on the FAA's decision to revoke her airman's certificate because, in essence, it challenged the validity of that decision. *See id.* As a result, the Court concluded that the district court lacked subject-matter jurisdiction. *See id.*

Nonetheless, pointing to the Second Circuit's decision in *Merritt* v. *Shuttle, Inc.*, 245 F.3d 182 (2d Cir. 2001), Skywave posits that the collateral-attack doctrine does not bar a suit if it raises claims that could not have been placed before an agency. *See* Br. 32-37. That proposition not only conflicts with this Court's longstanding collateral-attack caselaw, but also misconstrues *Merritt* itself. In fact, *Merritt* fully supports the district court's conclusion that it lacked jurisdiction.

In *Merritt*, the Second Circuit held that the Federal Aviation Act's exclusive-review provisions precluded (1) "de novo litigation of issues inhering in a controversy over [an FAA] order, where one party alleges that it was aggrieved by the order," and (2) "all other modes of judicial review of the order."

33

245 F.3d at 188 (emphasis omitted).  Applying that test, the Second Circuit concluded that a pilot's claim for damages against FAA employees for (allegedly) failing to provide him accurate weather alerts, thus causing an accident, did not inhere in a controversy over an administrative law judge's order suspending the pilot's licenses after the accident.  *See id.* at 189-190.  That was because the suit did not challenge "whether the suspension or revocation of [the] pilot's certificate was warranted," but only whether the FAA employees were liable in damages for contributing to the accident.  *See id.* at 190.

Here, however, Skywave seeks precisely what *Merritt* forbids:  "de novo litigation of issues inhering in a controversy over" 10Band's licenses.  245 F.3d at 188 (emphasis omitted).  To repeat, Skywave's core allegation is that 10Band and appellees obtained 10Band's Part 5 licenses by defrauding the FCC and have been using those licenses beyond the scope permitted by the FCC.  Those allegations, unlike the allegations in *Merritt*, go to whether the FCC's decisions concerning the issuance and renewal of 10Band's licenses were "warranted." *Id.*  A court could not find that 10Band obtained its licenses by fraud without imperiling those licenses' substantive validity.

By analogy, suppose the pilot in *Merritt* had argued not that FAA employees failed to provide him with accurate weather alerts, but that the FAA revoked his license because of others' false or fraudulent testimony.  That lawsuit would be barred as a collateral attack on the FAA's revocation decision,

34

as a finding that the FAA issued its revocation decision based on fraudulent testimony would necessarily establish that the FAA's decision to revoke the license was defective. Indeed, the Second Circuit acknowledged as much in a prior case brought by the same individual who was the plaintiff in *Merritt*, when it endorsed the Ninth Circuit's holding in a similar case that district courts cannot entertain allegations that FAA license revocation proceedings were predicated on false testimony. *See Merritt* v. *Shuttle, Inc.*, 187 F.3d 263, 270-271 (2d Cir. 1999) (discussing *Tur* v. *FAA*, 104 F.3d 290, 291-292 (9th Cir. 1997)). This case is no different.

3.    a.    Skywave next insists that it cannot be seeking to circumvent the FCC's jurisdiction because "no previous agency order exists" deciding its specific claims that appellees defrauded the FCC or used 10Band's Part 5 licenses for an impermissible purpose. Br. 39. But Skywave's action does not count as something other than a collateral attack on the FCC's licensing decisions simply because the FCC has yet to specifically review and reject Skywave's fraud allegations. *Contra* Br. 40. Rather, Skywave's contention that 10Band obtained its Part 5 licenses by fraud remains a "disguised" objection to the FCC's decision to grant those licenses in the first place—and a "disguised" attempt to litigate issues properly decided by the FCC along the way. *See Ordower*, 999 F.2d at 1188. By analogy, in *Gaunce*, the FAA did not specifically review or reject the pilot's argument that her revocation proceedings

35

violated the Due Process Clause. *See* 708 F.2d at 1293. Quite the opposite: the FAA's "administrative proceeding" dealt with the pilot's alleged "regulatory violations," not her "due process constitutional claim." *Id.* But the pilot's lawsuit was at bottom still a challenge to the FAA's revocation order, rendering it an unlawful collateral attack. *See id.*

Resisting that conclusion, Skywave points to *Americopters LLC* v. *FAA*, 441 F.3d 726 (9th Cir. 2006), for the proposition that the collateral-attack doctrine does not apply where no agency order exists addressing a plaintiff's specific claims. Br. 37-39. But *Americopters* does not help Skywave's case. There, a helicopter service sued the FAA, seeking damages for an order that the FAA had "repudiated." *See id.* at 737. In that "strange circumstance," the Ninth Circuit concluded that the plaintiffs' damages claim could not possibly be a collateral attack: the claim was not "an 'end run' around an order" (or "the procedures or merits surrounding" an order), because "no FAA order [was] currently in place." *Id.* at 737-738. Here, however, the FCC *has* granted Part 5 licenses to 10Band and has repudiated none of them. Skywave's lawsuit is accordingly an "end run" around the FCC's licensing orders, which remain "in place." *Id.* at 737. Unlike in *Americopters*, then, Skywave's suit is an "attempt to evade" the FCC's "administrative procedures" and to "re-litigate" its licensing decisions. *Id.* at 738.

For that matter, no previous agency order deciding Skywave's allegations exists precisely because Skywave has short-circuited the Communications Act's exhaustion provisions, which require Skywave to seek and obtain FCC review before filing suit. *See* 47 U.S.C. § 155(c)(7).  Before 2023, Skywave never alleged—either before the FCC or in any other forum—that appellees had misused 10Band's licenses or obtained them by fraud.  And Skywave filed this lawsuit without waiting for the FCC to decide its 2023 petition for reconsideration, which first raised the allegations at issue in this case and which remains pending.  Supp. App. 161.  In other words, the absence of an FCC order addressing Skywave's claims is wholly attributable to Skywave's own litigation choices.  Skywave cannot use those choices to "bootstrap the district court into jurisdiction it would not otherwise have." *Woodrum* v. *Southern Railway Co.*, 750 F.2d 876, 883 (11th Cir. 1985).

b.     Shifting to yet another argument, Skywave insists that it "does not claim it was injured by the FCC" or seek redress for the "'outcome' of any FCC decision."  Br. 40, 48 (capitalization altered).  But that is wrong.  The "gravamen" of Skywave's lawsuit, *ITT World*, 466 U.S. at 468 n.5, is that 10Band fraudulently obtained Part 5 licenses to which it was not entitled, *see, e.g.*, Supp. App. 79-83.  And the "outcome" of obtaining a radio spectrum transmission license is transmitting—in 10Band's case, using shortwave radio to

transmit low-latency financial data.  So, on the most basic level, Skywave's lawsuit challenges the "outcome" of the FCC's licensing decisions.

Nor does it alter the analysis that, in Skywave's telling, 10Band has misused its licenses.  For one thing, as explained, Skywave's complaint targets more than mere alleged misuse.  It also rests on the premise that appellees procured 10Band's licenses by fraud—a premise that necessarily calls into question the validity of those licenses.  *See supra* pp. at 19-20.  So, if Skywave's complaint succeeded, 10Band's licenses would fail.  Skywave cannot "extricate [itself] from [that] predicament" by alleging that 10Band has misused its licenses.  *Oling*, 346 F.2d at 277.

For another thing, even if Skywave's complaint had targeted mere misuse, it would still be an impermissible collateral attack.  The Communications Act vests the FCC, not the district courts, with exclusive jurisdiction to determine whether an FCC license should be revoked because the licensee has "fail[ed] to operate substantially as set forth in [its] license."  *See* 47 U.S.C. § 312(a)(3); *see also* 47 C.F.R. § 5.602(f) (requiring the immediate termination of market trials that exceed their authorized scope).  The FCC has made no such determination here, and Skywave chose for more than six years not to challenge 10Band's use before the FCC on this or any other basis.  Skywave's present suit is thus an impermissible "attempt[]," under the guise of a RICO

38

suit, "to obtain the same results and to place the same constraints on" appellees that are committed to the FCC in the "exercise of its institutional expertise." *Otwell* v. *Alabama Power Co.*, 747 F.3d 1275, 1282 (11th Cir. 2014). In other words, it is a collateral attack on 10Band's FCC licenses.[5]

4.    Finally, Skywave protests that the district court failed to treat its jurisdictional allegations as true or draw reasonable inferences in its favor by concluding that "Skywave's RICO claims are merely dressed up FCC challenges." Br. 47; *see id.* at 42-48 (internal quotation marks, citation, and alterations omitted). Skywave adds that, at minimum, the district court should have "issued a narrower ruling to address its concern" that Skywave sought collaterally to attack 10Band's licenses. *Id.* at 52. Both arguments lack merit.

a.    Skywave's first contention—that the district court erred by failing to treat its jurisdictional allegations as true—rests on a fundamental misunderstanding of the collateral-attack doctrine. In order to decide whether an action constitutes a collateral attack, a court looks to its "true nature," *Folden* v. *United States*, 379 F.3d 1344, 1359 n.13 (Fed. Cir. 2004), or "gravamen," *ITT World*, 466 U.S. at 468 n.5. That inquiry does not require the court to accept

---

[5] Skywave asserts (without support) that, "from a practical standpoint, the FCC could not possibly evaluate all possible subsequent uses of every license it grants." Br. 48. Skywave may disagree with the prudence of Congress's policy determination to vest the FCC with that exclusive jurisdiction, but that policy disagreement does not permit it to brush the statute aside and to mount a collateral attack on FCC prerogatives.

39

a plaintiff's characterization of its own complaint; if it did, a plaintiff could always avoid raising a collateral attack "through artful pleading." *American Bird*, 545 F.3d at 1194. Thus, the district court was not obliged to take at face value Skywave's contention that its requested relief would not disturb the FCC's licensing determinations. It was entitled to—indeed, obliged to—decide that legal question for itself, regardless of how Skywave packaged its claims. *Folden*, 379 F.3d at 1359 n.13.

If anything, lingering ambiguity about the nature of Skywave's complaint would cut against jurisdiction rather than for it. This Court has made clear that when a litigant's suit arguably falls within the jurisdiction of the courts of appeals under a special review statute, any "ambiguity is resolved in favor of" the conclusion that the court of appeals, not the district court, has jurisdiction over the action. *Denberg* v. *United States Railroad Retirement Board*, 696 F.2d 1193, 1197 (7th Cir. 1983). Skywave was not entitled to a tie-breaker in the opposite direction—that its attack on 10Band's licenses could proceed in the district court in the face of any ambiguity.

b.     Skywave's second contention fares equally poorly. As Skywave sees things, instead of dismissing its case, the district court "should have instructed that, while it retain[ed] jurisdiction over Skywave's RICO claims . . . Skywave [would] not be permitted to argue . . . that 10Band directly

40

misus[ed]" its licenses.  Br. 53 (discussing *Ordower*).  But an appropriate instruction of that kind, like the instruction given in *Ordower*, would have barred Skywave from raising any "direct [or] disguised" objection to 10Band's Part 5 licenses.  999 F.2d at 1188.  And any such instruction would have left Skywave without a case:  "[w]ithout questioning the licenses' validity as a byproduct of fraud, and therefore challenging the FCC's actions, Skywave has no legal claim."  App. 8.  The district court was therefore correct to dismiss Skywave's action rather than to narrow it into oblivion.

In the end, Skywave's action constitutes an impermissible collateral attack on 10Band's Part 5 licenses.  The district court correctly dismissed that action for lack of jurisdiction, and its judgment should be affirmed.

## II.  IN THE ALTERNATIVE, THIS COURT SHOULD AFFIRM BECAUSE THE RICO CLAIMS FAIL AS A MATTER OF LAW

In the unlikely event that the Court concludes that the district court had subject-matter jurisdiction, it should nonetheless affirm.  This Court may affirm on any ground supported by the record, and it routinely does so on grounds that present "straightforward question[s] of law."  *Boyd* v. *Illinois State Police*, 384 F.3d 888, 897 (7th Cir. 2004); *see, e.g.*, *Beach Forwarders, Inc.* v. *Services By Air, Inc.*, 76 F.4th 610, 613 (7th Cir. 2023); *Heiting* v. *United States*, 16 F.4th 242, 244 (7th Cir. 2021).  Here, the Court can easily conclude that Skywave fails to state a RICO claim.

41

Skywave puts forward two interconnected theories of liability.  *First*, Skywave claims that appellees committed wire fraud—a RICO predicate act— by making misrepresentations to the FCC in order to obtain 10Band's experimental licenses.  *Second*, Skywave contends that appellees defrauded the "Commercial Trading market"—*i.e.*, other financial market participants—by using 10Band's licenses to trade financial instruments.  Supp. App. 95.  Both theories are patently defective.

### A.    Skywave's Fraud-On-The-FCC Theory Fails To State A Claim

Skywave first contends that appellees "engaged in a scheme to defraud the FCC," and therefore violated the federal wire fraud statute, by including misrepresentations in 10Band's license applications that caused the FCC to issue 10Band's Part 5 licenses.  Supp. App. 90.  As a matter of law, that theory fails because schemes to obtain government licenses or permits by false pretenses fall outside the scope of the federal mail and wire fraud statutes.

As the Supreme Court has repeatedly explained, "the federal fraud statutes criminalize only schemes to deprive people of traditional property interests."  *Ciminelli* v. *United States*, 598 U.S. 306, 309 (2023) (citing *Cleveland v. United States*, 531 U.S. 12, 24 (2000)); *accord Kelly* v. *United States*, 590 U.S. 391, 398 (2020).  And schemes to obtain government licenses and permits by false pretenses fall outside the scope of the federal mail and wire fraud statutes because a "license is not 'property' in the government regulator's hands."

*Cleveland*, 531 U.S. at 20; *accord United States* v. *Griffin*, 76 F.4th 724, 738 (7th Cir. 2023); *Toulabi* v. *United States*, 875 F.2d 122, 125 (7th Cir. 1989). In *Cleveland*, for example, a defendant was convicted of mail fraud for lying to state regulatory authorities in order to wrongfully obtain gaming licenses for a video poker business. 531 U.S. at 16-17. The Supreme Court reversed the conviction. *Id.* The State's "intangible" right to pick its video-poker licensees, the Court explained, implicated the State's "regulatory" powers "as a sovereign" rather than any "property interest." *Id.* at 23-24. Accordingly, the defendant's scheme to obtain video-poker licenses by false pretenses fell outside the scope of the federal mail fraud statute. *Id.*[6]

*Cleveland* squarely forecloses Skywave's fraud-on-the-FCC theory as a matter of law: like the video poker licenses in *Cleveland*, the Part 5 licenses at issue here are not "property" while "in the [FCC's] hands." 531 U.S. at 20. Congress created the FCC "[f]or the purpose of regulating interstate and foreign commerce in communication by wire and radio." 47 U.S.C. § 151. And the FCC exercises that regulatory authority by issuing spectrum licenses: there are a "limited number of frequencies on the electromagnetic spectrum," *Metro Broadcasting, Inc.* v. *FCC*, 497 U.S. 547, 597 (1990), *overruled on other*

---

[6] Although the licenses in *Cleveland* were issued by the State of Louisiana, the same rule applies where, as here, the regulatory authority issuing the license is an agency of the United States. *See, e.g.*, *United States* v. *Schwartz*, 924 F.2d 410, 418 (2d Cir. 1991) (federal arms export licenses); *United States* v. *Kato*, 878 F.2d 267, 269 (9th Cir. 1989) (federal pilot's licenses).

*grounds by Adarand Constructors, Inc.* v. *Pena*, 515 U.S. 200 (1995), and the Communications Act vests the FCC with the exclusive regulatory authority to determine whether to grant radio spectrum licenses, based on its determination of what would serve "public interest, convenience, or necessity," 47 U.S.C. § 307. Accordingly, every time the FCC determines whether to issue a radio spectrum license, it is exercising the federal government's "distinctively sovereign authority" to "allocat[e]" space over the radio waves and "control" who may use them. *Cleveland*, 531 U.S. at 23. Schemes to acquire those licenses are not schemes "to appropriate the government's property," and therefore fall outside the scope of the federal wire fraud statute. *Kelly*, 590 U.S. at 400.

At most, Skywave's complaint pleads "[a] scheme to alter a regulatory decision, such as a scheme to obtain a . . . license from a government regulator." *Griffin*, 76 F.4th at 724. Under black-letter law, that is insufficient to plead a violation of the federal wire fraud statute. *See id.*

## B.   Skywave's Fraud-On-The-Commercial-Trading-Market Theory Fails To State A Claim

Skywave also vaguely alleges that appellees "defrauded" the "Commercial Trading market" by using 10Band's licenses to trade financial instruments. Supp. App. 95. But Skywave has not pleaded any fraud on appellees' trading counterparties with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure; indeed, though couched as an independent theory of fraud, Skywave's fraud-on-the-commercial-trading-market theory is

44

wholly derivative of Skywave's fraud-on-the-FCC theory. And in any event, under RICO's proximate-cause requirements, Skywave's alleged injuries are not proximately caused by any fraud on commercial traders.

1.     As an initial matter, Skywave has not pleaded fraud on appellees' trading counterparties (in Skywave's words, the "Commercial Trading market") with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. Under Rule 9(b), Skywave's complaint must allege "the circumstances constituting fraud" with "particularity"—*i.e.*, it must plead the "who, what, when, and where" of any alleged fraud. *Lachmund* v. *ADM Investor Services, Inc.*, 191 F.3d 777, 782 (7th Cir. 1999) (citations omitted). But Skywave's complaint says nothing about any of those details: it does not describe *what* the nature of appellees' alleged fraud was, or *who* appellees allegedly defrauded, or anything else about how appellees allegedly defrauded the "commercial trading market" by using 10Band's Part 5 licenses to make trades. Supp. App. 95-96. "Absent these specifics," Skywave's complaint "cannot satisfy the requirements of Rule 9(b)." *Lachmund*, 191 F.3d at 784; *see id.* (dismissing complaint that did not identify "the specific content of any alleged false representations or the identities of the parties to those alleged communications" under Rule 9(b)).

For that matter, Skywave's fraud-on-the-commercial-trading-market theory is not really an independent theory of fraud. Rather, it is entirely derivative of Skywave's legally insufficient fraud-on-the-FCC theory. In Skywave's telling, appellees defrauded their trading counterparties by acquiring 10Band's licenses by false pretenses and then using those licenses to trade financial instruments. But that is not materially different from Skywave's fraud-on-the-FCC theory: at bottom, it rests on the premise that appellees obtained 10Band's licenses or permits by false pretenses. And that premise, as *Cleveland* makes clear, is insufficient to plead a violation of the federal wire fraud statute. 531 U.S. at 23. By analogy, in *Cleveland*, the defendant allegedly acquired a video poker license by false pretenses and then used that license to take bets from video poker players. *Id.* at 16-17. But it would reduce *Cleveland*'s holding to empty formalism if, as a consequence of those transactions, the Government could have charged the defendant under the federal fraud statutes on the theory that, by using those improperly obtained licenses, the defendant defrauded his poker customers. So too here. Even if appellees obtained 10Band's licenses on false pretenses—and they did not—it would not follow that they defrauded the entities with which they traded.

2.    Further, even if Skywave adequately pleaded that appellees defrauded other commercial traders, Skywave's claims would still fail as a matter

46

of law.  Under the RICO statute, Skywave must demonstrate appellees' alleged RICO violations are the proximate cause of its injuries.  Skywave, however, does not and cannot allege that it suffered any direct injury from appellees' alleged fraud on commercial traders.

A plaintiff can state a claim under RICO only if he was (1) injured "in his business or property," (2) "by reason of" the alleged RICO violation.  18 U.S.C. § 1964(c).  Section 1964 thus requires "a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well."  *Holmes* v. *Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992).

The "central question" in discerning proximate cause is whether a RICO violation "led *directly* to the plaintiff's injuries."  *Anza* v. *Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis added).  Those who are "indirectly injured victim[s]" fall outside the purview of the statute.  *Holmes*, 503 U.S. at 274; *see Hemi Group, LLC* v. *City of New York*, 559 U.S. 1, 9 (2010) ("A link that is too remote, purely contingent, or indirect is insufficient.") (internal quotation marks, alteration, and citation omitted).  To determine whether a plaintiff is a direct or indirect victim, courts must look to how many "steps" "separate the alleged fraud from the asserted injury"; whether "independent fac-

tors" can account for the plaintiff's injury; and "whether better situated plaintiffs would have an incentive to sue." *Hemi Group*, 559 U.S. at 10, 11-12, 15 (citation omitted).

In *Anza*, the Court applied those principles to a competitor who claimed injury "by reason of" an alleged fraud on the government. 547 U.S. at 453-454. The competitor alleged that the defendant "fail[ed] to charge the requisite New York sales tax to cash-paying customers," thus allowing it to lower prices, with the ultimate "aim" of "gain[ing] a competitive advantage" over the defendant's competitors. *Id.* at 454, 460. The Court held that the competitor did not allege that he was injured "by reason of" the alleged racketeering scheme. The state, not the competitor, it concluded, was the direct victim. *Id.* at 458. Whereas the state experienced a pocketbook injury (lost tax revenue) as a direct result of the alleged racketeering scheme, the competitor's injury was more "attenuated." *Id.* at 458-460. Its lost revenue was directly caused by an "entirely distinct" "set of actions" multiple steps down the chain: the defendant's decision to lower prices rather than pocketing the difference. *Id.* at 458. In so holding, the Court rejected the plaintiff's argument that it could "circumvent" the stringent proximate-cause standard "simply by claiming that the defendant's aim was to increase market share at a competitor's expense." *Id.* at 460. Even if that were the defendant's aim, it did not change the fact that the *direct* victim of the scheme was not the competitors.

48

Applying *Anza*'s principles, Skywave has not plausibly alleged that Skywave was the direct victim of appellees' alleged fraud on appellees' commercial trading counterparties. Skywave's central contention is that, every time appellees "misused interstate wires to transmit orders for financial instruments," Supp. App. 95, they defrauded their *competitors* by "leverag[ing] the speed of shortwave connections," to "gain a dominant advantage over market participants," thereby profit[ing] from Commercial Trading . . . *at [appellees'] competitors' expense*," Supp. App. 74, 90 (emphasis added). And by Skywave's own admission, it is not such a competitor or trading counterparty. It is simply a would-be supplier of a *network* to those traders—*i.e.*, an indirect victim of appellees' alleged RICO violations. Supp. App. 70. Skywave thus cannot meet RICO's stringent proximate-cause requirement. Its own allegation is that the first and most direct victims of the alleged scheme were appellees' competitors, who were allegedly injured by appellees' competitive advantages. Those traders would thus be the first and best situated plaintiffs to sue—if Skywave's allegations are correct—and they "would have an incentive" to do so if, as Skywave alleges, 10Band caused them to suffer pecuniary losses. *Hemi Group*, 559 U.S. at 11-12; *see Bridge* v. *Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 658 (2008) (concluding that competitors were directly injured by a defendant's fraud on the government where the competitors "were the *only* parties injured by petitioners' misrepresentations").

49

Meanwhile, the relationship between Skywave's alleged injury—its failure to get the Skywave Network off the ground—and the alleged fraud is far too "attenuated" to support a RICO claim. *Anza*, 547 U.S. at 459. For starters, Skywave's theory of injury fails at the starting gate unless one speculates that Skywave would have applied for and been granted a Part 73 license authorizing its operations. And even then, "[m]ultiple steps . . . separate [appellees'] alleged fraud from [Skywave's] asserted injury." *Hemi Group*, 559 U.S. at 15. Skywave's theory of harm requires other commercial traders to be harmed by their inability to keep pace with 10Band, prompting them (for unspecified reasons) to make the "entirely distinct" decision not to do business with Skywave. *Anza*, 547 U.S. at 458. And it also requires a host of other speculative assumptions: for example, that if Skywave had applied for and obtained its Part 73 licenses, it would have used them to build a viable network for the transmission of financial data. In short, because Skywave's causation theory requires the Court "to move well beyond the first step, that theory cannot satisfy RICO's direct relationship requirement." *Hemi Group*, 559 U.S. at 10.

Skywave attempts to plead its way around the direct-injury rule by alleging that the fraudulent scheme targeted all "Commercial Trading market" "participants, including Skywave." Supp. App. 61, 75, 90, 95. As in *Anza*, that

50

is a non-starter. Indeed, the Supreme Court has twice now rejected that precise stratagem: a plaintiff "cannot escape the proximate cause requirement merely by alleging that the fraudulent scheme embraced all those indirectly harmed by the alleged conduct." *Hemi Group*, 559 U.S. at 13. The result should be no different here. Because Skywave has not alleged direct harm, it has failed to state a cognizable RICO claim, even under its alternative theory of fraud.

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

/s/ *Kannon K. Shanmugam*

ROBERT Y. SPERLING
ANDREW G. GORDON
JESSICA CAREY
KATHERINE B. FORREST
KRISTINA BUNTING
MICHAEL P. BELLIS
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *1285 Avenue of the Americas*
  *New York, NY 10019*

CHRIS C. GAIR
GAIR GALLO EBERHARD, LLP
  *One East Wacker Drive, Suite 2600*
  *Chicago, IL 60601*

KANNON K. SHANMUGAM
MASHA G. HANSFORD
DAVIS POLK & WARDWELL LLP
  *1050 17th Street, N.W.*
  *Washington, DC 20036*
  *(202) 962-7000*
  *kshanmugam@davispolk.com*

NATHAN W. RAAB
KRISTA A. STAPLEFORD
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *2001 K Street, N.W.*
  *Washington, DC 20006*

NEEMA SAHNI
COVINGTON & BURLING LLP
  *1999 Avenue of the Stars, Suite 3500*
  *Los Angeles, CA 90067*

MAY 4, 2026

52

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I hereby certify that:

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 7th Cir. R. 32(c) because it contains 11,587 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) and 7th Cir. R. 32(b) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Expanded BT font.

/s/ Kannon K. Shanmugam
KANNON K. SHANMUGAM

MAY 4, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2026, a copy of the foregoing brief was filed electronically through the Court's electronic filing system.  I further certify that all parties required to be served have been served.

/s/ Kannon K. Shanmugam
KANNON K. SHANMUGAM