CASE NO. 26-1015

# United States Court of Appeals

*for the*

# Seventh Circuit

SKYWAVE NETWORKS, LLC,

*Plaintiff-Appellant,*

– v. –

WILLIAM J. DISOMMA, *et al.*,

*Defendants-Appellees.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION,
HON. GEORGIA N. ALEXAKIS, DISTRICT COURT JUDGE,
IN CASE NO. 1:24-CV-09650

## REPLY BRIEF OF PLAINTIFF-APPELLANT
## SKYWAVE NETWORKS, LLC

**DESMARAIS LLP**
JUSTIN P.D. WILCOX
ADAM STEINMETZ
JAMIE DOHOPOLSKI
RIX RYSKAMP
1899 Pennsylvania Avenue, NW,
    Suite 400
Washington, DC 20006
(202) 451-4900
jwilcox@desmaraisllp.com
asteinmetz@desmaraisllp.com
jdohopolski@desmaraisllp.com
rryskamp@desmaraisllp.com

**DESMARAIS LLP**
STEVEN M. BALCOF
PETER KOTECKI
230 PARK AVENUE
New York, New York 10169
(212) 351-3400
sbalcof@desmaraisllp.com
pkotecki@desmaraisllp.com

*Attorneys for Plaintiff-Appellant Skywave Networks, LLC*

## TABLE OF CONTENTS

**Pages**

TABLE OF CONTENTS ....................................................................................... I

ARGUMENT ........................................................................................................1

I.   APPELLEES DO NOT DEFEND THE DISTRICT COURT'S APPLICATION
     OF INEXTRICABLE INTERTWINEMENT. ..............................................1

II.  APPELLEES' COLLATERAL ATTACK ARGUMENTS ARE
     UNAVAILING. ..............................................................................................4

     A.   No "Necessary Conflict" Exists Between FCC Licensing Decisions
          And Skywave's Claims. ........................................................................4

     B.   Skywave's RICO Claims Are Not About A "Natural Outcome" Of
          FCC Decisions. .....................................................................................7

     C.   Appellees Fail To Distinguish Skywave's Cited Cases. ......................8

          1.   *Ordower* ......................................................................................8

          2.   *Merritt* .......................................................................................10

          3.   *Americopters* ............................................................................12

     D.   Appellees' Own Cited Cases Support Skywave. ................................13

     E.   Appellees' Other Jurisdictional Arguments Are Unavailing. ..........15

     F.   The District Court Was Required To Assume All Well-Pled Facts As
          True. ....................................................................................................18

     G.   Skywave's Suggested Narrowing Instruction, Requested In The
          Alternative, Does Not Conflict With Its Claims. ..............................20

III. APPELLEES' ALTERNATIVE ARGUMENTS ARE MERITLESS. ..........21

     A.   This Court Should Not Consider Alternative Grounds That The
          District Court Never Addressed. ........................................................21

     B.   Skywave's RICO Claims Satisfy Rule 9(b). ......................................22

C.      *Cleveland* Does Not Foreclose Skywave's RICO Claims. ................................23

D.      Skywave Pled Proximate Cause. ....................................................................25

CONCLUSION ..............................................................................................................28

CERTIFICATE OF COMPLIANCE ...........................................................................30

CERTIFICATE OF SERVICE .....................................................................................31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Bird Conservancy v. F.C.C.*,
545 F.3d 1190 (9th Cir. 2008) ..................................................................2, 3, 19

*Americopters, LLC v. F.A.A.*,
441 F.3d 726 (9th Cir. 2006) ........................................................... *passim*

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) .................................................................25, 26, 27

*Arsberry v. Illinois*,
244 F.3d 558 (7th Cir. 2001) .....................................................................7

*Assure Competitive Transp., Inc. v. United States*,
629 F.2d 467 (7th Cir. 1980) .................................................................17, 18

*Beins v. United States*,
695 F.2d 591 (D.C. Cir. 1982) .................................................................2

*Bridge v. Phoenix Bond & Indemnity Co.*,
553 U.S. 639 (2008) .................................................................24, 26

*Ciminelli v. United States*,
598 U.S. 306 (2023) .................................................................24

*Cleveland v. United States*,
531 U.S. 12 (2000) .................................................................21, 23

*Corley v. Rosewood Care Ctr., Inc.*,
142 F.3d 1041 (7th Cir. 1998) .................................................................22

*Denberg v. U.S. R.R. Ret. Bd.*,
696 F.2d 1193 (7th Cir. 1983) .................................................................11, 20

*Elgin v. Dep't of Treasury*,
567 U.S. 1 (2012) .................................................................11

*Empress Casino Joliet Corp. v. Johnston*,
763 F.3d 723 (7th Cir. 2014) .................................................................27

**TABLE OF AUTHORITIES (cont'd)**

**Pages**

*FCC* v. *ITT World Commc'ns, Inc.*,
  466 U.S. 463 (1984)................................................................5, 11

*FMS, Inc. v. Volvo Const. Equip. N. Am., Inc.*,
  557 F.3d 758 (7th Cir. 2009) ...............................................21

*Folden v. United States*,
  379 F.3d 1344 (Fed. Cir. 2004) ...........................................19

*Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*,
  382 F.3d 743 (7th Cir. 2004) ...........................................19, 20

*Gaunce v. deVincentis*,
  708 F.2d 1290 (7th Cir. 1983)...........................................11, 14

*Green v. Brantley*,
  981 F.2d 514 (11th Cir. 1993) ...............................................11

*Harr v. Prudential Fed. Sav. & Loan Ass'n*,
  557 F.2d 751 (10th Cir. 1977) .................................................9

*Heiting v. United States*,
  16 F.4th 242 (7th Cir. 2021).................................................22

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010).................................................................26

*Hernandez v. Cook Cnty. Sheriff's Off.*,
  634 F.3d 906 (7th Cir. 2011) .................................................21

*Holmes v. Sec. Inv. Prot. Corp.*,
  503 U.S. 258 (1992).............................................................25

*J. I. Case Co. v. Borak*,
  377 U.S. 426 (1964)...............................................................9

*Kelly v. United States*,
  590 U.S. 391 (2020).............................................................24

*McCarthy v. Madigan*,
  503 U.S. 140 (1992).............................................................15

*Merritt v. Shuttle, Inc.,*
187 F.3d 263 (2d Cir. 1999) .......................................................................................11, 12

*Merritt v. Shuttle, Inc.,*
245 F.3d 182 (2d Cir. 2001) ..................................................................... *passim*

*Matter of Metro Two-Way, LLC,*
33 F.C.C.R. 6278 (2018) .................................................................................................17

*Oling v. Air Line Pilots Ass'n,*
346 F.2d 270 (7th Cir. 1965) .....................................................................................6, 13

*Ordower v. Off. of Thrift Supervision,*
999 F.2d 1183 (7th Cir. 1993) ..................................................................................8, 9, 10

*Otwell v. Ala. Power Co.,*
747 F.3d 1275 (11th Cir. 2014) .....................................................................................14

*Porter v. Warner Holding Co.,*
328 U.S. 395 (1946)........................................................................................................17

*Press Commc'ns LLC v. FCC,*
875 F.3d 1117 (D.C. Cir. 2017)......................................................................................17

*R.E. Davis Chem. Corp. v. Nalco Chem. Co.,*
757 F. Supp. 1499 (N.D. Ill. 1990) .................................................................................23

*Matter of Revocation of the License of Sea Island Broad. Co.,*
60 F.C.C. 2d 146 (1976) .................................................................................................17

*Roberts v. Napolitano,*
798 F. Supp. 2d 7 (D.D.C. 2011)......................................................................................2

*Ross v. Blake,*
578 U.S. 632 (2016)........................................................................................................15

*Rural Cellular Association v. FCC,*
588 F.3d 1095 (D.C. Cir. 2009)......................................................................................17

*RWB Servs., LLC v. Hartford Comp. Grp., Inc.,*
539 F.3d 681 (7th Cir. 2008) .........................................................................................28

**TABLE OF AUTHORITIES (cont'd)**

**Pages**

*Sandwich Isles Commc'ns, Inc. v. Nat'l Exch. Carrier Ass'n,*
   799 F. Supp. 2d 44 (D.D.C. 2011) .................................................................6, 7

*Sedima v. Imrex Co.,*
   473 U.S. 479 (1985) ................................................................................10, 16

*Self v. Bellsouth Mobility, Inc.,*
   700 F.3d 453 (11th Cir. 2012) .........................................................................4, 5

*Silverman v. Commodity Futures Trading Comm'n,*
   549 F.2d 28 (7th Cir. 1977) ..............................................................................15

*St. John's United Church of Christ v. City of Chicago,*
   502 F.3d 616 (7th Cir. 2007) ..........................................................................3, 4

*Stoddard v. Chambers,*
   43 U.S. 284 (1844) ..........................................................................................17

*Toulabi v. United States,*
   875 F.2d 122 (7th Cir. 1989) ............................................................................24

*Turtle Island Restoration Network v. U.S. Dep't of Com.,*
   438 F.3d 937 (9th Cir. 2006) ..............................................................................5

*United States v. Griffin,*
   76 F.4th 724 (7th Cir. 2023) .............................................................................25

*United States v. Kato,*
   878 F.2d 267 (9th Cir. 1989) .......................................................................23, 24

*United States v. Schwartz,*
   924 F.2d 410 (2d Cir. 1991) ..............................................................................23

*Venner v. Michigan Cent. R. Co.,*
   271 U.S. 127 (1926) ............................................................................................5

*Virginia Bankshares, Inc. v. Sandberg,*
   501 U.S. 1083 (1991) ..........................................................................................9

*Whitney Nat. Bank in Jefferson Par. v. Bank of New Orleans & Tr. Co.,*
   379 U.S. 411 (1965) ............................................................................................4

**TABLE OF AUTHORITIES (cont'd)**

**Pages**

*Woodrum* v. *S. Ry. Co.*,
750 F.2d 876 (11th Cir. 1985) ................................................................18

*Wyatt v. Cole*,
504 U.S. 158 (1992) ................................................................................14

**Statutes**

18 U.S.C. § 1343 ................................................................................24

18 U.S.C. § 1964(c) ...........................................................................10, 16

**Other Authorities**

Federal Rule of Appellate Procedure 9(b) .........................................21, 22

Federal Rule of Appellate Procedure 12(b)(6) ..................................21

Federal Rule of Appellate Procedure 32(a)(5) ..................................30

Federal Rule of Appellate Procedure 32(a)(6) ..................................30

Federal Rule of Appellate Procedure 32(a)(7)(B) .............................30

Federal Rule of Appellate Procedure 32(b) .......................................30

Federal Rule of Appellate Procedure 32(c) ........................................30

Federal Rule of Appellate Procedure 32(f) .........................................30

Federal Rule of Appellate Procedure 59 .............................................21, 22

Federal Rule of Appellate Procedure 60(b) ........................................18

**ARGUMENT**

Appellees' Response Brief ("Response" or "Resp.") fails to defend the District Court's dismissal of Skywave's claims because: (I) it does not address the inextricable intertwinement doctrine that the District Court applied; (II) the factors Appellees rely on, such as "necessarily conflicts" and "natural outcome," support Skywave; and (III) Appellees' alternative arguments—not reached by the District Court—are unsupported.

## I.    APPELLEES DO NOT DEFEND THE DISTRICT COURT'S APPLICATION OF INEXTRICABLE INTERTWINEMENT.

The District Court dismissed Skywave's claims, concluding that "[Skywave's] complaint is 'inescapably intertwined' with its challenges to the FCC's licensing decisions." Appx0010. Skywave devoted a substantial portion of its Brief to explaining why the District Court erred in concluding that it did not have jurisdiction over Skywave's claims under the inextricable intertwinement doctrine.[1] Skywave's Brief ("Br."), Section III. Yet, Appellees surprisingly fail even to mention the term "intertwinement" in their Response, much less defend the District Court's reliance on that doctrine to dismiss Skywave's RICO claims. Resp. 17-41. In fact, Appellees appear to argue that the inextricable intertwinement doctrine does not apply here at all. They argue that whether Skywave's RICO claims are a collateral attack on the FCC's orders "does not turn on whether, as a formal matter, the lawsuit raises claims within the

---

[1] The doctrine is sometimes referred to as inescapable intertwinement.

1

agency's jurisdiction, seeks relief that the agency could award, or names parties within the agency's regulatory authority." Resp. 31.

But the intertwinement inquiry considers multiple factors, including whether a plaintiff was injured by the agency, the relief sought, the jurisdiction of the agency and the court that hears its appeals, and whether the district court action is an end-run around the agency decision. Br. 31-32. The relief sought is a critical consideration under the inextricable intertwinement doctrine. *Americopters, LLC v. F.A.A.*, 441 F.3d 726, 735-37 (9th Cir. 2006) (district court has jurisdiction over a damages claim); *Roberts v. Napolitano*, 798 F. Supp. 2d 7, 11 (D.D.C. 2011) ("a 'critical point' is whether review of the order by a court of appeals would allow for adjudication of the plaintiff's claims and could result in the relief that the plaintiff requests"); *Beins v. United States*, 695 F.2d 591, 597-98 & n.11 (D.C. Cir. 1982) ("an appeal under the APA will not provide any remedy in damages"); *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187-88, 192 (2d Cir. 2001); *American Bird Conservancy v. F.C.C.*, 545 F.3d 1190, 1192-95 (9th Cir. 2008). Likewise, the agency's jurisdiction is a critical consideration of the inquiry. *Merritt*, 245 F.3d at 187-92. Although Appellees insist that the Court need only consider the "'gravamen' of Skywave's lawsuit," which Appellees assert is about radio spectrum licensing decisions, Resp. 37, the law is more nuanced than Appellees' simplistic theme. Courts apply the ***specific inquiries*** discussed above to assess what the "gravamen" is. *See* Br. 31-32.

Here, the inextricable intertwinement factors make clear that Skywave's RICO claims are not a collateral attack on the FCC's decision to grant 10Band experimental licenses: (1) the FCC lacks jurisdiction to adjudicate Skywave's RICO claims against Appellees (Br. 27-31); (2) Skywave's claims do not attack or put the FCC's licensing decisions at issue (Br. 36); (3) the FCC has never addressed or ruled on Skywave's claims (Br. 39); (4) Skywave's claims focus on its economic injuries caused by Appellees' misconduct—not the FCC (Br. 40-41); and (5) Skywave does not challenge that 10Band may use its licenses for their approved experimental purposes (Br. 41).

Further, Appellees never address Skywave's arguments that distinguish its RICO claims and the circumstances of this case from key inextricable intertwinement case law relied upon by the District Court. Appx0009-11 (relying on *American Bird*, 545 F.3d 1190), Appx0012 (relying on *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616 (7th Cir. 2007)).[2] For example, Skywave distinguishes *American Bird* because the plaintiff there ***directly sued the FCC*** for ***the same relief*** available through the standard appeal process, while here Skywave sued private entities for relief the FCC cannot grant. Br. 33-34. Similarly, in *St. John's*, the court considered "whether a plaintiff's district court claims allege injury ***by*** an agency," but here Skywave alleges that private parties—not the FCC— caused its injury. Br. 40-41 (citing *St. John's*, 401 F. Supp. 2d at 902). Appellees further

---

[2] Appellees' Response mentions *American Bird* only in vague assertions about "artful pleading" without addressing its substance. Resp. 29, 40. And *St. John's* does not appear in Appellees' Response.

3

fail to address other inextricable intertwinement cases Skywave cites. *See, e.g.*, Br. 32, 36-37.

In short, the District Court erred in finding inextricable intertwinement here because Skywave has not tried an "end-run" around a special review statute through its RICO claims. Br. 32 (citing *Americopters*, 441 F.3d at 736).

## II.    APPELLEES' COLLATERAL ATTACK ARGUMENTS ARE UNAVAILING.

Appellees attempt to side-step the District Court's inextricable intertwinement analysis, arguing that Skywave's RICO claims are a collateral attack on an FCC decision because they "'necessarily conflict with final orders of the FCC and thereby depend on the district court being able to collaterally review the correctness or validity of those orders.'" Resp. 20 (citing *Self v. Bellsouth Mobility, Inc.*, 700 F.3d 453, 462 (11th Cir. 2012)). But the collateral attack doctrine applies only when a plaintiff directly "seek[s] collateral review of [agency orders] by filing claims in the district court." *Self*, 700 F.3d at 462.

That is not the case, here. Skywave: (1) did not sue the FCC; (2) does not seek district court review of an FCC order; and (3) does not seek to enjoin an FCC order or conduct the FCC authorized. *See* Br. 31-37.

### A.    No "Necessary Conflict" Exists Between FCC Licensing Decisions And Skywave's Claims.

Appellees contend that Skywave's claims necessarily conflict with FCC licensing decisions, relying on cases where plaintiffs sought to enjoin an agency's order or activities it specifically authorized. Resp. 17-18; *Whitney Nat. Bank in Jefferson Par. v. Bank of New*

*Orleans & Tr. Co.*, 379 U.S. 411, 413-14 (1965) (seeking to enjoin agency from issuing order); *FCC* v. *ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 & n.5 (1984) (seeking to enjoin agency action).  Unlike the plaintiffs in those cases, Skywave does not seek to undo or alter the FCC's licensing decisions regarding 10Band.

Here, no necessary conflict exists because Skywave's claims focus on conduct the FCC **specifically prohibited**, namely unauthorized commercial trading using 10Band's experimental licenses.  Br. 6-9; D.I. 90-109 at 24 (10Band FCC license: "This operation is not permitted for market trial or stock trading").  Skywave's claims focus on Appellees' **misuse** of 10Band's licenses for unauthorized trading, which is the conduct Skywave's requested injunction seeks to enjoin.  Br. 16.

Appellees appear to argue they stand in the shoes of the FCC license holder, 10Band, such that their misuse of 10Band's licenses can be challenged only in the FCC. But they cite no case law that addresses this scenario, in which third parties co-opt and misuse a license or authorization granted by an agency.  Rather, in Appellees' cited cases, courts found "necessary conflicts" when plaintiffs challenged conduct specifically authorized by an agency.  *See Venner v. Michigan Cent. R. Co.*, 271 U.S. 127, 130 (1926) (requesting that defendant "be enjoined from doing what the order specifically authorizes"); *Self*, 700 F.3d at 462 (action to stop phone carrier from charging fees that an FCC order authorized); *Turtle Island Restoration Network v. U.S. Dep't of Com.*, 438 F.3d 937, 939 (9th Cir. 2006) (seeking to enjoin the opening of an agency-authorized business).

The *Sandwich Isles* case—which Appellees cite—illustrates how this case differs from situations where a necessary conflict exists. *Sandwich Isles Commc'ns, Inc. v. Nat'l Exch. Carrier Ass'n*, 799 F. Supp. 2d 44 (D.D.C. 2011). There, "plaintiffs [we]re asking th[e] Court to order [defendant] to do one thing, [and] the FCC … ha[d] already ***ordered it to do something else***." *Id.* at 50. No such conflicting orders are present here—the FCC has not "ordered" Appellees to conduct commercial trading; it has prohibited it. Br. 7-8. And mere overlapping facts between district court claims and agency decisions do not bar jurisdiction. *E.g.*, Br. 19, 31.

Appellees cite *NextWave* for the proposition that the FCC has exclusive jurisdiction over radio licenses. Resp. 19 (citing *In re NextWave Pers. Commcn's, Inc.*, 200 F.3d 43, 54 (2d Cir. 1999)). But *NextWave* did not hold that cases involving spectrum licenses cannot be heard in a district court. It narrowly held that a district court cannot stop the FCC from revoking a license. *NextWave*, 200 F.3d at 54. Here, Skywave is ***not*** asking the District Court to mandate that the FCC take ***any*** licensing action.

Appellees also argue that a necessary conflict arises because Skywave should have pursued administrative remedies. Resp. 18 (citing *Oling v. Air Line Pilots Ass'n*, 346 F.2d 270, 275-76 (7th Cir. 1965)). But, as that court explained, it is "important" to "compar[e] the two actions['] [] request[s] for relief" to determine the "heart" of the contention and whether administrative review is appropriate. *Oling*, 346 F.2d at 278. Comparing Skywave's requested RICO damages with the available administrative remedy—license

6

revocation—demonstrates that the "hearts" of the two remedies are different. *See id.* Moreover, Appellees fail to show that the FCC would have jurisdiction to address their unlawful conduct or provide the economic relief sought by Skywave's claims. *See, e.g.*, *Arsberry v. Illinois*, 244 F.3d 558, 563-64 (7th Cir. 2001) (holding no FCC jurisdiction where the "FCC has no authority to approve a collusive arrangement").

Appellees further argue that the District Court "could not endorse [Skywave's] position without 'call[ing] into question the validity' of 10Band's licenses." Resp. 19-20 (citing *Sandwich Isles*, 799 F. Supp. 2d at 51; Appx0007). But Skywave's claims do not turn on whether 10Band's licenses are valid. They focus on Appellees'—not 10Band's—misconduct, including submitting false affidavits to the FCC and unlawfully trading using 10Band's licenses. The Court should not adopt Appellees' flawed logic that would shield racketeering activity from judicial RICO jurisdiction any time it involves agency licenses or authorizations. Br. 28-29.

**B.    Skywave's RICO Claims Are Not About A "Natural Outcome" Of FCC Decisions.**

Appellees insist that Skywave's RICO complaint targets a "natural outcome" of the FCC's licensing decisions, Resp. 18-21, but the challenged activity—misusing experimental licenses for commercial trading—is ***not*** a natural outcome of the issuance of those licenses; it is a specifically prohibited activity. Br. 7-8. Appellees cite no case to support that misusing a license could *ever* be considered the natural outcome of those licenses or of an agency order.

7

Appellees rely on *Ordower*, arguing that Skywave seeks to "'enjoin [and] penalize action … that is the natural outcome'" of FCC licensing decisions because the "'natural outcome' of those choices by the FCC is that 10Band continues to use its Part 5 licenses for radio transmissions."  Resp. 21 (quoting *Ordower v. Off. of Thrift Supervision*, 999 F.2d 1183, 1188 (7th Cir. 1993)).  But Appellees omit a critical phrase—underlined below—in the full *Ordower* quote:

> When Congress places review of an administrative decision in the court of appeals, district judges may not *enjoin or penalize action <u>that the agency has approved or</u> that is the natural outcome* of the agency's decision.

*Ordower*, 999 F.2d at 1188.  Here, the FCC never "approved" *Appellees'* use of 10Band's experimental licenses for commercial trading, which are the acts that Skywave challenges.  Although Appellees try to pass off commercial trading as approved "radio transmissions," Resp. 21, that assertion goes to the merits of Skywave's claims, not the jurisdictional question in this appeal.

### C.    Appellees Fail To Distinguish Skywave's Cited Cases.

Among the many cases that support Skywave's position, *Ordower, Merritt,* and *Americopters* are critical.  Appellees fail to distinguish them.

#### 1.    *Ordower*

The Seventh Circuit held that the district court had jurisdiction over one of the plaintiff's claims directed to fraudulent actions that an association took *after* the agency approved a conversion.  *Ordower*, 999 F.2d at 1188.  In vacating the dismissal of that claim,

this Court recognized the limitations of the agency's investigations and enforcement—it did not review or remedy conduct downstream of its approval process. *Id.* Those same agency limitations support exercise of jurisdiction here. The FCC cannot explore Appellees' later misuse of 10Band's experimental licenses or award damages to remedy injury from that misuse; the District Court can.

Appellees take an unduly restrictive view of the *Ordower* holding, including focusing on the distinction between the nature of the different causes of action— "valuation claim" versus "proxy fraud claim." Resp. 22. Appellees borrow language from *Ordower* to suggest that, here, the FCC somehow "passed upon the merits" of Appellees' misuse of 10Band's licenses. Resp. 22-23. But, given that the misuse happened *after* the FCC's grant decisions, the FCC never could have evaluated that misuse.

*Ordower* demonstrates that courts retain jurisdiction over claims that could not be heard on appeal from an agency order, such as private rights of action or claims involving misrepresentation. *Ordower*, 999 F.2d at 1188. For example, when explaining that "[d]efects in the[] [proxy] materials may be challenged in a district court even though the court of appeals is the exclusive forum for review of the SEC's decisions," the *Ordower* court cited three cases, all predicated on private rights of action under securities laws over which courts have jurisdiction. *Id.*; *see also Harr v. Prudential Fed. Sav. & Loan Ass'n*, 557 F.2d 751, 752-53 (10th Cir. 1977) (applying "private remedies"); *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964) (applying implied private right of action); *Virginia Bankshares, Inc.*

9

*v. Sandberg*, 501 U.S. 1083, 1085 (1991) (applying implied private action). Given that jurisdiction existed in those cases even for implied rights of action, it certainly exists here for the explicit statutory right of action under RICO. 18 U.S.C. § 1964(c).

Appellees essentially argue that the FCC's initial licensing decisions should have insulated Appellees' subsequent downstream conduct—precisely the proposition *Ordower* foreclosed. The fact that Appellees' fraudulent conduct was effective enough to result in granted or renewed FCC licenses should not preclude Skywave's ability under RICO to "fill prosecutorial gaps" left by the FCC's investigative limitations. *Sedima v. Imrex Co.*, 473 U.S. 479, 493 (1985). And, as *Ordower* demonstrated, claims involving misrepresentations by private parties (like Skywave's RICO claims) need not be treated like claims that seek review of agency orders (which Skywave does not seek).

### 2.    *Merritt*

The Second Circuit held that "mere overlap" of evidence and facts between agency and court proceedings is "insufficient to preclude the district court from hearing a given claim." *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 188-89 (2d Cir. 2001). Here, although minor factual overlap exists between the FCC's grant of 10Band's Experimental Licenses and Skywave's RICO claims, such minimal overlap cannot bar jurisdiction. *Id.*

Appellees misinterpret *Merritt*, arguing that the court upheld subject matter jurisdiction "because the suit did not challenge 'whether the suspension or revocation of [the] pilot's certificate was warranted,' but only whether the FAA employees were liable

10

in damages for contributing to the accident." Resp. 34 (quoting *Merritt*, 245 F.3d at 190). But, again, Appellees omit critical context: the plaintiff in *Merritt* **could not** have raised tort claims on appeal from the agency order because "the ***entire focus*** of such review proceedings [was] whether the suspension or revocation of a pilot's certificate was warranted." *Merritt*, 245 F.3d at 190. Likewise here, Skywave cannot bring RICO claims in FCC proceedings where the "entire focus" is whether to suspend licenses.[3] *Id.*

Appellees also attempt to distinguish *Merritt* on the basis that an earlier claim brought by the plaintiff had been dismissed for lack of jurisdiction. Resp. 35 (discussing *Merritt v. Shuttle, Inc.*, 187 F.3d 263 (2d Cir. 1999)). But, like many of Appellees' cases,[4] that earlier claim involved a constitutional challenge to the agency process. 187 F.3d at 266, 270 (explaining that in *Green v. Brantley*, 981 F.2d 514 (11th Cir. 1993), plaintiff's challenge to "***the procedures and reasons behind the agency action that aggrieved him*** … w[as] 'inescapably intertwined'" with the agency order). Here, Skywave challenges neither the FCC's orders nor its procedures. Skywave also does not seek to have the

---

[3] Appellees' counter-factual analogy, Resp. 34-35, fails for the same reason—it rests on the false premise that *Merritt* did not consider whether claims could have been brought on appeal. But that is exactly what the court considered. *Merritt*, 245 F.3d at 190.

[4] Many of Appellees' cases are inapposite because they involve claims seeking to review an agency action that are combined with constitutional claims surrounding the agency process. *E.g.*, *ITT World*, 466 U.S. at 468 (suit to "enjoin FCC action as ultra vires"); *Gaunce v. deVincentis*, 708 F.2d 1290, 1291 (7th Cir. 1983) (suit to renew license, alleging that FAA processes did not comport with due process); *Denberg v. U.S. R.R. Ret. Bd.*, 696 F.2d 1193, 1194 (7th Cir. 1983) (suit to appeal agency action, challenging constitutionality). Unlike Skywave's RICO claims, appellate courts may address constitutional claims in connection with appeals of agency decisions. *E.g.*, *Elgin v. Dep't of Treasury*, 567 U.S. 1, 10 (2012).

11

substance of those orders altered—*i.e.*, 10Band can continue to use its licenses for experimental purposes.

Ultimately, the history of the *Merritt* cases supports Skywave.  The earlier claim was dismissed as an end-run around an appeal from an agency order that should have been addressed by the court of appeals.  *Merritt*, 187 F.3d at 270.  But later, although the *same plaintiff* brought a tort claim for damages surrounding the *same facts* and the *same agency order*, the district court retained jurisdiction because the plaintiff "could not raise his [tort] claim in an appeal of the order."  *Merritt*, 245 F.3d at 190.  That distinction is on point—Skywave *cannot* raise its RICO claims in any appeal from any FCC order.

### 3.     *Americopters*

In *Americopters*, the Ninth Circuit distinguished different categories of claims—those seeking rescission of agency orders versus those seeking damages from the agency.  *Americopters*, 441 F.3d at 735-38.  Although administrative proceedings had already been held about the facts underlying the damages claims, there were "no previous agency determinations on the merits" of those claims, and nothing "with which [those damages claims] could be intertwined."  *Id.*

The same is true here.  Although the FCC decided to grant and renew some of 10Band's licenses, such decisions about eligibility do not, as Appellees suggest, Resp. 23, equate to agency determinations about the merits of Skywave's RICO claims.  Br. 39.

12

Appellees fail to distinguish *Americopters*; they only partially address that court's decision, focusing on the fact that no FAA order was "in place" when the court heard the case. Resp. 36. But the *Americopters* court explained that "[b]ecause there [wa]s no pending FAA order ***and because there were no previous agency determinations on the merits***, no foundation supports the notion of 'intertwining.'" *Americopters*, 441 F.3d at 738. Similarly, here, the FCC has made no decisions addressing Skywave's RICO claims, as even Appellees admit. Resp. 35 ("the FCC has yet to specifically review and reject Skywave's fraud allegations").

## D.    Appellees' Own Cited Cases Support Skywave.

Appellees rely on the Seventh Circuit's decision in *Oling*, which found jurisdiction lacking because "[a]t its '***heart***,' the plaintiffs' complaint 'rest[ed] on the premise' that the agreement approved by the CAB was invalid." Resp. 32 (quoting *Oling*, 346 F.2d at 278). But, *Oling* made clear that the requested relief was critical: "Even more important in comparing the two actions is the ***request for relief***." *Oling*, 346 F.2d at 278 ("It can hardly be doubted but that the heart of plaintiffs' contention before the Board, as well as in its complaint, is their request for relief from … [the agency order]."). In *Oling*, the plaintiff requested relief only from the agency's order, whereas here Skywave made no allegation that any FCC decision is invalid—only that Appellees misused 10Band's licenses for commercial purposes. Br. 41.

13

Appellees also rely on *Gaunce*, where a pilot's claim was dismissed because she sought review of the revocation of her FAA license over which the district court lacked jurisdiction. 708 F.2d 1290. Appellees focus on the fact that *Gaunce* involved a "lawsuit [that] sought money damages against FAA employees, which the FAA had no power to award, for constitutional claims, which the FAA could not hear." Resp. 33. But the court did not consider money damages because "F.A.A.[] employees[] are immune from a monetary damages claim." *Gaunce*, 708 F.2d at 1291. The circumstances here are different: Skywave seeks RICO damages against ***private parties*** who committed acts of fraud and are not immune. *See, e.g.*, *Wyatt v. Cole*, 504 U.S. 158, 168 (1992) (certain immunities available to government employees are not available to private defendants).

Another case on which Appellees rely is *Otwell*, Resp. 38-39, which is also inapplicable. There, the plaintiff "explicitly requested an injunction requiring" what the agency had already "expressly considered and rejected." *Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1282 (11th Cir. 2014). The court explained that "Appellants are attempting to obtain the same results and to place the same constraints on [defendant] rejected by the agency." *Id.* Here, by contrast, Skywave does not seek a result that the FCC previously rejected. First, Skywave did not—and could not—seek relief against Appellees in the FCC because they are not the license holder; 10Band is. Second, the FCC never considered or rejected Skywave's RICO claims. And, third, Skywave does not seek an injunction against 10Band or to have its licenses revoked in the District Court.

14

### E.     Appellees' Other Jurisdictional Arguments Are Unavailing.

Appellees make numerous other disjointed arguments, many of which are irrelevant to the jurisdictional question at issue, and none of which support the District Court's decision.

1.     Appellees incorrectly suggest that Skywave "short-circuited" administrative exhaustion requirements.  Resp. 37; *see also* Resp. 32 n.4 (citing *Ross v. Blake*, 578 U.S. 632, 639 (2016)).  But under well-established case law, a plaintiff "***need not exhaust remedies if they are not available***."  *Ross*, 578 U.S. at 636 (quotation omitted); *see also McCarthy v. Madigan*, 503 U.S. 140, 147-48 (1992) (exhaustion not required when agency "lack[s] authority to grant the type of relief requested").  Appellees try to distinguish that case law as limited to "a constitutional implied right of action that was not subject to a statutory scheme requiring administrative exhaustion."  Resp. 32 n.4.  But RICO claims have an ***explicit*** right of action and are "not subject to a statutory scheme requiring administrative exhaustion."  *See id.*  Further, Appellees fail to identify any FCC process for Skywave to exhaust that would involve the type of factfinding necessary to "untangl[e] [Appellees'] web of shell companies, many confidential FCC filings, and a global network of communications infrastructure," especially because pretrial discovery is not guaranteed in administrative proceedings.  Br. 29 (quoting *Silverman v. Commodity Futures Trading Comm'n*, 549 F.2d 28, 33 (7th Cir. 1977)).

2.      Appellees argue that the renewals of 10Band's licenses somehow evidences the FCC's assent to the misuse of those licenses. Resp. 21. But the FCC's failure to catch Appellees' fraud does not alter the District Court's jurisdiction over RICO claims to remedy that fraud. If anything, it supports jurisdiction because Section 1964(c) of the RICO statute is designed as an incentive to "fill prosecutorial gaps." *Sedima*, 473 U.S. at 493. That incentive is particularly appropriate here because Appellees employed a complex racketeering deception with shell companies and hidden cables that Skywave had to investigate. Br. 9-12, 24-26. Although Appellees suggest that Skywave is attacking 10Band as an "affiliate" after amending the complaint to remove 10Band as a party, Resp. 31 n.3, Skywave removed 10Band as a party because, *despite* the fact that 10Band might be an affiliate, Skywave does not object to 10Band's lawful use of its experimental licenses for experimental purposes.[5]

3.      Appellees raise Skywave's 2023 petition. Resp. 27. But that petition did *not* "present[] 'in essence' the 'same' arguments" as Skywave's RICO claims, nor request the same relief. *See* Resp. 27. The 2023 petition did not request that the FCC take any action against Appellees, and it did not seek the relief requested in the present case—which is not available in the FCC. Br. 36.

---

[5] Skywave included the term "affiliates" to preclude Appellees from evading the District Court's reach by creating shell companies to conceal illegal activities, *see* Br. 12 Fig.3, which could render futile an injunction against the named defendants.

16

4.      Appellees' argument about deference to agency decisions is unavailing. Resp. 18, 25 (citing *Press Commc'ns LLC* v. *FCC*, 875 F.3d 1117, 1121 (D.C. Cir. 2017); *Rural Cellular Association* v. *FCC*, 588 F.3d 1095, 1105-07 (D.C. Cir. 2009)). The level of deference given to an agency by appellate courts is not at issue here. Moreover, *Press Communications* was not about subject matter jurisdiction.[6]

5.      Appellees argue that Skywave's fraud claims should be addressed by the FCC under its "exclusive jurisdiction to suspend or revoke 10Band's licenses." Resp. 24; *see also id.* 35 (arguing that the FCC "has yet to specifically review and reject Skywave's fraud allegations"). However, that argument underscores Skywave's argument: the ***only*** remedy available through the FCC is to "suspend or revoke" licenses, which is relief not sought in this case. The FCC cannot grant damages, nor adjudicate RICO claims. Merely stopping future illegal behavior is insufficient because "[f]uture compliance may be more definitely assured if one is compelled to restore one's illegal gains …." *Porter v. Warner Holding Co.*, 328 U.S. 395, 400 (1946).

6.      Appellees cite *Assure Competitive*, arguing that the "Communications Act[] 'cuts off the jurisdiction … under a more general statute' (such as RICO)." Resp. 29 (citing *Assure Competitive Transp., Inc. v. United States*, 629 F.2d 467, 471 (7th Cir. 1980)). That

---

[6] Appellees cite other irrelevant cases for minor propositions, including *Stoddard v. Chambers*, 43 U.S. 284, 318 (1844) ("[F]raud vitiates all transactions."); *Matter of Revocation of the License of Sea Island Broad. Co.*, 60 F.C.C. 2d 146, 157 (1976) (discussing license revocation); *Matter of Metro Two-Way, LLC*, 33 F.C.C.R. 6278, 6282-84 (2018) (similar).

argument assumes—without basis—that RICO is a "more general" statute. And *Assure Competitive* concerned a challenge to the authority and jurisdiction of the FCC to issue orders, 629 F.2d at 469, a challenge Skywave is not making here.

7.      Appellees argue that Skywave should have brought its claims earlier. Resp. 37. But the tools Skywave needed to discover the harm were not available earlier, and Appellees went to great lengths to conceal their activities—*e.g.*, by refusing to broadcast identification signals that would allow their transmissions to be monitored. Br. 9-12.

8.      Appellees argue that the absence of an FCC order addressing Skywave's claims is a "litigation choice[]" used to "bootstrap" its suit. Resp. 37 (citing *Woodrum* v. *S. Ry. Co.*, 750 F.2d 876, 883 (11th Cir. 1985)). But the FCC does not have authority to adjudicate RICO claims, and Skywave has a right to pursue those claims under the RICO statute. Appellees quote the *Woodrum* case out of context; there the court reasoned that "*[r]ule 60(b) cannot be used* … to bootstrap the district court into jurisdiction." *Woodrum*, 750 F.2d at 883. This case is not about Rule 60(b) relief from final judgment, and Appellees' "bootstrap[ping]" quote from *Woodrum* is inapplicable.

In sum, none of Appellees' arguments supports the District Court's dismissal of Skywave's RICO complaint.

**F.      The District Court Was Required To Assume All Well-Pled Facts As True.**

Appellees assert that the District Court was not required to take Skywave's well-pled facts as true because the court need only consider the "true nature" and "gravamen"

18

of the complaint, and whether it contained "artful pleading." Resp. 39-40. Contrary to Appellees' assertion—unsupported by the cases they cite—a court "must accept the complaint's well-pleaded factual allegations as true and must draw all reasonable inferences from those allegations in plaintiffs' favor." *Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 382 F.3d 743, 751 (7th Cir. 2004). At least four flaws exist in Appellees' argument.

*First*, Appellees argue that a court need not "accept a plaintiff's characterization of its own complaint; if it did, a plaintiff could always avoid raising a collateral attack 'through artful pleading.'" Resp. 39-40 (quoting *American Bird*, 545 F.3d at 1194). In *American Bird*, the court found "artful pleading" in the plaintiff's attempt to create jurisdiction by simply *rephrasing* its request to review an agency order as a challenge to the agency's "failure to act." *American Bird*, 545 F.3d at 1193. But the court never suggested that well-pled facts need not be taken as true when assessing *whether* a claim contains "artful pleading." *Id.* Here, Skywave did not use creative phrasing to disguise a request for review of an agency order; its RICO claim is an independent cause of action.

Appellees make a similar argument about *Folden*. Resp. 40 (*Folden v. United States*, 379 F.3d 1344, 1359 n.13 (Fed. Cir. 2004)). But nothing in the footnote Appellees cite from *Folden* suggests suspending the requirement for courts to accept well-pled facts as true. *Folden* simply explains the unremarkable proposition that courts must "look to the true nature of plaintiffs' claim." *Folden*, 379 F.3d at 1359 n.13.

19

*Second*, Appellees suggest that Skywave expected the District Court to accept its conclusions.  Resp. 40.  Not true.  Skywave objects to the District Court's use of unreasonable inferences, such as "implicit" FCC licensing determinations.  Br. 44; *Milwaukee's Rivers*, 382 F.3d at 751 (at the pleadings stage, courts "must draw all reasonable inferences from those allegations in plaintiffs' favor").  Further, the law provides tests to evaluate inextricable intertwinement without making unwarranted inferences.  *Supra*, Section I.  For example, no inference is needed to determine the relief requested or whether the agency is a party.

*Third*, Appellees rely on *Denberg* to suggest that accepting Skywave's well-pled facts as true would create "ambiguity" about Skywave's complaint.  Resp. 40; *Denberg*, 696 F.2d at 1197.  But *Denberg* is not applicable because it was a constitutional challenge to the agency process.  *Id.*; *supra*, note 4.  Additionally, Appellees cite it for an out-of-context quote about ambiguity, but that court expressly found "no ambiguity."  *Id.*

*Finally*, Skywave is not, as Appellees suggest, requesting "a tiebreaker in the opposite direction."  Resp. 40.  Skywave merely requests that well-pled facts be accepted as true.

### G.　Skywave's Suggested Narrowing Instruction, Requested In The Alternative, Does Not Conflict With Its Claims.

Appellees argue that Skywave's alternative instruction would leave it "without a case" because "'[w]ithout questioning the licenses' validity as a byproduct of fraud, and therefore challenging the FCC's actions, Skywave has no legal claim."  Resp. 41 (quoting

Appx0008).  But Appellees conflate the distinction between 10Band's proper use of its licenses and Appellees' misuse of 10Band's licenses.  *See* Br. 53 (explaining that the District Court could have given an instruction that "Skywave will not be permitted to argue that the FCC *failed to abide by federal law* when it granted 10Band's Experimental Licenses or that *10Band directly misuses* its Experimental Licenses").  Skywave's case can proceed under its theory that the FCC abided by federal law even though it was deceived by Appellees' fraud.

## III.    APPELLEES' ALTERNATIVE ARGUMENTS ARE MERITLESS.

### A.    This Court Should Not Consider Alternative Grounds That The District Court Never Addressed.

The District Court did not reach Appellees' Rule 12(b)(6) motion, and thus never addressed their three theories: (1) Rule 9(b); (2) *Cleveland*; and (3) proximate cause.  Resp. 42-51; Appx0002-13.  Appellees present those theories as alternative grounds for affirmance, but this Court generally does not "adjudicate those issues which have not been addressed by the district court."  *Hernandez v. Cook Cnty. Sheriff's Off.*, 634 F.3d 906, 916-17 (7th Cir. 2011); *see also FMS, Inc. v. Volvo Const. Equip. N. Am., Inc.*, 557 F.3d 758, 763 (7th Cir. 2009).

None of Appellees' cited cases support their request that this Court consider issues in the first instance.  In *Boyd v. Illinois State Police*, the district court had denied a Rule 59 motion without providing its rationale.  384 F.3d 888, 897-98 (7th Cir. 2004).  The Seventh Circuit affirmed without remanding for that rationale because the claim presented a

straightforward legal question, *id.*, but the court did ***not*** rule on a separate issue.  And in *Beach Forwarders, Inc. v. Service By Air, Inc.*, the Seventh Circuit affirmed a district court's interpretation of a terminated contract at the pleadings stage, but did not consider alternative grounds.  76 F.4th 610, 611-16 (7th Cir. 2023); *see also Heiting v. United States*, 16 F.4th 242, 248 (7th Cir. 2021) (declining to "consider the government's alternative argument").  Accordingly, the Court should decline to consider Appellees' alternative grounds arguments.

### B.    Skywave's RICO Claims Satisfy Rule 9(b).

As required under Rule 9(b), Skywave's RICO claims describe the "what, when, where, and how" of Appellees' Commercial Trade predicate acts.  Based on its analysis of hundreds of public documents, Skywave described in detail Appellees' RICO scheme, including mapping their worldwide "Commercial Trading network." *See, e.g.*, D.I. 90 ¶52 Fig.1, ¶86 Fig.3, ¶¶143-49.  Thus, Skywave alleged "the circumstances constituting fraud" with "particularity." *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1050 (7th Cir. 1998).

Although Appellees criticize Skywave for not knowing all details about their unlawful conduct, they hid their activities behind shell companies and confidential filings.  D.I. 90 ¶¶53-63,86-93,105.  Rule 9(b)'s "particularity" requirement "must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim, and that is most likely to be the case where, as here, the plaintiff alleges a fraud against one or more third parties." *Corley*, 142 F.3d at 1051.

22

### C.     *Cleveland* Does Not Foreclose Skywave's RICO Claims.

The Supreme Court in *Cleveland v. United States*, 531 U.S. 12 (2000), did not, as Appellees argue, Resp. 15-16, 42-44, categorically foreclose every fraud claim that involves licenses granted by an agency.  Here, Skywave properly pled that Appellees' fraudulent FCC filings were predicate acts of wire fraud under RICO.[7]

In *Cleveland*, the Supreme Court established that "the object of the fraud" must be "property in the hands of the victim," and a government regulator cannot be the victim because it lacks a property interest in a license before it issues.  *Cleveland*, 531 U.S. at 26-27.  Here, unlike *Cleveland*, the object of Appellees' fraud is ***not*** the 10Band licenses; it is Appellees' monetary gains from the fraudulent scheme that resulted in Skywave's economic injury.  The victim is not the FCC; it is Skywave.  Thus, it is irrelevant whether the FCC lacked a property interest in 10Band's Experimental Licenses, and *Cleveland* is inapposite.[8]

---

[7] Appellees are incorrect that Skywave pled a "sole RICO predicate" or that Skywave's RICO theories are "wholly derivative" of each other.  *See* Resp. 9, 44-45.  Each fraudulent FCC filing and unlawful Commercial Trade "constitutes a separate violation of the … wire fraud statute[] and thus a separate predicate act for purposes of the racketeering statute."  *See R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499, 1513 (N.D. Ill. 1990).

[8] Neither *Schwartz* nor *Kato* offers more support for Appellees' position.  *United States v. Schwartz*, 924 F.2d 410, 417 (2d Cir. 1991) ("the mere issuance of a document designed to formalize the government's regulation does not thereby create a property interest for the government"); *United States v. Kato*, 878 F.2d 267, 269 (9th Cir. 1989) (reversing a criminal conviction because the defendant was charged with "devising a scheme to defraud the United States 'into issuing private pilots certificates to those unqualified and/or ineligible to receive them'").

23

The relevant wire fraud statute states that "[w]hoever" uses interstate wires to effectuate "any scheme" to "defraud" or "obtain[] money or property by means of false or fraudulent pretenses, representations, or promises" may be liable.  18 U.S.C. § 1343. Skywave's complaint alleged that Appellees used interstate wires to transmit their fraudulent FCC filings, which allowed them to obtain the Experimental Licenses necessary to effectuate their racketeering scheme to obtain ***money*** through unlawful Commercial Trading.  *See* D.I. 90 ¶¶103-15.  Appellees' racketeering scheme injured Skywave by interfering with potential business relationships and causing losses from sunk investment costs.  *See Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 647-50, 661 (2008) (allowing a fraud claim in connection with municipal auctions when the plaintiff was "injured in [its] business or property by reason of" the defendant).

Appellees cite other cases that do not support their position.  Resp. 42-43.  For example, in *Ciminelli v. United States*, 598 U.S. 306, 308-09 (2023), the Supreme Court found that a "right-to-control theory"[9] was "not a valid basis for liability under § 1343," but here, Skywave does not allege that it was deprived of information.  In *Kelly v. United States*, 590 U.S. 391, 404 (2020), "the scheme [] did not aim to obtain money or property," so the defendants "could not have violated the federal-program fraud or wire fraud laws."  In *Toulabi v. United States*, 875 F.2d 122, 123 (7th Cir. 1989), the Seventh Circuit considered

---

[9] "[A] defendant is guilty of wire fraud if he schemes to deprive the victim of 'potentially valuable economic information' 'necessary to make discretionary economic decisions.'" *Id.*

24

the intangible rights doctrine—*i.e.*, that "a scheme to deprive a governmental body of the honest services of its employees satisfied the fraud element of the statute"—but here Skywave does not allege that Appellees deprived the FCC of the "honest services of its employees."  And *United States v. Griffin*, 76 F.4th 724, 739 (7th Cir. 2023), supports Skywave because it held that "loan guarantees" obtained through false representations were "most certainly 'property' as required by the wire fraud statute."

Lastly, Appellees incorrectly argue that, "[a]t most, Skywave's complaint pleads '[a] scheme to alter a regulatory decision, such as a scheme to obtain a … license from a government regulator."  Resp. 44 (quoting *Griffin*, 75 F.4th at 724).  But, as explained in Section II.A, *supra*, Skywave's RICO suit does not ask the District Court to revoke or alter any FCC decisions.

### D.    Skywave Pled Proximate Cause.

Contrary to Appellees' assertion, Resp. 47 (citing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)), Skywave sufficiently alleged proximate causation including a direct relation between its injuries and Appellees' unlawful conduct.  *E.g.*, D.I. 90 ¶¶152-72.

Appellees incorrectly analogize to *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006), where the plaintiff accused the defendants of defrauding New York tax authorities, allowing them to charge lower prices and "gain[] sales and market share at [plaintiff's] expense."  *Id.* at 454.  The Supreme Court found that the "attenuation between

25

the plaintiff's harms and the claimed RICO violation" meant an "absence of proximate causation." *Id.* at 453-54, 458-60.

Unlike in *Anza*, Skywave does not allege an ambiguous loss in market share downstream of Appellees' misconduct; rather, Skywave alleges a causal relationship between Appellees' misuse of Experimental Licenses and Skywave's inability to complete its network, execute its trading partnership with a third party, or license its shortwave network technology to other trading firms. *See* D.I. 90 ¶156.[10]

Unlike Appellees' cases, *Bridge* is on point.  There, the defendants filed false compliance statements to participate in public auctions and obtain a disproportionate share of tax liens.  *Bridge*, 553 U.S. at 641-44.  The Supreme Court held that the plaintiffs sufficiently alleged proximate cause for their civil RICO claims.  *Id.* at 644-45, 661.  The plaintiffs' injury—"the loss of valuable liens"—was the direct result of the defendants' fraud because "[i]t was a foreseeable and natural consequence of petitioners' scheme to obtain more liens for themselves that other bidders would obtain fewer liens."  *Id.* at 657-58.

Appellees try to paint Skywave as an "indirect victim" of their fraud, Resp. 47, but like the injured bidders in *Bridge*, Skywave pled a direct relation between its injuries and

---

[10] Appellees' citations to *Hemi Group* are inapplicable.  *E.g.*, Resp. 47-51.  There, customers who failed to pay certain taxes were more appropriate defendants than a retailer accused of failing to report the customers' information to the state, *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 11-12 (2010), which is not the case here.  *See* D.I. 108 at 16-24.

Appellees' fraudulent FCC filings that resulted in 10Band's Experimental Licenses, which Appellees later misused for Commercial Trading.  D.I. 90 ¶¶103-15,152-56.  Because "every millisecond counts" and "the fastest network wins the trade and reaps the economic benefits," *id.* ¶28, Skywave invested in infrastructure to become the fastest shortwave network provider for Commercial Trading.  *Id.* ¶¶31-42,135-37,139.  Appellees' fraudulent FCC filings and unlawful Commercial Trading caused Skywave to lose those investments and future business opportunities—both of which are direct financial injuries.  *Id.* ¶¶152,154; *see also Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 734 (7th Cir. 2014) (allowing RICO claims for "damages from a private party for an alleged conspiracy to use the power of state government to take money from them").

Appellees' contention that Skywave's theory of injury is based on speculation that it would have been "granted a Part 73 license authorizing its operations" is also incorrect.  Resp. 50.  Skywave pled that FCC officials declared their support for Skywave's plans for a Part 73, *i.e.*, commercial, shortwave license.  D.I. 90 ¶¶38,45.  And while Appellees argue that Skywave's theory requires other assumptions, including that "other commercial traders" were harmed by 10Band and made an "'entirely distinct' decision not to do business with Skywave," Resp. 50 (quoting *Anza*, 547 U.S. at 458), Appellees ignore that Skywave's allegations focus on its direct financial injuries due to Appellees' unlawful conduct.

27

Skywave need not, as Appellees suggest, plead that it is the singular best plaintiff or that Appellees' misconduct is the only cause of Skywave's injuries. *RWB Servs., LLC v. Hartford Comp. Grp., Inc.*, 539 F.3d 681, 688-89 (7th Cir. 2008) (finding plaintiff properly alleged proximate cause, noting that "[t]he existence of multiple victims with different injuries does not foreclose a finding of proximate cause"). Skywave's allegations are sufficient to plead proximate cause at the motion to dismiss stage.

## CONCLUSION

Skywave requests that this Court reverse and remand.

Date:  June 16, 2026

**DESMARAIS LLP**

*/s/ Justin P.D. Wilcox*
Justin P.D. Wilcox
Adam Steinmetz
Jamie Dohopolski
Rix Ryskamp
1899 Pennsylvania Avenue, NW
Suite 400
Washington, DC 20006
Telephone:  (202) 451-4900
Email:  jwilcox@desmaraisllp.com
        asteinmetz@desmaraisllp.com
        jdohopolski@desmaraisllp.com
        rryskamp@desmaraisllp.com

Steven M. Balcof
Peter Kotecki
230 Park Avenue
New York, NY 10169
Telephone:  (212) 351-3400
Email: sbalcof@desmaraisllp.com
        pkotecki@desmaraisllp.com

*Attorneys for Plaintiff-Appellant*
*Skywave Networks, LLC*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c), because this brief contains 6,953 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32(b), and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word in 12-point Palatino Linotype font, with footnotes in 12-point Palatino Linotype font.

Dated:  June 16, 2026

**DESMARAIS LLP**

*/s/ Justin P.D. Wilcox*
Justin P.D. Wilcox
1899 Pennsylvania Avenue, NW
Suite 400
Washington, DC 20006
(202) 451-4900
Email:  jwilcox@desmaraisllp.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 16, 2026, I electronically filed the foregoing Appellant's Brief with the Clerk of the United States Court of Appeals for the Seventh Circuit and was served upon Appellees who received a notice of filing via the Court's electronic filing system.

Dated: June 16, 2026　　　　　　　　**DESMARAIS LLP**

　　　　　　　　　　　　　　　　　　*/s/ Justin P.D. Wilcox*
　　　　　　　　　　　　　　　　　　Justin P.D. Wilcox
　　　　　　　　　　　　　　　　　　1899 Pennsylvania Avenue, NW
　　　　　　　　　　　　　　　　　　Suite 400
　　　　　　　　　　　　　　　　　　Washington, DC 20006
　　　　　　　　　　　　　　　　　　(202) 451-4900
　　　　　　　　　　　　　　　　　　Email: jwilcox@desmaraisllp.com